## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

RONALD M. LISAN, M.D. ) CASE NO.
5071 HIDDEN CREEK CIRCLE )
SOLON, OHIO 44139 ) JUDGE
)
)
Plaintiff, )
)
VS. ) **COMPLAINT**
)
ROBERT WILKE, )
ACTING SECRETARY OF ) (Trial By Jury Requested)
THE UNITED STATES )
DEPARTMENT OF VETERANS' )
AFFAIRS )
810 VERMONT AVENUE, NW )
WASHINGTON, D.C. 20420 )
)
Defendant )
)
)

*Sindell and Sindell, LLP*
Attorneys and Counselors at Law
Chagrin Plaza West
23611 Chagrin Boulevard, Suite 227
Cleveland, Ohio 44122
Telephone: (216) 292-3393
Facsimile: (216) 292-3577

Now comes Plaintiff Ronald M. Lisan M.D., by and through his counsel of record,

and for his Complaint against Defendant states as follows:

## I PARTIES, JURISDICTION AND VENUE

1. Plaintiff Ronald M. Lisan is a citizen of the State of Ohio, at all times

hereinmentioned employed as an M.D. with Defendant as an anesthesiologist.

2. Defendant and specially the Department of Veterans' Affairs is an agency

of the United States of America and operates the Louis Stokes Veterans

Administration Hospital in Cleveland, Ohio.

3. This action arises under Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. Section 2000e, et seq. This action also arises under the

Rehabilitation Act of 1973, as amended, 29 U.S.C. 706, 791 et seq. On April 21, 2018, Plaintiff filed a formal complaint of discrimination based upon sex, disability, reasonable accommodation, hostile work environment and reprisal/retaliation (VA (agency) Case (docket) No. 200H-0541-2017101627). There has been no Final Agency Decision (FAD). Plaintiff is authorized to bring this action in this court pursuant to C.F.R. Section 1614.407.

4.     Jurisdiction in this Court is proper pursuant to the laws set forth in preceding paragraph 3 herein and is invoked pursuant to 5 U.S.C. Sections 7513 and 28 U.S.C. Sections 1331, 1334(4), 1346, and 1361.

5.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391 and pursuant to the aforementioned laws set forth in preceding paragraph 3. All actions, omissions and events hereinmentioned occurred within the State of Ohio.

6.     Plaintiff's claims in this action include sex discrimination, hostile work environment, disability discrimination, denial of Reasonable Accommodation and reprisal/retaliation.

7.     At all times hereinmentioned, Susan Fuehrer is the Director of the Louis Stokes Veterans Administration Hospital (hereafter "Fuehrer"). Murray Altose, M.D. is the Chief of Staff (hereinafter "Altose"); Bruce Kafer is both the Reasonable Accommodations Coordinator and the Equal Employment Opportunity Coordinator (hereinafter "Kafer") and Susan Raphaely, M.D. is the Chair of the Department of Anesthesiology (hereinafter "Raphaely").

8.     All actions and/or omissions of Defendant were done by and through their agents, servants and employees, acting within the course and scope of their agencies, services and employments, including aforementioned Fuehrer, Altose, Kafer and Raphaely.

2

9.    All actions and/or omissions of the aforementioned agents, servants and employees of

Defendant were done maliciously, intentionally, willfully, unlawfully, consciously, in bad faith,

contrary to the rules and polices of the VA, retaliatorily, discriminatorily, arbitrarily,

capriciously, culpably, wantonly, recklessly, negligently, carelessly, tortiously and/or in

conscious and knowing disregard for the rights of Plaintiff Lisan.

10.    As a direct and proximate result of the alleged misconduct and violations of law as set

forth herein, Plaintiff Lisan suffered injuries and damages, including economic loss, distress,

upset and humiliation, all of which Plaintiff will continue to suffer indefinitely into the future.

## II. FACTUAL BACKGROUND

### (1) Sex Discrimination

11    Dr. Susan Raphaely became Chair of the VA Anesthesiology Department in

approximately January 2015. Raphaely was personally biased against and hostile to male

anesthesiologists because of their male sex, preferring and favoring female anesthesiologists

because of their female sex. Raphaely engaged in differential treatment discriminating against

male anesthesiologists,   and preferential treatment of female anesthesiologists with respect of

the terms and conditions of their employments. These sexually discriminatory actions and

practices, including against Plaintiff Dr. Ronald Lisan, included but are not necessarily limited to,

the following:

(A) Raphaely created a hostile work environment for anesthesiologists in the

Department of Anesthesiology which, when she became Chair of that department, was

3

comprised mostly of male anesthesiologists. Thereafter, Raphaely brought about the separation from VA employment of approximately 8 out of 12 anesthesiologists (7males, I female) and she replaced the male anesthesiologists with 7 female anesthesiologists and one male anesthesiologist. Her lopsided hiring of female anesthesiologists was done unilaterally, without any usual advance consultation with other anesthesiologists in her department. Moreover, some of the newly hired anesthesiologists were less experienced and qualified than the anesthesiologists they replaced. In one instance, Raphaely inappropriately manipulated a job description in order to hire a female anesthesiologist who specialized in a particular type of patient/medical condition which was not treated in the Louis Stokes VA Facility. All of the aforementioned and hereinafter mentioned actions of Raphaely occurred within approximately 2 ½ years after she became Chair of the Department of Anesthesiology, and on a continuing basis to and including the present time.

(B) Raphaely continued to discriminate and create a hostile work environment against male anesthesiologists, including against a highly experienced senior male anesthesiologist who remained employed at the VA, Dr. Kenneth Moss.

(C) Raphaely continued to mistreat and act against and adversely toward Plaintiff Lisan because of his male sex; the same adverse actions and misconduct directed against Plaintiff Lisan created for him a hostile work environment and constituted reprisals and retaliation against him for engaging in the protected activity of complaining about and objecting to sex and disability discriminatory and hostile adverse practices and omissions being directed against him by Defendant, including for Plaintiff's engaging in the protected activity of filing and pursuing formal EEO complaints and claims. These unlawful actions and omissions by Defendant as

4

alleged and detailed hereafter in this Complaint are incorporated by reference herein at this point.

## 2. Reprisal/Retaliation and Hostile Work Environment

12.    Raphaely committed unlawful reprisals and retaliation against Plaintiff Lisan, as set forth hereafter. On or about January 6, 2017, Plaintiff Lisan submitted a detailed written communication to Raphaely's superiors, Medical Director Susan Fuehrer and Chief of Staff Dr. Murray Altose. (Attached to this Complaint as Exhibit A and by this reference incorporated herein.) This communication promptly thereafter became known to Raphaely. It specifically complains about, objects to and outlines, including among many things, sex discrimination, hostile work environment, and disability discrimination directed against Plaintiff by Raphaely. It also requests investigation into these complaints, cessation of the discrimination and hostile work environment and refraining from any adverse retaliatory actions against Plaintiff Lisan because of the communication in Exhibit A expressly stating his complaints, objections and requests, including as follows:

(A) Beginning within two business days of the communication to Fuhrer and Altose of the aforementioned Exhibit A, Raphaely solicited, pursued, threatened, coached and/or coerced four female CRNAs (Certified Registered Nurse Anesthetists) in the Anesthesiology Department, whom Defendant Raphaely directly supervised, to make written false accusations against Plaintiff Lisan for supposedly sexually harassing them. Several complaints were in the past, one case as long as two years previously, another one year previously.

5

No complaint by any CRNA involved any improper physical touching; they were all allegedly verbal. None of the verbal remarks involved any proposition or request for engagement in any sexual activity with any complaining CRNA. No CRNA made any claim that Plaintiff Lisan made any threats or any intimidations or coercions of any kind. Most of the complaints did not even imply or involve any sexual connotations. Of particular significance is the fact that each complaining CRNA never even communicated to Plaintiff Lisan (or previously to anyone else) that anything said by Plaintiff Lisan to any of these CRNAs was unwelcome, offensive, inappropriate, wrong, or disturbing to them in any way whatsoever. Plaintiff had no supervisory authority over any CRNA. None of the CRNAs, until solicited, pursued, threatened, coerced, and coached by Raphaely had any previous intention of making any charges, accusations, complaints or claims of sexual harassment or abuse of any kind against Plaintiff Lisan, including to any authority or the EEO investigation department or the internal police at the VA. Finally, after an internal EEO investigation by the VA, it was determined, including in writing, that Plaintiff Lisan had not engaged in any sexual harassment whatsoever against any CRNA or against anybody else at the VA. At all relevant times it was known to Raphaely and to Fuehrer, Kafer and Altose, that Plaintiff Lisan had not engaged in any sexual harassment against the complaining CRNAs. Plaintiff Lisan has repeatedly denied as false all of the claims and implications levelled against him by these CRNAs. At no time did Fuehrer or Altose or the EEO investigator Kafer, or Raphaely, so much as inquire of Plaintiff Lisan as to his view or knowledge of any but one of the many accusations made against him by the complaining CRNAs. In fact, these CRNAs, having observed and experienced the vindictive and inappropriate manner of Raphaely's conduct as Chair of the Department of Anesthesiology, were intimidated

6

and terrified by her. At the present time, to Plaintiff's knowledge and belief, approximately 14 CRNAs have jointly filed a formal EEO Complaint against Raphaely, which is now being formally investigated by the EEO Department of the Louis Stokes Cleveland VA and the ORM investigations. Based upon information and belief, some of the allegations in this joint CRNA complaint relate to and mirror Plaintiff Lisan's claims in this action, including Raphaely's aforementioned coercive solicitation of CRNAs to make false accusations of sexual harassment against Plaintiff Lisan.

Raphaely's aforementioned retaliatory modus operandi of coercively soliciting other subordinate employees over whom she has supervisory authority to proffer false allegations of misconduct against employees against whom she vindictively wishes to target for adverse employment action is part of a pattern and practice which is exemplified by reprisal/retaliatory actions taken by her against Plaintiff Lisan. In fact, falsification of records and misrepresentations to target former employees, including in prior employment of Raphaely outside of the VA, have occurred.

(B) Raphaely induced certain CRNAs to make sexual harassment complaints against Plaintiff Dr. Lisan to the internal VA facility police, who personally contacted Plaintiff Lisan in the presence of his co-workers while he was at work at the VA. No further police action was taken as a result.

(C) Although Fuehrer, Altose, Kafer and Raphaely knew Plaintiff Lisan had committed no sexual harassment, Raphaely forbid Plaintiff from having any conversation with the complaining CRNAs whom she had coerced to make false accusations of sexual harassment against him,

7

other than to discuss strictly necessary business matters, and specifically forbid him to communicate with them about their professed sexual harassment accusations. Raphaely also forbid Plaintiff Lisan from entering the CRNAs' lounge. To Plaintiff's knowledge and belief, Raphaely forbid any complaining CRNA to discuss the sexual harassment allegations with Plaintiff Lisan. From the outset, Defendant Raphaely made no effort to remediate or resolve any issues involving the complaining CRNAs and Plaintiff Lisan because her intent was to instigate and foment a hostile work environment and reprisal/retaliation against Plaintiff Lisan leading to his separation from employment at the VA as an anesthesiologist.

(D) Bruce Kafer, EEO and Reasonable Accommodation Coordinator, conducted an internal facility EEO investigation of the CRNA sexual harassment complaints against Plaintiff. He did so in a manner which was hostile and biased against Plaintiff Lisan. Kafer, jointly and in combination with Raphaely, had previously refused to personally meet with Plaintiff about his previous reasonable accommodation request, without any justification and contrary to VA rules and procedures, and misrepresented and misconstrued Plaintiff's request for a reasonable accommodation which was to be gradually returned to full on-call duties over a brief period of time upon his return from his medical leave of absence for treatment of his OCD condition in a specialized facility. These facts are more fully detailed in allegations set forth hereinafter and are by this reference incorporated herein at this point.

13. The facts relevant to Plaintiff's claims in this section of hostile work environment and reprisal/retaliation also include the following:

## (3) Disability Discrimination, Denial of Reasonable Accommodation and Continued Reprisal/Retaliation and Hostile Work Environment.

(i) Kafer refused to meet in person with Plaintiff Lisan notwithstanding Plaintiff's multiple oral and written requests to Kafer to discuss with Kafer the details of Plaintiff's Reasonable Accommodation Request, including the nature of the request he was making and the reasons for it.

(ii) Kafer received information from Raphaely, who intentionally mischaracterized to Kafer that Plaintiff Lisan's requested accommodation was that on-call duty (in addition to regular full-time duty) be permanently and/or indefinitely excluded from Plaintiff Lisan's duties as an anesthesiologist. Defendant Raphaely knew from Plaintiff Lisan that Plaintiff was merely requesting a short brief period of gradual re-introduction and reintegration into full additional on-call duty, a short period of a few weeks starting with reduced and thereafter increasing on-call duty. Otherwise, Plaintiff's being immediately thrust into full regular and also at the same time full on-call duty risked a deterioration by "flooding" of his successful recovery from his lengthy OCD treatment. Instead, Raphaely misinformed Kafer about Plaintiff's true requested accommodation, as aforesaid, and further informed Kafer (who was in regular contact with Raphaely while refusing to meet in person with Plaintiff) that on-call duty was an "essential function" of Plaintiff's job position duties as an anesthesiologist. In fact, Plaintiff had specifically advised Raphaely upon his return to work that he was able, willing and prepared to commence doing some on-call duty immediately; however, Raphaely insisted that inasmuch as Plaintiff returned to work at the VA (on December 7, 2016), Plaintiff Lisan would be required to carry immediately the additional load of on-call duty, over and above his regular full-time work hours, due to other anesthesiologists, including herself, wishing to take time off from on-call

9

duties during the upcoming Holiday Season. Raphaely knew at the time she required Plaintiff to take additional on-call and Holiday duty that other nondisabled anesthesiologists, including Rapahely herself, were available for the on-call duty which Raphaely ordered Plaintiff to do.

(iii) Raphaely further unlawfully intervened into Plaintiff Lisan's reasonable accommodation request, with the full concurrence and joint participation of Kafer, by misrepresenting to Kafer the true nature of Plaintiff's accommodation request, by further falsifying Plaintiff's request as being one for permanent and/or indefinite exclusion from any on-call duty as part of Plaintiff's **position** as an anesthesiologist; this precluded Plaintiff from holding any anesthesiologist position in the VA Department of Anesthesiology, according to Raphaely, because on-call duty was supposedly an "essential function" of Plaintiff's position and there were no available open anesthesiologist positions which did not require on-call duty. The inexorable bottom line was that Plaintiff Lisan would be required to leave his employment at the VA facility as an anesthesiologist according to Raphaely. In fact, as set forth hereinafter, on-call duty is not an "essential function" of Plaintiff's position, and even it if was, Plaintiff never requested its permanent or indefinite removal from his employment duties at the VA facility as an anesthesiologist. Moreover, Raphaely continued to unlawfully meddle with Plaintiff's Reasonable Accommodation Request by urging Kafer to expedite the decision on it, by emailing to Plaintiff that the previously scheduled meeting for Thursday, January 12, 2017 which Plaintiff had arranged with Kafer for the next day was cancelled, as follows:

"Ron, our meeting scheduled for 10:00 a.m. Thursday has been cancelled. Bruce Kafer, the Reasonable Accommodation Cooridnator stated he will reach out to you directly with what

10

had been decided based on your medical documentation". (See attached Exhibit B,Email to Plaintiff Lisan from Defendant Dr. Raphaely, Wednesday, January 11, 2017)

This email was sent by Raphaely to Plaintiff without being copied to Kafer or to anyone else.

Immediately thereafter, Plaintiff Lisan was informed that his Request for a Reasonable Accommodation was denied. In fact, at great risk to his health, Plaintiff Lisan, due to extreme coercion from Raphaely, fulfilled her imposition of additional on-call duty over the December Holiday Season of 2016-2017, against medical advice. Full on-call duty thereafter was continually imposed upon Plaintiff by Raphaely. It was the malicious intention of Raphaely to end Plaintiff's employment as an anesthesiologist at the VA, either by falsifying his Reasonable Accommodation Request and manipulating its denial and/or by forcing immediate additional on-call duty on him to cause a deterioration in his health.

(iv) Kafer, having participated in the aforementioned denial of Plaintiff's Reasonable Accommodation Request in Kafer's capacity of Reasonable Accommodation Coordinator, thereafter refused to recuse himself from acting as the investigator and decisionmaker regarding the CRNAs sexual harassment accusations against Plaintiff Lisan, despite Plaintiff Lisan's specific request that Kafer do so under the circumstances of Kafer being a Responding Party to Plaintiff's EEO discrimination complaint against Kafer himself.

(v) Kafer held a brief EEO investigatory sexual harassment meeting upon only several hours advance notice with Plaintiff (with others present) and with Plaintiff's counsel on the telephone. Kafer's tone and attitude toward Plaintiff was rude and hostile. At no time in that

11

meeting or in his investigation did he ever ask Plaintiff to respond to any but one of the many specifics of the CRNA claims. At no time in his investigation did Kafer inquire into the circumstances of those complaints, when they were solicited, by whom, why the complaints were never previously reported to anyone, the temporal relationship between Plaintiff's initial written discrimination claims to Fuehrer and Altose and the solicitation of those CRNA complaints by Raphaely, whether these complaining CRNAs were offended by or found unwelcome or inappropriate (or even sexual) anything Plaintiff allegedly said, Plaintiff's take on the contexts of the statements allegedly made, the length of time which transpired since Plaintiff's statements were allegedly made, whether any of the alleged statements were deemed to be related to sex by the CRNAs, whether the CRNAs openly participated in the alleged sexually harassing conversations with Plaintiff and if so, what they said to Plaintiff, what the explanation was for obtaining these CRNA complaints and how they were obtained through Kafer questioning Raphaely, what communications occurred between Fuehrer and Altose and Raphaely upon receipt of Exhibit A, the initial written letter of Complaints of discrimination and reasonable accommodations received from Plaintiff Lisan's counsel in early January of 2017, et cetera. Kafer reached the completely unjustified conclusion, without any meaningful investigation, that Plaintiff had engaged in "sexually inappropriate behavior" with the CRNAs.

(vi) Immediately after Plaintiff's letter of complaints was sent to and received in early January 2017 (Exhibit A) by Defendant, Raphaely presented to Plaintiff Lisan on or about January 10, 2017 a document entitled Sexual Harassment Allegation Checklist, a pre-printed official VA form. Plaintiff refused to initial it. (Attached as Exhibit C) That Checklist was

12

specifically designed for "Sexual Harassment" allegations. Raphaely knew at the time she prepared, initialed and presented this Checklist to Plaintiff that the complaints of the CRNAs whom she had solicited by that time (and had presented Plaintiff in the form of written Reports of Contact) did not constitute sexual harassment per VA policy.

(vii) Notwithstanding the fact that the CRNAs had never told Plaintiff that anything he allegedly said to them was unwelcome, Raphaely indicated that she had not interviewed or been informed by Plaintiff of his side of the events. Nevertheless, she ordered Plaintiff to cease any contact with the complaining CRNAs except for "absolutely required official business." Plaintiff was not in any supervisory relationship with authority over the employment of any CRNA, all of whom were among his co-workers.

(viii) The CRNA complaints were submitted for investigation by EEO Coordinator Kafer. Before a determination was made in the investigation, on or about March 9, 2017, Raphaely presented Plaintiff with a Written Warning (attached Exhibit D) concerning conversations which Plaintiff may have had with others, including the complaining CRNAs, regarding "allegations of inappropriate behavior of a sexual nature involving female co-workers." The Written Warning (Exhibit D) acknowledged that it had not yet been concluded that Plaintiff had verbally sexually harassed anyone. Notwithstanding that fact, the Written Warning broadly forbid Plaintiff from "discussing these allegations with your co-workers", which encompassed every employee in the VA with whom Plaintiff worked. Plaintiff was also ordered not to have "any personal contact at or outside of work" with any of the four complaining CRNAS.

13

The Written Warning also acknowledged that these ordered speech and contact prohibitions would no longer apply if the "investigation exonerates you of these charges" of sexual harassment. To be clear, the only authority which Raphaely had pursuant to VA rules to prohibit speech and contact between co-employees was the official VA Checklist (Exhibit C) which was limited to procedures for Sexual Harassment Allegations and further limited to those persons claiming that Plaintiff had actually sexually harassed them. Since there was no sexual harassment, Defendant Raphaely's contact and speech prohibitions were inapplicable and unauthorized as well as patently overbroad, extending beyond the four complaining CRNAs.

(ix) The result of these speech and contact prohibitions had the intended consequence of isolating Plaintiff from his peers and co-workers, who were generally avoiding any contact or conversation with Plaintiff, even though Plaintiff was aware that they were freely and with impunity speaking about the sexual harassment allegations among themselves, while treating Plaintiff as a pariah and regarding him variously with fear, hostility and cold distance.

In short, Plaintiff Lisan was required to endure at work a painful hostile work environment on a continuing daily basis created and promoted by Raphaely along with the concurrence, adverse actions, failure to act or remediate and participation on the parts of Kafer, Fuehrer and Altose.

(x) On March 16, 2017 the EEO investigation report (per Kafer) concluded that: "In reviewing the totality of the case it fails to rise to the level of sexual harassment as defined in policy which was promulgated pursuant to Equal Opportunity Employment law". The report also gratuitously concluded without justification that "sexually inappropriate behavior was

14

occurring". This latter conclusion was reached by Kafer, whose prior conduct with Plaintiff's Reasonable Accommodation Request (i.e. including refusing to meet with Plaintiff) and Kafer's status as a Responding Party to Plaintiff's pending EEO Complaint against Kafer, should have compelled Kafer's recusal as the EEO investigator in this matter in the first place. Kafer simply accepted verbatim without any investigation the allegations of the complaining CRNAs without ever asking Plaintiff about his basis or explanation for denying those allegations and without questioning any complaining CRNA, Plaintiff, or Raphaely about how it came about that these allegations were never communicated to Plaintiff by any CRNA that they were offended or upset by anything deemed unwelcome or inappropriate, some of which included events two years earlier, were never reported, how they were coercively solicited by Raphaely beginning immediately after Plaintiff had made his written complaints and objections to Raphaely's adverse discrimination and hostile work environment which she directed against Plaintiff.

(xi) Several days after the EEO investigation concluded that Plaintiff's verbal conduct did not constitute sexual harassment pursuant to VA policy and law, Raphaely responded by issuing a Proposed Suspension (without pay) to Plaintiff Lisan. This Proposed Suspension, following Plaintiff's exoneration from sexual harassment charges, was primarily premised on Plaintiff's claimed disobedience to Raphaely's gag and no-contact orders, supposedly authorized for sexual harassment claims which were deemed unfounded and nonexistent. Inasmuch as Raphaely created these CRNA complaints by retaliatorily coercing and soliciting them, Plaintiff never previously being advised by anyone that he had said anything offensive or unwelcome to any CRNA in the first place, Raphaely then bootstrapped these previously unreported and apparently inoffensive remarks (which she had coercively solicited) into formal claims of

15

unfounded sexual harassment allegations, and then abused the Sexual Harassment Allegation Checklist, (Exhibit C) to muzzle and isolate Plaintiff in order to create a hostile work environment for Plaintiff, as aforementioned. Then, after Plaintiff Lisan was officially exonerated from the sexual harassment accusations, Raphaely proposed suspending Plaintiff for violating a sexual harassment procedure to cease all contact and personal conversations with Plaintiff's co-workers. The speech and no-contact orders should never have been issued to Plaintiff in the first place, a fact known at all times to Raphaely, particularly **after** Plaintiff had been exonerated from the accusations of sexual harassment.

(xii) Additionally, Raphaely's Proposed Suspension attempted to include as a ground "Disruptive Behavior Putting Patient Safety at Risk", among other accusations. These many new accusations, never previously documented or discussed with Plaintiff, are false, misleading and exaggerated. They include a reiteration of the very charges of sexual harassment which even Kafer rejected in the EEO investigation report. Raphaely's Proposed Suspension actually quotes the EEO policy that states that the key to sexual harassment is "unwelcome", regarded by the recipient as "offensive or undesirable". Plaintiff had no knowledge that he ever spoke such words to any of his CRNA accusers or that his remarks were regarded by them as unwelcome or offensive. In fact, Plaintiff consistently denied making the remarks as attributed to him by the complaining CRNAs.

(xiii) On or about May 11, 2017, Plaintiff was given an opportunity to present his objections to Raphaely's Proposed Suspension. This meeting (mischaracterized by the VA as a "hearing") was conducted by Altose, notwithstanding Plaintiff's request that Altose recuse himself because Altose was a "Responding Party" in Plaintiff's then pending EEO Complaint.

16

On or about July 5, 2017, (in a document misdated June 20, 2017, attempting to misrepresent it as timely rendered, per VA rules), Fuehrer rendered her signed decision sustaining the Proposed Suspension. This decision to suspend Plaintiff was executed by Fuehrer, belatedly, out of rule, only immediately after the EEO Office of Resolution Management in Lyon, New Jersey officially and in writing notified the VA that Plaintiff's Formal EEO Complaint had been accepted for investigation. Plaintiff received it on July 6, 2017. By VA rule, Plaintiff was mandated to receive it within 30 days after the Proposed Suspension of March 20, 2017, to wit, on or before April 19, 2017. When Fuehrer signed the Decision to suspend Plaintiff, Fuehrer was a Responding Party to Plaintiff's EEO discrimination/retaliation complaint against her, but failed to recuse herself.

(xiv) Thereafter, Plaintiff served the imposed 10-day work suspension without pay, served during the period from July 10, 2017 to July 26, 2017.

14.    Plaintiff was unlawfully denied his Request for Reasonable Accommodation for the reasons set forth herein and hereinabove, including for those reasons and facts set forth in preceding Part B, (which are by this reference incorporated and set forth herein at this point). By this reference, Plaintiff further incorporates all of the preceding factual allegations in this Complaint as if all of those allegations were fully set forth herein at this point.

15.    Plaintiff's OCD (Obsessive Compulsive Disorder) constitutes a "disability" within the meaning of the Rehabilitation Act of 1973, as amended.

16.    Plaintiff made repeated requests for a Reasonable Accommodation to Raphaely and Kafer upon and after his return to work at the VA on December 7, 2016, following his extended

17

medical leave for treatment for his OCD condition. Plaintiff complied with all requirements and procedures necessary to effectuate his Reasonable Accommodation Request.

17.    OCD, in Plaintiff's case, manifested itself in several impairing ways, including but not limited to contamination obsession compelling him to engage in excessive, frequent and lengthy washing procedures, with co-morbid depression, anxiety and fear, passive thoughts of suicide, severe anhedonia, poor appetite, and considerable weight loss, which as of late August 2016 impaired his ability to work. In August of 2016, he took a medical leave and obtained specialized care and treatment for many weeks of continuous residence at Rogers Memorial Hospital in Wisconsin. Plaintiff's treatment was successful. Upon return to work at the VA on or about December 7, 2016, Plaintiff was fully capable of competently performing all of the duties of a full-time anesthesiologist at the VA, for all regularly scheduled full-time weekly work hours, but with a short period of gradual reintegration into full extra on-call duties to avoid the risk of "flooding" by undertaking immediately full or immediate extra-heavy on-call duties, which required him to work part of a day shift followed by availability and/or work for a full night shift, potentially imposing a continuous work period and availability of up to 18-24 continuous hours. Plaintiff's Reasonable Accommodation Request did not require initial exclusion of all on-call duty, but rather a short initial period of less but gradually increasing assumption of on-call duty. Plaintiff was certainly requesting to avoid the immediate assumption shortly after his return to work of immediate additional on-call duty for the Holiday Season in December 2016.

18.    Beginning several weeks prior to his return to work at the VA, Plaintiff fully shared on multiple occasions his anticipated aforementioned Reasonable Accommodation Request, including his OCD condition and ongoing treatment, with his immediate supervisor, Raphaely.

18

At that time, Raphaely answered Plaintiff that she had consulted with Altose and that his anticipated Reasonable Accommodation Request was "doable" and "should not be a problem".

19.     However, and despite the aforementioned prior assurances, on December 7, 2016, and thereafter, Raphaely, Altose and Kafer mischaracterized Plaintiff's Reasonable Accommodation Request and deceptively manipulated and mislead Plaintiff, to falsely appear to be requesting the immediate, entire and permanent or indefinite removal of all on-call duty from his job position. Thereafter, Raphaely, Altose and Kafer intentionally used that false mischaracterization of Plaintiff's Reasonable Accommodation Request by falsely asserting that on-call duty was an "essential function" of Plaintiff's anesthesiologist position, thereby falsely creating a professed basis for the denial of the mischaracterized true Reasonable Accommodation Request of Plaintiff. They then rushed to a decision of denial of a Reasonable Accommodation intentionally bypassing and preventing Plaintiff from meeting with Kafer directly and personally to discuss, clarify and present Plaintiff's true Reasonable Accommodation Request, which was not the immediate removal of all on-call duty from his job position. These individuals were fully aware that there was no anesthesiologist position available which excluded any and all on-call duty, since such positions were then filled. The intended attempted consequence and outcome on the part of these individuals was to necessitate Plaintiff's departure from any positions as an anesthesiologist in the Department of Anesthesiology in the Louis Stokes Cleveland VA Facility.

20.     In fact, on-call duty was not an "essential function" of Plaintiff's current anesthesiology position. VA Handbook 5975.1(2)(d) defines Essential Functions as follows:

19

"**d. Essential Functions:** The essential functions of a job are the occupational duties that are fundamental to the position to the extent that the individual cannot do the job without being able to perform them. A function can be "essential" if, among other things, the position exists specifically to perform that function, a limited number of other employees can perform the function if given the assignment, or the function is specialized and the incumbent is hired based on his or her ability to perform it. **If a function is listed in the position description as an essential function, but is not performed by the incumbent or takes only a few hours per week, it is not usually considered "essential" for purposes of accommodation. The following factors are considered in determining whether a job function is essential:**

Whether the reason the position exists is to perform that function;

**The number of other employees available to perform the function** or among whom the performance of the function can be distributed;

Written job descriptions prepared before advertising or interviewing applicants for the job;

**The amount of time actually spent on the job performing the function;**

**The consequences of not requiring the Incumbent to perform the function;**

The terms of any collective bargaining agreement;

**The work experience of past incumbents in the job**; and/or

**The current work experience of incumbents in similar jobs:** (emphasis added)

21. Based upon this aforementioned definition in the VA Handbook, occasional extra hours of on-call duty is capable of being performed by any and all anesthesiologists in an ample staff of 11-12 full-time anesthesiologists on a rotating basis. In fact, during the months when Plaintiff, while on medical leave, was completely absent from the facility, all regular full-time anesthesiologist services, including the rotating extra on-call hours, were fully provided. Defendants made no effort to investigate, consider, or determine, (including particularly Reasonable Accommodations Coordinator Kafer), whether Raphaely's blanket unsupported conclusory assertion that on-call duty was an "essential function" as defined in the VA Handbook was accurate. In fact, as alleged herein, it was not an "essential function". And even if, arguendo, it was, Plaintiff's Reasonable Accommodation Request was not that on-call be entirely or indefinitely excluded from one of the responsibilities of his **position** as an anesthesiologist.

22. On the subject of denial of Requests for Reasonable Accommodations, VA Handbook 5975.1(21)(a)(3) states that a denial of a Request for Reasonable Accommodation may be proper if: "the requested accommodation would require the removal of an essential function from the **position** occupied by the employee". (Emphasis added). Plaintiff Lisan never requested the "removal" of on-call duty from his "position" as an anesthesiologist.

Moreover, Defendants violated the "Interactive Process" required for Requests for Reasonable Accommodation. VA Handbook 5975.1(9)(a),(b) and (e) states as follows:

a. When the individual makes an oral or written request for reasonable accommodation, managers should ordinarily begin to engage in the interactive process with the individual after

21

receiving notice of the request. **The interactive process is the communication between the DMO and the employee, in consultation with the LRAC,** [Local Reasonable Accommodation Coordinator Defendant Kafer] **to determine how best to respond to the employee's request.** During this process, an individualized assessment will be conducted to review essential and marginal job functions, the employee's limitations, and possible accommodations. **The interactive process may require more than one discussion. The DMO or LRAC will also explain the reasonable accommodation process to the employee at this time.**

b. **Ongoing communication and cooperation are important, especially when a specific limitation, problem, or barrier is unclear or when the disability or an effective accommodation is not obvious. Thus, interactive discussions should be documented, with at least the date, time, participants, and key points noted.**

e. **Failing to engage in the interactive process is a violation of the Rehabilitation Act of 1973, as amended and may create liability for VA.** (Emphasis the VA Handbook)

Defendants failed to comply with the "Interactive Process" for all of the aforementioned reasons, including in particular the refusal of Kafer to investigate the relevant requirements and to meet personally with Plaintiff to determine what his Reasonable Accommodation Request was, and the aforementioned willful misrepresentations of Raphaely along with her improper intermeddling with Plaintiff's Reasonable Accommodation Request.

23.    Moreover, Altose and Fuehrer failed at all times to take any steps to prevent or remediate the unlawful discrimination, hostile work environment, reprisal/retaliation and unlawful denial of Plaintiff's Reasonable Accommodation Request, along with the panoply of

22

adverse employment actions visited upon Plaintiff, including but not limited to his suspension without pay for 10 days with consequent loss of income and its adverse and harmful presence as an official part of Plaintiff's employment record.

## III. CLAIMS FOR RELIEF

### First Claim for Relief

### (Sex Discrimination and Hostile Work Environment)

24.     By this reference, Plaintiff incorporates all of the preceding allegations of this Complaint as if those allegations were fully rewritten herein at this point.

25.     Plaintiff Ronald M. Lisan, M.D. was discriminated against by Defendant because of his sex, male, and subjected because of his sex to a hostile work environment by Defendant in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.

26.     As a direct and proximate result of Defendant's aforementioned sex discrimination and hostile work environment predicated upon his sex, Plaintiff was injured and damaged economically as alleged herein and also including as set forth in preceding paragraph 10 of this Complaint.

### Second Claim for Relief

### (Disability Discrimination, Denial of Reasonable Accommodation and Hostile Work Environment)

27.     By this reference, Plaintiff incorporates all of the preceding allegations of this Complaint as if those allegations were fully rewritten herein at this point.

23

28.     Plaintiff Ronald M. Lisan, M.D. is protected from discrimination as a member of a class

of persons due to his disability, OCD (Obsessive Compulsive Disorder). During his employment,

Plaintiff was discriminated against because of his disability and treated differently than non-

disabled comparable employees as well as unlawfully denied his Request for Reasonable

Accommodation; Defendant's aforementioned misconduct was unlawful, including in violation

of the Rehabilitation Act of 1973, as amended, 29 U.S.C. Sections 706,791 et seq.

29.     Plaintiff was also unlawfully subjected to a hostile work environment predicted upon his

disability as set forth in this Second Claim for Relief.

30.     As a direct and proximate result of Defendant's aforementioned disability

discrimination, denial of a Reasonable Accommodation and hostile work environment, Plaintiff

was injured and damaged economically as alleged herein and also including as set forth in

preceding paragraph 10 of this Complaint.

## Third Claim for Relief

### (Reprisal/Retaliation and Hostile Work Environment)

31.     By this reference, Plaintiff incorporates all of the preceding allegations of this Complaint

as if those allegations were fully rewritten herein at this point.

32.     Defendant unlawfully and maliciously retaliated and took reprisals against Plaintiff

Ronald M. Lisan, M.D. for communicating, expressing and making complaints and objections,

including pursuit of his EEO rights, to Defendant's sex discrimination, disability discrimination,

Reasonable Accommodation Request denial and hostile work environment by taking multiple

and continuous adverse employment actions against him as alleged herein.

24

33.    As a direct and proximate result of Defendant's aforementioned reprisals and retaliation as well as reprisal and retaliatory predicated hostile work environment, Plaintiff was injured and damaged economically as alleged herein, and also including as set forth in preceding paragraph 10 of this Complaint.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Ronald M. Lisan, M.D. prays for judgment against Defendant Robert Wilke, Acting Secretary of the United States Department of Veterans Affairs, as follows:

1. An award of compensatory damages in excess of $100,000;

2. An award of punitive damages in excess of $100,000.

3. An award of prejudgment and postjudgment interest;

4. An order permanently removing from all records, references and entries in Plaintiff's VA records relating to suspensions, warnings, police reports, findings, or other adverse employment actions set forth herein and/or of a derogatory or negative nature, including but not limited to  derogatory claims or accusations;

5. An award of reasonable attorney fees and costs and litigation expenses pursuant to all applicable federal statutes;

6. An award of back pay, front pay and all benefits due and owing to Plaintiff; and

&. Such other relief that this court deems just and equitable in the premises.

Respectfully Submitted,

Steven A. Sindell, Esq. (0002508)
Sindell and Sindell, LLP
23611 Chagrin Blvd., Suite 227
Beachwood, Ohio 44122
Tel: (216) 292-3393
Fax: (216) 292-3577
Email: info@sindellattorneys.com
Attorneys for Plaintiff



**EXHIBIT**

**A**

Attorneys and Counselors at Law

## *Sindell and Sindell, LLP*

Steven A. Sindell *
Board Certified in Labor and Employment Law by OSBA

Rachel Sindell



Chagrin Plaza West
23611 Chagrin Boulevard, Suite 227
Cleveland, Ohio 44122
Telephone: (216) 292-3393
Facsimile: (216) 292-3577
Website: www.sindellattorneys.com
E-mail: info@sindellattorneys.com

January 6, 2017

*By E-mail to Susan.Fuehrer@va.gov*
*and Murray.Altose@va.gov*
*and By Priority Mail with Tracking*

Ms. Susan Fuehrer, Medical Center Director
Louis Stokes Cleveland VA Medical Center
10701 East Boulevard
Cleveland, Ohio 44106

EL557629168US

Dr. Murray D. Altose, Chief of Staff
Louis Stokes Cleveland VA Medical Center
10701 East Boulevard
Cleveland, Ohio 44106

EL557629145US

Re:  Ronald Lisan, M.D.

Dear Ms. Fuehrer and Dr. Altose:

Please be advised that this office has been retained to represent your employee, Dr. Ronald Lisan, in connection with his employment issues at the VA. We have previously notified the VA of our representation of him.

Dr. Lisan has been employed at the VA as an anesthesiologist for many years. Although he may have previously exhibited indications of OCD traits, he was neither impaired nor deficient in his professional performance. His difficulties began after Dr. Susan Raphaely was hired by to replace Dr. David Kazdan as Chairperson of the Department of Anesthesiology.

In less than two years after Dr. Raphaely became Chairperson, eight of twelve anesthesiologists separated from employment at the VA. Our investigation reveals that Dr. Raphaely was instrumental in pressuring and targeting them in a number of ways. Seven out of eight of them were males. All were approximately 40 years old or older. Two of the seven were over 50 (one of those two in the late fifties); one was approximately 65 and another over 70. Dr. Raphaely replaced the largely male

Ms. Susan Fueher, Medical Center Director
Murray D. Altose, MD, Chief of Staff
Louis Stokes Cleveland VA Medical Center
10701 East Boulevard
Cleveland, Ohio 44106
Page 2

anesthesiologists with 6 new anesthesiologists, including herself. Five of the six anesthesiologists she newly hired were females. None of them were in their upper fifties, their sixties or seventies. We suspect that in some instances the anesthesiologists she managed to get rid of were more qualified than the ones she hired to replace them. Moreover, Dr. Raphaely apparently excluded her entire staff of experienced anesthesiologists from any background information or contact with her intended new hires. Their views were unsolicited, yet they were the ones having to work with the new hires. Since Dr. Raphaely has become Chairperson, eight out of twelve staff anesthesiologists have left primarily because of the treatment of Dr. Raphaely. Dr. Omar will be shortly replaced by a new female hire of Dr. Raphaely.

There are specific instances of extreme deceptive and unfair harshness directed by Dr. Raphaely toward other older male anesthesiologists in her Department, particularly Dr. Moss however, at this time, we will concentrate on her treatment of our client, Dr. Lisan. We believe that Dr. Raphaely was aware of Ron's emotional vulnerability and exploited it. In doing so, she contributed to his deterioration which caused his breakdown, hospitalization and need for recovery to full capacity, including "on-call" time.

Dr. Raphaely has accorded herself highly preferential treatment regarding her own "on-call" time. She has almost never taken "3rd call", the most onerous one. Other anesthesiologists have noticed that she excuses herself from it. She has been nitpickingly hypercritical of Dr. Lisan's performance, along with other older male anesthesiologists. There are clear specific examples of her disparate behavior.

In Ron's case, knowing that he was just returning from a lengthy in-patient hospitalization, she browbeat him to do "on-call" service immediately upon his return to work, loading him up with particularly heavy "on-call" duty. She let him know how displeased she would be if she herself had to do any "on-call" services over the Holidays. (The predecessor as Chair, Dr. David Kazdan, regularly assumed his proportionate share of "on-call" service, commensurate with other anesthesiologists).

We have attached a recent email authored by Dr. Raphaely, dated December 19, 2016. Apparently, Dr. Raphaely knows that Dr. Lisan, with an OCD problem, is having typical difficulty with what is known in the OCD world as "flooding", which means overwhelming the OCD patient shortly after lengthy (successful) treatment with an immediately heavy and stressful load. This causes a vulnerable newly recovered OCD person to deteriorate. Although Ron's initial medical documentation form does not

Ms. Susan Fueher, Medical Center Director
Murray D. Altose, MD, Chief of Staff
Louis Stokes Cleveland VA Medical Center
10701 East Boulevard
Cleveland, Ohio 44106
Page 3

specify a time-limit for the "on-call" limitation, you will shortly receive that medical detail,
if you have not already received it from his treating psychiatrist, Dr. Kramer. Ron needs
a relatively brief reasonable but gradual adjustment period for "on-call" duty. The
decision of Dr. Raphaely was to quickly heap a heavy load of it on him, to
mischaracterize his need for a brief period of a temporary light "on-call" load as a
requirement for an indefinite period of no "on-call" whatsoever, and finally making it
clear that this mischaracterized circumstance requires to his being separated from his
current position in the Department of Anesthesiology because at full tilt "on-call" is "an
essential function" of the position (and a no "on -call" position is not currently available).

We will not sit by idly while this kind abuse is visited upon Ron. With a
reasonable adjustment leading up to Ron's assumption of his full share of "on-call "duty
and the cessation of the continual discriminatory harassments and hostile work
environment, there will be no reason or basis to bring about his separation from his
current position. He has rendered long and good service to the VA and, but for his
mistreatment, has and will continue to do so.

We request that his allegations be investigated. We request that no adverse
action against him be taken at this time. We request a short period of time for his
physician to more specifically verify the accommodation for which he is actually asking.
And we request remediation for the continual misconduct that is being visited upon Ron
and apparently upon others: Sex discrimination, age discrimination and (in Ron's case,
in addition), disability discrimination. And, of course, it is unlawful to retaliate against
him because of his communication of complaints and requests in this letter.

Please feel free to contact me as may be helpful to resolve these matters.

Sincerely

Steven A. Sindell

## Steven Sindell

**From:** Raphaely, Susan (VHACLE) <Susan.Raphaely@va.gov>
**Sent:** Wednesday, January 11, 2017 10:55 AM
**To:** Lisan, Ronald M. (VHACLE)
**Subject:** meeting CX



Ron,

Our meeting scheduled for 10am Thursday has been cancelled. Bruce Kafer, the Reasonable Accommodation Coordinator, stated he will reach out to you directly with what has been decided based on your medical documentation.

Susan Raphaely, MD
Chief, Department of Anesthesiology
Louis Stokes VA Medical Center
Cleveland, OH 44106
216-791-3800, ext 6334

Mar 10 2017 12:47PM                                                    No 0372   P. 5

**ATTACHMENT B**                           **MEDICAL CENTER POLICY 003-003**
Ron Lison                                  **March 1, 2016**

FERDAD 800-631-6989    EXHIBIT    **C**

**Sexual Harassment Allegation Checklist**
(Alleged Harasser)

A copy of this checklist will be attached to the written report and submitted to the
Director, LSCVAMC through the EEO/Affirmative Employment Program Manager.

1.    The employee occupies a position that is covered by the bargaining unit; he/she
was advised that he/she may request representation during the fact-finding process.

Not applicable_____ Initials _PdL___ Date 1/10/17

2.    The alleged harasser has been interviewed and the information gathered is
included in the attached report.

Initials_____ Date_____

3.    I have explained to the alleged harasser that counseling is available through the
Employee Assistance Program (EAP) to enable him/her to deal with the trauma caused
by the circumstances. I provided the telephone number to EAP. (1-216-791-3800 ext.
6818)

Initials _PM___ Date ///12/2017

4.    I have ordered the alleged harasser to cease any contact with the alleged victim
except that which is absolutely required for official business.

Initials _AM___ Date 1/10/17         Dr Lison refused to initial
initials _____   1/20/17 - He was Made Aware that he was
5.    I have included my written report, along with the statements made by both parties,    Prior to Advised Elaine or
witnesses, and if applicable, a VA Police report.    reside in the CRVA Lounge

Initials_____ Date_____         Initials _____ date 1/25/17
                                             Rhonda Viola Roe
6.    For EEO Manager.                        refused to initial 1600

     I have made a recommendation as to the Medical Center Director as to whether
an Administrative Investigation Board should be appointed.

Initials_____ Date_____

Mar. 10, 2017 12:47PM                                                    No 0372    P. 2



EXHIBIT

D

## Department of
## Veterans Affairs

# Memorandum

Date:    March 9, 2017

From:    Chief, Anesthesiology Service

Subj:    Written Warning

To:      Ronald M. Lisan, MD, Anesthesiology Service


1.      I have learned of additional serious allegations that were made against you. I was advised that you may have engaged in additional conversations regarding allegations of inappropriate behavior of sexual nature involving female coworkers.

2.      The above-mentioned allegations are potentially serious. If true, they may likely constitute sexual harassment on your part. For this reason, you are hereby warned that such conduct will not be tolerated. While I am bringing these allegations to your attention at the present, be advised that they will be fully investigated. In the meantime, I am placing you on notice that if these allegations are true, you must cease this offending behavior immediately. You were previously instructed to refrain from discussing this allegation with your coworkers. Specifically, you received those instructions on January 10, 2017, January 20, 2017, and January 23, 2017. Additionally, you are to refrain from discussing these allegations with your coworkers. Furthermore, you are not to have any personal contact at or outside of work with Nurse Anesthetists; Ms. Jessica Foster, Ms. Elaine Costanzo, Ms. Rhonda Verb and Ms. Karin Bonfili. You are still required to maintain interactions of professional nature, relating to patient care, with the above named individuals.

3.      If these allegations are not true, and an investigation exonerates you of these charges, you must still be aware of how your interactions with your coworkers are interpreted. Accordingly, you are strongly advised to make no statement, or take no action, which even suggests the remotest possibility of impropriety on your part.

4.      At this time, disciplinary action will not be imposed. As more is learned about the nature of these allegations, you will be advised as to your rights and responsibilities in this matter. Until then, if a personal, medical, or other situation is affecting your conduct on the job, this medical center has an employee assistance program that offers short-term counseling and referral. You may contact EAP Counselors, Dr. Erica Sharkansky or Dr. Diane Johnson, at (216) 791-3800, extension 6922. One of them will be happy to meet with you on a confidential basis.

4.      Should you have any questions regarding my expectations, please see me immediately.


Susan D. Raphaely, MD


_____

Ronald M. Lisan, MD


VA FORM     2105
MAR 1998