IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD LISAN, | ) | CASE NO.  1:18 CV 969 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT WILKE, Acting Secretary of | ) | |
| Veterans Affairs, | ) | |
| | ) | |
| Defendant. | | |

DECLARATION OF BRUCE KAFER
PURSUANT TO 28 U.S.C. § 1746

1. I work in the Louis Stokes Cleveland Veterans' Affairs Medical Center ("VA") office of equal employment opportunity and report to the EEO affirmative employment manager, Andrea Freeman. I have been employed as a registered nurse at the VA since September 1999.

2. I serve as the VA's local reasonable accommodation coordinator ("LRAC"), a position I have held since January 2010.

3. In my capacity as the LRAC, I process reasonable accommodation claims according to applicable policies, including VA Handbook 5975.1.  A true and accurate version of VA Handbook 5975.1 that was in effect in early 2017 is attached as Exhibit 2-A.

4. As LRAC, I am solely responsible for evaluating whether the medical documentation meets the criteria for the provision of a reasonable accommodation. Accordingly, I inform the requestor and management of my evaluation. Typically, a manager or supervisor approves or denies the request pursuant to my evaluation.

5. In Dr. Ronald Lisan's case, the requested accommodation required eliminating an essential function of his position for an unclear period of time. No medical documentation submitted explained how his disability caused functional limitations which would render him unable to perform the "on-call" duties required of his position. In the absence of sufficient medical documentation, I was unable to move forward with the reasonable accommodation process and I informed Dr. Lisan I had to close his accommodation request. In addition, Dr. Lisan admitted he was already performing the on-call function.

1

EXHIBIT
2

6.  Dr. Lisan's reasonable accommodation process was as follows:

   a.  On Monday, December 19, 2016, Dr. Raphaely, the Chief of the Department of
       Anesthesiology, initially contacted me to assist Dr. Ronald Lisan with a
       reasonable accommodation request. Specifically, he was asserting he was unable
       to participate in being on call.  Dr. Raphaely informed me that taking call is an
       essential function of his position as an anesthesiologist who primarily works at the
       Wade Park facility of the VA medical center.

   b.  That same day, Kevin Roach, the administrative officer for the Department of
       Anesthesiology, forwarded me a brief, hand written doctor's note he had received
       from Dr. Lisan's medical provider.  The information I received is attached hereto
       as Exhibit 2-B.  It did not indicate how long Dr. Lisan could not participate in call
       nor did it provide any reason as to why he would be unable to perform essential
       "on call" duties, which is information needed to process a reasonable
       accommodation request.

   c.  I reviewed the medical documentation and found that it did not sufficiently
       explain the functional limitations resulting from his disability nor how the
       disability impaired the performance of Dr. Lisan's essential job duties.

   d.  On December 19, I emailed Dr. Lisan to explain the reasonable accommodation
       process and sent him additional paperwork. In that email, I asked him how long
       the "no call" request was for, whether it was part of a formal treatment program
       with a specific duration, and offered the use of FMLA leave.  I also explained that
       "reassignment" to another position may be an option, if an accommodation is not
       available.  A true and accurate copy of that email is attached as Exhibit 2-C.

   e.  On December 23, 2016, I confirmed that I received additional documentation,
       which did not provide further clarity. A true and accurate copy of the remaining
       medical documentation I received is attached as Exhibit 2-D.

   f.  I initially asked Dr. Raphaely to schedule a meeting with Dr. Lisan so I could
       further discuss Dr. Lisan's reasonable accommodation process with him. The
       purpose of the meeting was to discuss his case as he requested to meet. However,
       later that day I asked Dr. Raphaely to inform Dr. Lisan I needed to cancel the
       meeting.  A true and accurate copy of the email I sent cancelling the meeting is
       attached as Exhibit 2-E.

   g.  On January 17, 2017, I sent Dr. Lisan an email explaining that I completed my
       review of his file and that his medical documentation did not support the VA
       providing him with his requested "no call" accommodation.  A true and accurate
       copy of that email I sent is attached as Exhibit 2-F.

   h.  On January 19, 2017, in response to an email from Dr. Lisan asking how "a
       relatively brief, graduation transition back into the call duties could not be
       considered a 'reasonable' temporary accommodation," I explained why the
       reasonable accommodation process could not be used to facilitate Dr. Lisan's "no
       call" request. A true and accurate copy of that email chain is attached as Exhibit
       2-G.

7. In addition to my LRAC duties, and as an employee within the VA's EEO office, I periodically conduct fact-finding investigations in response to allegations of workplace harassment or employment discrimination.

8. On January 10, 2017, Dr. Raphaely reached out to the EEO office for guidance on how to address possible sexual harassment allegations from some of the certified registered nurse anesthetists (CRNAs) against Dr. Lisan. We directed her to follow Medical Center Policy 003-003 and complete the checklist attached thereto. A true and accurate copy of Medical Center Policy 003.003 is attached as Exhibit 2-H.

9. My colleague, Leshelle Reese, EEO Specialist, and I investigated the sexual harassment allegations throughout February and March. A final copy of the report of our investigation is attached as Exhibit 2-I.

10. Later in 2017, as part of the EEO investigation of Dr. Lisan's complaints to the Office of Resolution Management, I was asked to complete an affidavit and truthfully answer a series of questions. A true and accurate copy of my affidavit is attached as Exhibit 2-J.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _15_ day of May, 2019

Bruce Kafer, RN, MSN
Reasonable Accommodation Coordinator
Office of the Director
VA Northeast Ohio Healthcare System
10701 East Boulevard
Cleveland, OH 44106
(216) 791-2300 ext. 46601
Bruce.Kafer@va.gov

**Department of Veterans Affairs**
**Washington, DC 20420**

**VA Handbook 5975.1**
**Transmittal Sheet**
**November 27, 2013**

### PROCESSING REQUESTS FOR REASONABLE ACCOMMODATION FROM EMPLOYEES AND APPLICANTS WITH DISABILITIES

**1.  REASON FOR ISSUE:**  This Handbook updates the Department of Veterans Affairs (Department or VA) procedures on providing reasonable accommodations to employees or applicants with disabilities, in compliance with all applicable laws and regulations.

**2.  SUMMARY OF CONTENTS/MAJOR CHANGES:**  This Handbook includes multiple revisions based on the expanded legal requirements of the Americans with Disabilities Act Amendments Act (ADAAA) of 2008 and guidance from the U.S. Equal Employment Opportunity Commission (29 CFR 1630, March 25, 2011, pages 16978-17017).  The changes will be incorporated into the electronic version of VA Handbook 5975.1 that is maintained on the Office of Diversity and Inclusion's (ODI) web site at http://www.diversity.va.gov/programs/pwd.aspx.  The revisions include, but are not limited to:

a. Adding and/or revising several definitions for terms such as:  "an individual with a disability," "mitigating measures," "qualified," and "major life activities."

b. Updating procedures related to processing and tracking reasonable accommodation requests.

c. Expansion of disabilities covered by these procedures, and changing/removing the emphasis on the question of coverage.

d. Clarifying the official source of guidance for Reasonable Accommodations.

**3.  RESPONSIBLE OFFICE:**  Office of Diversity and Inclusion (06), Office of Human Resources and Administration.

**4.  RELATED DIRECTIVE:**  VA Directive 5975, Diversity and Inclusion

**5.  RESCISSIONS:**  VA Handbook 5975.1, Processing Requests for Reasonable Accommodation by Employees and Applicants with Disabilities, September 17, 2010.

**CERTIFIED BY:**

**BY DIRECTION OF THE SECRETARY OF VETERANS AFFAIRS:**

**/s/**
Stephen W. Warren
Acting Assistant Secretary for
Information and Technology

**/s/**
Gina S. Farrisee
Assistant Secretary for
Human Resources and Administration

**DISTRIBUTION**

**Electronic Distribution Only**

EXHIBIT
2-A

Case: 1:18-cv-00969-PAB  Doc #: 29-3  Filed:  05/21/19  5 of 109.  PageID #: 202

November 27, 2013                                     VA HANDBOOK 5975.1

**PROCESSING REQUESTS FOR REASONABLE ACCOMMODATION FROM EMPLOYEES AND APPLICANTS WITH DISABILITIES**

**CONTENTS**

**SECTION**                                                        **PAGE**

1.  PURPOSE.................................................................................... **5**

2.  DEFINITIONS ............................................................................... **5**

3.  POLICY..................................................................................... **10**

4.  RESPONSIBILITIES.................................................................... **10**

5.  ENSURING REEMPLOYMENT OF EMPLOYEES INJURED ON THE JOB……………..... **18**

6.  TIME FRAMES…......................................................................... **18**

7.  REQUESTING REASONABLE ACCOMMODATION…................................. **19**

8.  DOCUMENTING THE REQUEST...................................................... **20**

9.  INTERACTIVE PROCESS…............................................................ **21**

10. INTERIM WORKPLACE ACCOMMODATIONS…................................. **21**

11. DETERMINING WHETHER A REQUESTOR IS COVERED BY THE
    REHABILITATION ACT OF 1973, AS AMENDED…............................ **22**

12. WHEN MEDICAL INFORMATION IS NEEDED FOR DISABILITY
    DETERMINATION…................................................................... **23**

13. CONFIDENTIALITY REQUIREMENTS…........................................... **24**

14. IDENTIFYING AND GRANTING ACCOMMODATIONS FOR APPLICANTS…........... **26**

15. IDENTIFYING AND GRANTING ACCOMMODATIONS FOR EMPLOYEES…............ **26**

16. REASSIGNMENT AS A REASONABLE ACCOMMODATION FOR EMPLOYEES........ **27**

17. PARKING…................................................................................ **30**

VA HANDBOOK 5975.1                                    November 27, 2013

**18.  TELEWORK**…..…………………………………………………………………….. **31**

**19.  THE VA/DEPARTMENT OF DEFENSE CAP PARTNERSHIP**……………………… **31**

**20.  VA REASONABLE ACCOMMODATIONS CENTRALIZED FUND**………………… …. **32**

**21.  DENIAL OF REASONABLE ACCOMMODATION REQUESTS**………………… …. **33**

**22.  AVENUES FOR REDRESS OF DENIALS**………………………………………....... **35**

**23.  ADMINISTRATIVE CLOSURE**………………………………………………… **36**

**24.  INFORMATION TRACKING AND REPORTING**……………………………..…….. **36**

**25.  REFERENCES**……………………………………………………………… …. **36**

**26.  ADDITIONAL RESOURCES**…………………………………………………… **37**

**APPENDICES**

**APPENDIX A – PARTIAL LIST OF MAJOR LIFE ACTIVITIES**…………………………….. **A-1**

**APPENDIX B - FORMS:**
      **VA FORM 0857a, WRITTEN CONFIRMATION OF REQUEST FOR**
      **ACCOMMODATION**
      **VA FORM 0857b, ACKNOWLEDGEMENT OF RECEIPT OF REQUEST**
      **VA FORM 0857c, APPROVAL OF INTERIM ACCOMMODATION**
      **VA FORM 0857d, ADMINISTRATIVE CLOSURE**
      **VA FORM 0857e, REQUEST FOR MEDICAL DOCUMENTATION**
      **VA FORM 0857f, ACCOMMODATION REQUEST DETERMINATION**
      **VA FORM 0857h, EMPLOYEE LIMITATIONS ON REASSIGNMENT OPTIONS**
      **VA FORM 0857i, CENTRALIZED ACCOMMODATION FUND APPLICATION**
      **VA FORM 0857j, OFFER OF REASSIGNMENT**
      **VA FORM 0857k, AUTHORIZATION FOR LIMITED RELEASE OF MEDICAL**
      **INFORMATION**

**APPENDIX C: TIMEFRAMES FOR PROCESSING REASONABLE ACCOMMODATION**
**REQUEST(S)**………………………………………………………………………… **A-2**

November 27, 2013                                                    VA HANDBOOK 5975.1

## PROCESSING REQUESTS FOR REASONABLE ACCOMMODATION FROM EMPLOYEES AND APPLICANTS WITH DISABILITIES

**1. PURPOSE.**  To revise the Department of Veterans Affairs' (Department or VA) policy on providing reasonable accommodations to employees and applicants with disabilities in compliance with the Americans with Disabilities Act Amendments Act (ADAAA) of 2008. Although federal agencies are covered by the Rehabilitation Act of 1973, the Act was amended in 1992 to incorporate Title 1 of the ADA.  The policy designates responsibilities, prescribes procedures for submitting and responding to requests for reasonable accommodations, and clarifies the reassignment process.

**2. DEFINITIONS.**

   **a. Designated Management Official (DMO):**  The DMO is the person who has authority to decide whether the organization will provide accommodation; and if so, the nature of the accommodation.  The DMO who makes the decision concerning a request for reasonable accommodation shall also be referred to as the "decision-maker." The employee's first or second line supervisor or other designated official may serve in this capacity.  For applicants, the DMO is usually the Human Resources Director.

   **b. Direct Threat:**  A significant risk (high probability) of substantial harm to the health or safety of the employee or to others that cannot be eliminated or reduced by a reasonable accommodation.  The DMO and Local Reasonable Accommodation Coordinator (LRAC) must engage in an individualized assessment that is based on the medical documentation and the best available objective evidence.  Thus, this decision cannot be based on assumptions, unwarranted fears, generalizations, stereotypes, or myths about a particular disability.

   **c. Effective:**  The accommodation provided does not need to be the one that was requested, but if an alternative is suggested by VA, the alternative accommodation must be effective in meeting the needs of the individual by addressing the barrier created by the functional limitations.  An example of an effective accommodation for a deaf individual who does not use sign language would be real-time captioning that accurately records what is said. An ineffective accommodation would be captioning that was garbled or having a co-worker share meeting notes at the end of a meeting.  If a deaf employee who relies on sign language requests an interpreter, providing an employee who knows some signs, or asking the employee to read lips is not effective.  If a reader is hired as an accommodation for an employee who is blind, the employee must be able to understand the speech of the reader. Similarly, giving the course materials to an employee in lieu of her taking supervisory skills training, because the building is not physically accessible, is not effective.

   When there are two or more accommodations that would be equally effective, the DMO may choose the one that is easier or less expensive to provide.  If more than one accommodation is effective, the preference of the employee should be given consideration. However, the DMO has the ultimate discretion to choose between effective accommodations.

VA HANDBOOK 5975.1                                    November 27, 2013

**d. Essential Functions:**  The essential functions of a job are the occupational duties that are fundamental to the position to the extent that the individual cannot do the job without being able to perform them.  A function can be "essential" if, among other things, the position exists specifically to perform that function, a limited number of other employees can perform the function if given the assignment, or the function is specialized and the incumbent is hired based on his or her ability to perform it.  If a function is listed in the position description as an essential function, but is not performed by the incumbent or takes only a few hours per week, it is not usually considered "essential" for purposes of accommodation.  The following factors are considered in determining whether a job function is essential:

- Whether the reason the position exists is to perform that function;

- The number of other employees available to perform the function or among whom the performance of the function can be distributed;

- The degree of expertise or skill required to perform the function;

- Written job descriptions prepared before advertising or interviewing applicants for the job;

- The amount of time actually spent on the job performing the function;

- The consequences of not requiring the incumbent to perform the function;

- The terms of any collective bargaining agreement;

- The work experience of past incumbents in the job; and/or

- The current work experience of incumbents in similar jobs.

An example of an essential function for a social worker would be the ability to understand what the Veteran is saying.  Speaking and hearing would not be essential functions, as the social worker could use an interpreter or other methods for communication.  An essential function for a management analyst would be the ability to obtain information, synthesize it, and prepare reports.

**e. Extenuating Circumstances:**  Factors beyond the Department's control which make it impossible for a reasonable accommodation to be provided within the time frame are considered to be extenuating circumstances.  Examples of extenuating circumstances include, but are not limited to, delays encountered when ordering equipment that must be back-ordered, the vendor normally used has gone out of business, or there are unexpected delays by the vendor or CAP.   Therefore, the office/facility is encouraged to use charge cards when possible to avoid contracts, ratification, etc.  Review of medical documentation, the absence of the DMO or LRAC, and other situations within VA's control are <u>not</u> considered to be extenuating circumstances and should not delay the processing of a request.

**f. Individual with a Disability:**  An "individual with a disability" is a person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment.  This shall be viewed in the broad sense and not analyzed extensively.  The ADAAA reduced the emphasis on whether an individual has a disability, specifying that the determination should not demand extensive analysis.  For example, a person who has asthma can have trouble breathing, and is covered under the Rehabilitation Act as an individual with a disability.  The individual, with reasonable accommodation when requested, can perform the essential functions of the position without being a direct threat to the health or safety of the individual or others.  As to duration of the disability or functional limitation, if a disability has effects that are not both transitory and minor, it is covered by applicable law.  (Note:  A healthy pregnancy is not considered a disability and is not eligible for accommodation under the Rehabilitation Act, but if there are complications, such as gestational diabetes, that would be covered.)  Pregnancy can be a temporary disability.  See http://www.eeoc.gov/eeoc/publications/fs-preg.cfm.

**g. Light Duty:**  Generally, "light duty" refers to temporary or permanent work that is physically or mentally less demanding than normal job duties.  When an employee has been injured on the job but wishes to return to work, light duty can be offered.  There is no obligation to create a light duty position for an employee with a disability or injury that was not acquired on the job.

**h. Major Life Activities:**  Under the ADAAA, the definition of major life activities is very broad.  Walking, seeing, hearing, talking, lifting, and breathing are major life activities.  Under the ADAAA, major bodily functions are also considered to be major life activities.  Thus, major life activities include, but are not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions.  Consequently, under the ADAAA, cancer is a disability even if it is asymptomatic (neither causing nor exhibiting symptoms of disease), since it affects normal cell growth.  A longer list of major life activities is in Appendix A, but it is to be considered as non-exhaustive.  Most disabilities affect one or more major life activities.  Facility LRACs will check with Office of General Counsel (OGC), Regional Counsel (RC), or National Regional Accommodations Coordinator (NRAC) when in doubt.

**i. Mitigating Measures:**  Medications and assistive devices that an individual uses to eliminate or reduce the effects of functional impairment caused by a disability.  The only mitigating measures that may be considered in determining disability are ordinary eyeglasses or contacts intended to fully correct the vision of an employee or applicant for employment.  Other mitigating measures may not be considered in the determination of an individual's disability status.  For example, if an individual has a prosthetic leg, the person is still considered to have a disability covered by the Rehabilitation Act.  In addition, non-ameliorative effects of mitigating measures, such as a reaction to medication, can be considered when determining disability status.

**j. Physical or Mental Impairment:**  A condition or disorder, including serious side effects of a prescribed medication, which limits the individual in performing a major life activity.  A non-exhaustive list includes any physiological disorder or condition, cosmetic disfigurement, or

anatomical loss affecting one or more major life activities.  This includes any mental or psychological disorder such as post-traumatic stress disorder, traumatic brain injury, severe intellectual disability, organic brain syndrome, emotional or mental illness, and learning disabilities.  Impairments include conditions that are episodic in nature or in remission, such as cancer or epilepsy.  An impairment of a single organ is now covered under the ADAAA.

   **k. Qualified Individual**:  The term "qualified," with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position. Requiring the ability to perform "essential" functions assures that an individual will not be considered unqualified simply because of inability to perform marginal or incidental job functions.

   **l. Reasonable Accommodation:**  A "reasonable accommodation" is a change in the work environment or in work processes that enables an individual with a disability to enjoy equal employment opportunities.

   Types of reasonable accommodations include, but are not limited to: modification or adjustment to a job application process to permit an individual with a disability to be considered for a job, modification or adjustment necessary to enable an individual with a disability to perform the essential functions of the job, and modifications or adjustments that enable employees with disabilities to enjoy equal benefits and privileges of employment.

   Examples of reasonable accommodations include, but are not limited to, the following:

   (1) Making facilities readily accessible to, and usable by, individuals with disabilities;

   (2) Restructuring of marginal job functions;

   (3) Allowing a modified work schedule, telework on a regular or intermittent basis, and/or alternate work locations;

   (4) Obtaining or modifying equipment or devices;

   (5) Appropriately adjusting or modifying examinations and training materials to make them accessible (but retaining the substance);

   (6) Providing readers, interpreters, and other auxiliary aids and assistive technologies; and

   (7) Non-competitive reassignment to another position for which the individual is qualified, as a last resort accommodation.

   **m. Record of Impairment:**  A "record of impairment" is a history of or having been classified (or misclassified) as having a mental or physical impairment that substantially limits

one or more major life activities.  On request, VA is required to consider an accommodation request from an employee with a record of impairment.

**n. Regarded as Having an Impairment or Disability:**  An individual is "regarded as having a disability" if the individual has been subjected to an action prohibited by the ADAAA because of an actual or perceived impairment/disability that is not both transitory and minor. VA is under no obligation to provide reasonable accommodation to an individual who meets only the definition of "regarded as having a disability," but must be careful to not discriminate against these individuals by treating them disparately because of a perceived disability.

**o. Substantially Limits:**  In the regulations implementing the ADAAA, the EEOC stated: "In keeping with the instruction that the term 'substantially limits' is not meant to be a demanding standard, the regulations provide that an impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  However, to be substantially limited in performing a major life activity an individual need not have an impairment that prevents or significantly or severely restricts the individual from performing a major life activity."  We are required to construe the term 'substantially limits' broadly in favor of expansive coverage.

**p. Transitory and Minor:** If an impairment is both transitory (temporary) and minor (does not affect any major life activities), VA is not required to provide an accommodation. The DMO or LRAC must provide evidence that the impairment is actually transitory and minor. If the disability substantially limits one or more major life activities, there is no minimum duration that the disability must last; the previous six-month minimum has been struck-down by Congress through the ADAAA.

**q. Undue Hardship:**  An "undue hardship" is the significant difficulty or expense incurred or anticipated should the organization provide a particular accommodation.  The following criteria are used to determine undue hardship:

(1) Nature and cost of the accommodation.  (Note: Only the Secretary, VA, can deny a request based on cost.  In determining whether an accommodation is too costly, the financial resources of the organization or the Department as a whole should be considered, not just those resources of the individual facility or staff office.)

(2) Overall size of the organizational unit with respect to the number of employees, facilities, and size of the budget.

(3) Type of operation, including composition and structure of the workforce.

(4) The impact of the accommodation on the operation of the organization, including the impact on the ability of other employees to perform their duties and the impact on the organization's ability to conduct business.

**The Office of General Counsel (OGC), Regional Counsel (RC), or National Reasonable Accommodations Coordinator (NRAC) in the Office of Diversity and Inclusion (ODI must be consulted before a denial is communicated to the employee.**

**3. POLICY.**

a. VA shall provide reasonable accommodations to individuals with disabilities to allow them to fully participate in the application process, perform essential job functions, and enjoy equal benefits and privileges of employment, in accordance with all applicable laws, regulations, and VA policies, unless to do so would cause a direct threat to health and safety or undue hardship to the operation of the unit.  Note that whether cost is an undue hardship is determined by the Department's budget and thus, a denial based on cost must be decided by the Secretary of VA.

b. The responsibility for funding the cost of reasonable accommodations resides with the Department.  However, for most requests, the Facility, Administration or Staff Office where the requestor is employed or in the case of recruitment, the organization where the applicant seeks to be employed should make the purchase.  VA facilities and offices can obtain at no cost accommodations that are electronic equipment or information technology from the U.S. Department of Defense's Computer/Electronic Accommodations Program (CAP).  In many cases, reimbursement for the cost of reasonable accommodations not provided by CAP may be obtained at the Department level, through the VA Centralized Reasonable Accommodation Fund in the ODI.  Thus, the facility or office that follows the guidance and expended the funds will be reimbursed in a few weeks.

c. This policy applies to accommodation requests from all VA employees and applicants with disabilities.  Reasonable accommodation requests will be processed in accordance with the procedures contained in this Handbook.  Offices and Facilities are not permitted to write their own Handbook, procedures, or policy.  They may prepare a cover sheet listing the office/facility-level contacts responsible for various aspects of processing requests for accommodation, and logistical details on how the office/facility will comply with these procedures.  Training shall only be conducted by the Office of Diversity or Inclusion (ODI) or OGC, or by an approved designee.

d. It should be noted that if an employee is no longer qualified or able to perform the essential functions of the job, VA is not ordinarily absolved of the duty to provide reasonable accommodation.

**4. RESPONSIBILITIES.**

**a. Secretary of Veterans Affairs.**  The Secretary or Deputy Secretary will ensure that an effective process for responding to all requests for reasonable accommodations is established.

**b.  Assistant Secretary for Human Resources and Administration.**  The Assistant Secretary for Human Resources and Administration (ASHRA), through the Deputy Assistant Secretary (DAS) for Diversity and Inclusion, will:

(1) Maintain oversight for the Department-wide accommodation policy and process, especially denials.

(2) Monitor the timeliness of accommodation request processing, via the Reasonable Accommodation Compliance System.

**c. Assistant Secretary for Information and Technology**.  The Assistant Secretary for Information and Technology will:

(1) Designate an Electronic and Information Technology (EIT) Accessibility Officer (508 Officer) to ensure that all EIT hardware and software are fully accessible to employees with disabilities in the VA workplace, in compliance with Section 508 of the Rehabilitation Act of 1973, as amended.

(2) Ensure that reasonable accommodations related to EIT are provided and installed expeditiously and properly.  Ensure that OIT practices, policies, and procedures facilitate the prompt purchase and installation of EIT accommodations.

(3) Work collaboratively with the ASHRA, the Deputy Assistant Secretary for Diversity and Inclusion, the National Reasonable Accommodation Coordinator (NRAC), and 508 Officer to provide legally compliant, timely, and effective reasonable accommodations and EIT accessibility services.

(4) Ensure that IT procurement procedures do not hinder the purchase of items needed as a reasonable accommodation.

(5) Assign staff to assist the NRAC and LRAC/ALRAC when IT issues arise regarding an accommodation request and the issues are not addressed by the employee's office.

(6) Instruct IT staff to assist in sending software and hardware to an employee's new location if an employee transfers.

**d. General Counsel or Regional Counsels** will:

(1) Serve as a legal expert on reasonable accommodation matters.

(2) Serve as a consultant with regard to prospective denial of reasonable accommodation requests.

(3) Conduct training.

**e. The Counselor to the Inspector General** will:

(1) Serve as a legal expert on reasonable accommodation matters within the Office of the Inspector General (OIG).

(2) Serve as a consultant with regard to prospective denial of reasonable accommodation requests in the OIG.

**f. Under Secretaries, Assistant Secretaries, Deputy Assistant Secretaries, Facility Directors, and Other Key Officials, within their respective organizations will:**

(1) Ensure that the organization or facility has a Local Reasonable Accommodation Coordinator (LRAC) and an alternate (ALRAC). If a new LRAC or ALRAC is appointed, provide to the VA Disability Program Manager the contact information for that individual. Ensure that the LRAC and ALRAC schedule their travel, training or leave so that they are not both out of the office at the same time.

(2) Publicize to all employees via email announcements and posters in public areas the name of the LRAC and ALRAC. Ensure that employees and supervisors know to contact the LRAC with disability accommodation questions.

(3) Provide sufficient resources to ensure effective implementation and management of the process for responding to requests for reasonable accommodation.

(4) Ensure training for all managers, supervisors, team leaders, and designated LRACs and ALRACs regarding their roles in processing requests for reasonable accommodations, including how to submit requests for assistive technology to CAP.

(5) Ensure that the facility is using the VA Handbook and forms. If the facility creates their own approval/denial letters, they must comply with the VA Handbook and include the appeal options listed in VA Form 0857f, Accommodation Request Determination.

(6) Require that the organization or facility have a system for sending any software or hardware, provided as reasonable accommodation, with the employee when an employee transfers to another VA facility. (The employee should notify the LRAC of his or her departure two weeks in advance or as soon as the transfer is confirmed, to ensure arrangements are made).

(7) Periodically evaluate the effectiveness of the process for responding to requests for reasonable accommodations, to ensure that responses are appropriate and timely.

(8) Ensure records of requests for reasonable accommodation are maintained in accordance with procedures outlined in this Handbook.

(9) Ensure that accommodation requests are approved or denied at the lowest possible level, usually at the level of the employee's immediate supervisor.

(10) Refrain from being the Designated Management Official (DMO), except for employees who report directly to him or her, so that he or she can be part of the appeal process when an employee requests reconsideration.

(11) Ensure that each facility designates someone to review requests for reconsideration of the decision made concerning an accommodation request.  If the designated individual is also the DMO for the employee requesting appeal, the reconsideration request should be given to a higher level official.

(12) Ensure that all contracts for the use of external facilities and services reflect the obligation that such facilities and services must be fully accessible to individuals with disabilities.

**g. The Deputy Assistant Secretary for Diversity and Inclusion will:**

(1) Develop a Department-wide reasonable accommodation policy and provide guidance to managers, supervisors, and employees and applicants with disabilities.

(2) Designate the Disability Employment Program Manager and the National Reasonable Accommodation Coordinator.

(3) Maintain the Department-wide Reasonable Accommodation Compliance System (RACS) to monitor the process for responding to requests for accommodation at the Department, Administration, Regional and Facility Levels.

(4) One year from publication of this Directive, will analyze and evaluate the effectiveness of the process for responding to requests for accommodations and will provide recommendations for improvement.

(5) Maintain a current roster of LRACs and Alternate LRACs (ALRACs), and ensure public access to that list.

**h. The National Reasonable Accommodation Coordinator in ODI will:**

(1) Serve as the Department's subject matter expert on reasonable accommodation procedures and provide guidance and training as required.

(2) Receive and compile summary data from the Administrations and Staff Offices for annual reporting purposes.

(3) Serve as a consultant with regard to prospective denial of reasonable accommodation requests.

(4) Serve as the Department's liaison to the Computer Assistance Program (CAP) at the U.S. Department of Defense.

(5) Administer the VA Centralized Reasonable Accommodation Fund.

**i. The Human Resources Management Officer (HRMO)** will:

(1) Work with the LRAC, the DMO and requestors to ensure that accommodations are provided in a timely manner.

(2) Consult with DMOs, as needed, to review the essential functions of positions and assist with identifying possible accommodations.

(3) When appropriate, in the case of employees, work with DMOs, LRACs, and employees to identify positions for potential reassignment.

(4) In the case of applicants, serve as the DMO for requests for accommodation from applicants for employment during the application and interview phase.

(5) If an employment physical is required and the candidate does not pass the physical because of a disability, the HRMO will ensure that the candidate is aware of the reasonable accommodation process.  If the candidate requests an accommodation that appears to effectively address the functional limitations posed by the disability, the HRMO will ensure that the offer is not rescinded because of the results from the physical.  The normal accommodation procedures will then be followed.

**j. DMOs, Supervisors, and Group or Team Leaders (within their respective organizations)** will:

(1) Be knowledgeable about the policy and procedures for processing requests for reasonable accommodation.

(2) Explain to the requestor VA's process for handling accommodation requests and who will issue the decision.

(3) Be aware that as Federal law, the Rehabilitation Act is superior to any office, facility, Administration, or VA policy on telework, hours of duty, parking, etc.  Understand the need to be flexible when considering accommodation requests.

(4) Make the decision regarding a request for reasonable accommodation in consultation, if necessary, with the LRAC and legal counsel, in accordance with the guidance provided in this directive and all applicable laws and regulations.   Consult with OGC, RC or the NRAC before issuing a denial.

(5) Maintain confidentiality of requests for reasonable accommodation and maintain records consistent with the guidance in this Handbook.

(6) Refrain from reviewing the medical documentation or, if the employee is a Veteran, accessing the Veteran's patient/client files.  The LRAC will review the medical documentation and advise the DMO whether the employee has a disability that is covered

**14**

by the Rehabilitation Act and, if so, the functional limitations caused by the disability.

(7) When serving as the DMO, ensure that requests for reasonable accommodation and the process for deciding on those requests are properly documented and provided to the LRAC.

(8) When an employee's request for software or equipment should be granted, inform the LRAC, so that the LRAC can request the items from CAP.

(9) When appropriate, search for and propose an alternative effective accommodation that meets the needs of the employee after discussion with the OGC, RC, or NRAC.

(10) Ensure that accommodation decisions are made as expeditiously as feasible, and that accommodations granted are provided timely, usually within thirty (30) or fewer calendar days from the date of the request. As stated in 2 e above, this timeframe may be extended due to extenuating circumstances.

(11) Designate an alternate to process requests in the absence of the DMO.

(12) Alert the LRAC when an employee with an accommodation is transferring to a new VA location so that the accommodation can be transferred with the employee when such transfer is feasible.

**k. Local Reasonable Accommodation Coordinators (LRACs)** will:

(1) Avoid allowing their primary role at VA to unduly influence their role and decisions as a LRAC.

(2) Explain to employees that Form VA 0857a, Written Confirmation of Request for Accommodation, which is used to confirm the request is optional, but encouraged.

(3) Explain to employees that the requested accommodation must be directly related to the functional limitations caused by the disability.

(4) Assist supervisors and management officials at all levels with processing requests for reasonable accommodation; interpreting regulations and statutes; reviewing existing policies and procedures; and recommending appropriate changes in policy and procedures when necessary to be consistent with this guidance.

(5) Ensure that VA does not request documentation if the disability is obvious or documentation for the same functional limitations has already been provided in support of a request for reasonable accommodation.  When the disability is not obvious or documented, the LRAC may request medical documentation but must use VA Form 0857e.

(6) Check with the OGC, RC, or NRAC for agreement before requesting more documentation than is provided on the completed VA 0867e.

(7) Determine whether the employee or applicant is an "individual with a disability," as defined by Section 4 (f) in this Handbook.  Inform the DMO whether the individual has a disability covered by the Rehabilitation Act and the functional limitations caused by the disability.

(8) Refrain from sharing the specific disability or medical documentation with the DMO or other supervisory officials.

(9) Ensure that all requests outside the authority of the normal DMO, such as parking, facility renovations, information technology, etc. go to the appropriate individual and are processed timely.

(10) Submit to CAP all requests for assistive technology and software.

(11) Consult with EEO offices, ODI, OIT, CAP, the Job Accommodation Network <www.askjan.org> or other resources to identify reasonable accommodation options, if needed.

(12) Maintain the confidentiality of reasonable accommodation requests and related documentation (e.g., keeping medical records separate from personnel records) and maintain records at their facility in a locked file cabinet.

(13) Provide accommodation information to employees and applicants for employment and answer questions about the reasonable accommodation process.

(14) Track and report all requests for reasonable accommodation and the disposition of those requests by using the RACS.

(15) Assist with securing funding for reasonable accommodations not provided by CAP, including those that may be reimbursed through the Centralized Reasonable Accommodation Fund.

(16) Attend reasonable accommodation training.

(17) Ensure that Facility or Staff Office managers and supervisors receive training on their role and responsibilities for providing reasonable accommodation.

(18) Serve as LRAC for another component's virtual employee who is physically located at their facility.  (In these situations the employee's supervisor remains responsible for any purchase necessary to provide accommodation.  Facility modifications will normally come from the Facility's budget.)

(19) Assist an employee who transfers within VA by sending any equipment to the new location when possible.  Work with IT to ensure that any software or hardware is sent to the

new VA location when an employee transfers.  Send the accommodation file to the LRAC at the employee's new VA location.

(20) Alert other LRACS of the availability of equipment after an employee separates from VA, and arrange to send the equipment to an LRAC who has identified a VA employee who needs the equipment.

**l. Managers and supervisors who are not the DMO or LRAC** but receive a request will:

(1) Forward the request to the LRAC, ALRAC, and the DMO as soon as possible, but in no more than five (5) calendar days.

(2) Inform the requestor of the name and contact information of the facility's LRAC and ALRAC.

**m. Employees with Disabilities who Request Accommodation** will:

(1) Inform their supervisor, any manager in their chain of command, or the LRAC of their need for an accommodation.  Requests may be verbal, written, or entered directly into the automated system, known as the Reasonable Accommodations Compliance System (RACS).   The URL is:  https://va-ra.entellitrak.com/

(2) Engage in the interactive process by working collaboratively with their supervisors or DMO, HRMO representatives, VA's Section 508 Accessibility Testing and Training Center, and CAP, to identify accommodations that will enable them to perform the essential functions of their job, participate in VA activities, and/or enjoy the benefits and privileges of VA employment.

(3) Refrain from submitting requests to CAP.  The LRAC and ALRAC are the only individuals authorized to submit requests to CAP.

(4) Provide to the LRAC the Form VA 0857e completed by the employee's health care provider if the disability is not visible, sufficient documentation is not on file, and the LRAC requests documentation of the disability.   Note that the time frame for processing the request stops when medical documentation is requested and resumes when the medical documentation is provided.

(5) Inform the LRAC if transferring to a different VA facility so that, when feasible, any equipment can be sent to the new facility. This should be done as soon as the transfer is confirmed, usually at least two weeks before the transfer.

(6) Cooperate with the LRAC, the agency, or CAP by participating in the interactive process and/or providing medical documentation upon request.  Ensure that the health care provider completes the requested VA Form 0857e.  Failure to cooperate can result in denial of the request for accommodation.

(7) Employees are encouraged to complete VA Form 0857h, Employee Limitations on Reassignment Options, if reassignment is being considered.

**n. Applicants with Disabilities who Request Accommodation** will:

(1) Make a request for an accommodation to the HRMO staff, the HR Liaison arranging the interview, or the hiring official.  Requests may be verbal, written, or entered directly into the automated system, RACS.

(2) Engage in the interactive process by working collaboratively with HRMO representatives, LRAC, or ALRAC to identify accommodations that will help them apply or interview for the job.

**Note**:  Because time is limited during the application process (pre-job offer), applicants will not be asked to provide documentation of a disability.

## 5.  ENSURING REEMPLOYMENT OF EMPLOYEES INJURED ON THE JOB

When an employee has incurred a serious workplace injury or illness, but is ready to return to work if an accommodation is provided, VA will work with the employee to identify and provide an appropriate accommodation.  It is VA's goal to identify injured employees, as defined under the Federal Employees' Compensation Act (FECA), who would benefit from accommodations and reassignment so that we can increase return-to-work outcomes.  Accommodations are provided to employees with temporary injuries or disabilities regardless of whether an Office of Worker's Compensation Programs claim is approved.  Once the employee's physician clears the employee to return to work, it is VA policy that we will provide accommodation when appropriate.

If an on the job injury results in a temporary condition or limitation, light or limited duty, a detail, or a voluntary leave of absence may be offered.  If the limitation is permanent, the duties may need to be restructured, non-essential duties be eliminated, or a reasonable accommodation provided.  In some situations, the employee may need to be reassigned to a different position.

## 6.  TIME FRAMES

All requests for accommodation should be processed as expeditiously as feasible.  Requests from applicants should be expedited and processed within ten (10) calendar days.  Requests from employees should ordinarily be processed within thirty (30) calendar days, not counting the time waiting for medical documentation.

The U.S. Equal Employment Opportunity Commission has ruled that when a disability is known and the accommodation can be easily provided, failure to process the accommodation request quickly could constitute undue delay in violation of the Rehabilitation Act.  Thus, VA offices and facilities are expected to provide the accommodation in a shorter time frame, when possible.  A few examples of accommodations that can and should be provided quickly are:

- A small mirror for an employee with post-traumatic stress disorder to mount on his wall so that he can see people approaching his work area.
- Sign language interpreters or captioning for an employee who is deaf.
- Telework for an office employee who has multiple sclerosis and is fatigued by the commute.
- A fan or heater for an employee who has a disability that causes them to feel too hot or too cold.
- Allowing an administrative employee with cognitive issues to use his or her own tape recorder as a memory device.
- Changing the time of a mandatory meeting to allow an employee to attend physical therapy sessions.
- An accessible parking space for an employee with a mobility impairment at a facility that has free parking spaces.

a. The time frame begins as soon as the applicant or employee requests a change because of a disability.  Do not wait for a written request.

b. Extenuating circumstances, described in section 2 (e) above, do not include the absence of the DMO or other responsible official or the time taken by the LRAC to review medical documentation.  Per the ADAAA guidance, the review of medical documentation should not require extensive deliberation.

c. The time from when medical documentation is requested to when it is provided is not included in the timeframe for processing requests for accommodation.  Thus, there is no reason to give the employee a short "due date" for providing medical documentation.  Some employees may need at least ninety (90) calendar days, as it can be difficult to secure an appointment with a medical specialist.

d. If the accommodation cannot be provided immediately, an interim accommodation should be provided when feasible.  Note that an interim accommodation is not guaranteed; it depends on the employee's job duties and functional limitations. If an interim accommodation would not have an adverse impact on the operation of the unit and is deemed to be appropriate but it has not been determined that the employee has a disability, the employee should be informed that this is not a reasonable accommodation; it is just a courtesy.

e. If the disability is obvious and a situation arises that will prevent a timely decision and/or provision of the requested accommodation, and an interim accommodation is not feasible, please contact the LRAC at the next higher level, the Administration EEO office, or the NRAC for guidance.

For further information on time frames please see Appendix C.

## 7. REQUESTING REASONABLE ACCOMMODATION.

a. A request for reasonable accommodation is an oral or written request made by an applicant or employee or an applicant or employee's representative (e.g., a family member,

health care professional, or an agent acting on behalf of the employee or prospective employee) to the employee's supervisor, any manager in the employee's chain of command, the LRAC, or entered in the automated RACS available on-line. If the request is received by a manager or supervisor who is not the DMO, he or she will forward the written request or inform the LRAC, ALRAC, and the DMO of an oral request within five (5) calendar days.

b. A requestor does not have to use words such as "reasonable accommodation," "disability," or "Rehabilitation Act" in the request. Additionally, an employee may request a reasonable accommodation whenever he or she chooses, even if he or she has not previously disclosed the existence of a disability. The requestor should not be required to make repetitive requests for the same accommodation. In such cases, the supervisor or manager and the requestor should work together to anticipate any situations that may require recurring accommodation (e.g., sign language interpreters or large print documents).

c. Job applicants or their representatives (e.g., a family member, health care professional, or an agent acting on behalf of an employee) may submit a written or verbal request for an accommodation for any part of the application process, including the interview phase, to the HRMO listed as the point of contact in the job vacancy announcement, to the LRAC, or via the automated RACS.

d. Employees and applicants are encouraged to make their request via RACS at <https://va-ra.entellitrak.com> or document their request using VA Form 0857a, Written Confirmation of Request for Accommodation (Appendix B), and give it to their immediate supervisor or the LRAC, so that VA has a record of the request. This form is optional, but helpful.

e. A reasonable accommodation request shall not be the basis for a lower performance appraisal or other adverse action. Facilities are advised to refrain from ordering a fitness for duty examination upon receiving an accommodation request, unless the employee exhibits behavior that appears clearly dangerous to the employee or others.

## 8. DOCUMENTING THE REQUEST.

a. The DMO who receives the request for accommodation should acknowledge receipt in writing by completing and giving VA Form 0857b, Acknowledgement of Receipt of Request (Appendix B), to the requestor and forward a copy of the acknowledgement to the LRAC. This acknowledgement is required even if the employee did not document the request in an email, via VA Form 0857a or via RACS.

b. For job applicants, HRMO will complete VA Form 0857a, Written Confirmation of Request for Accommodation, and forward the form to the LRAC. Diligent effort should be made to process requests from applicants as soon as feasible, in order for them to be able to participate in the application process. A decision on the accommodation should be made within ten (10) calendar days of receiving the request.

November 27, 2013 VA HANDBOOK 5975.1

c. All requests for and provisions of reasonable accommodation must be confidential and documented via RACS.

## 9. INTERACTIVE PROCESS.

a. When the individual makes an oral or written request for reasonable accommodation, managers should ordinarily begin to engage in the interactive process with the individual after receiving notice of the request. The interactive process is the communication between the DMO and the employee, in consultation with the LRAC, to determine how best to respond to the employee's request. During this process, an individualized assessment will be conducted to review essential and marginal job functions, the employee's limitations, and possible accommodations. The interactive process may require more than one discussion.  The DMO or LRAC will also explain the reasonable accommodation process to the employee at this time.

b. Ongoing communication and cooperation are important, especially when a specific limitation, problem, or barrier is unclear or when the disability or an effective accommodation is not obvious.  Thus, interactive discussions should be documented, with at least the date, time, participants, and key points noted.

c. In the case of an applicant for employment, the local HRMO (or his or her designee) will engage in the interactive process with the applicant.

d. Once a job offer has been made, if an accommodation is requested, the interactive process with the new employee with a known disability (post offer but pre-on boarding) should be conducted by the supervisor and the LRAC, in consultation with the GC, RC or NRAC, if necessary, to discuss and identify possible accommodations, and ensure that the requested accommodation is in place when the new employee starts.

**e. Failing to engage in the interactive process is a violation of the Rehabilitation Act of 1973, as amended, and may create liability for VA.**

## 10. INTERIM WORKPLACE ADJUSTMENTS.

Where feasible, interim workplace adjustments or accommodations will be provided for an employee with an obvious or documented disability until a final decision has been made on the request for accommodation (and, if approved, implemented). The interim workplace adjustment should enable the individual to perform the essential functions of the job or enjoy the benefits and privileges of employment without posing a direct threat to anyone's health and safety.  Interim workplace adjustments are not required or guaranteed, but are highly recommended when they can be offered without adverse impact on the operation of the unit.

The office or facility should strive to provide an interim accommodation if there will be a delay in acquiring the approved accommodation.  This is sometimes the case when the accommodation is ordered from the Department of Defense's CAP.  VA Form 0857c, Approval of Interim Accommodation, can be used to document the agreement to make a workplace adjustment until the requested accommodation can be arranged.

## 11. DETERMINING WHETHER A REQUESTOR IS COVERED BY THE REHABILITATION ACT OF 1973, AS AMENDED.

The determination of disability has been simplified by the ADAAA.  To process the reasonable accommodation request, the LRAC will follow all relevant steps.

a. ***Does the individual have a covered disability?***  VA must determine if an employee has a disability covered by the Rehabilitation Act, which may entitle him or her to a reasonable accommodation.  Under the ADAAA, this determination shall not demand extensive analysis.  Note that the LRAC, and not the DMO, makes this determination.  As part of the analysis, the LRAC, will consider the following:

(1) The nature and severity of the individual's impairment. The minimum six month duration requirement is no longer in effect.  Only an impairment that is ***both*** minor and transitory, as defined in section 2 (p) of this Handbook, will not be covered for accommodation purposes.

(2)  The major life activity or activities that the impairment limits.

(3) The extent to which the impairment limits the individual's ability to perform the activity or activities.

(4) The individual's record of impairment, if any.

(5) Medical documentation may be required to make this determination. For those situations, please see section 12 (WHEN MEDICAL INFORMATION IS NEEDED FOR DISABILITY DETERMINATION).

b.  If the medical documentation (VA Form 0857e) clearly states that the individual has a medical condition, the LRAC should determine whether the medical condition is a disability, within the meaning of the Rehabilitation Act.  If so, the LRAC should then let the DMO know that the employee has a covered disability without naming the disability, and explain the functional limitations caused by the disability.  If there is a question, the LRAC can contact the LRAC at the next higher level, the RC, or the NRAC.

c.  If the individual does not have a visible disability and refuses to provide medical documentation, the LRAC will tell the DMO that the employee has not provided documentation to show that he or she has a disability that is covered by the Rehabilitation Act.

d.  If the medical documentation does not support the functional limitations claimed by the employee, or if there is a question about the medical documentation, the LRAC may consult with Occupational Health after redacting the employee's name, the DMO's name, and other identifying information.

e.  DMOs, even those who are medical professionals, shall accept the disability determination made by the LRAC, based on the information from the employee's health care provider.

f.  If it is determined that the individual is not covered by the Rehabilitation Act, the request for accommodation may be denied after consultation with the OGC, RC or the NRAC.

g.  Caution should be taken when making this decision because one purpose of the ADAAA is to make it easier for an individual to establish that he or she has a disability covered by the ADA and the Rehabilitation Act.  For more information on denials, please see section 21, "DENIAL."

## 12. WHEN MEDICAL INFORMATION IS NEEDED FOR DISABILITY DETERMINATION.

Medical documentation should not be requested to support every accommodation request. Medical documentation goes only to the LRAC and is not shared with the DMO or the Reasonable Accommodation Committee (RAC), which is present in some VHA facilities.

a. When a disability or need for reasonable accommodation is not obvious or otherwise not already known to the VA, the LRAC may request that the employee submit appropriate medical documentation about the disability and his or her functional limitations through VA Form 0857e.  The LRAC will give the VA Form 0857e to the employee to have his or her medical provider complete it.  There is no specific time restriction on the employee to produce this information, but ninety (90) calendar days is generally sufficient. The longer time frame is needed because it can be difficult to get an appointment with certain medical specialists.  The time between requesting this information from the employee and receipt of the information is not counted as part of the time limit to make a decision concerning the request for accommodation.  Information on the disability and functional limitations may be obtained by the employee or from an appropriate health care professional, such as a physician, social worker, or rehabilitation counselor.  However, it is important that the medical documentation come from an appropriate professional.  EEOC has held, for example, that a chiropractor is not competent to diagnose fibromyalgia.

b. Requests for medical documentation are limited to the questions on VA Form 0857e.

c. If the information provided by the requestor's health care professional is insufficient to enable an informed determination, additional information may be requested, but only after obtaining agreement from the LRAC at the next higher organizational level (e.g. VISN level). In this instance, the LRAC should explain to the requestor why the submitted documentation is insufficient, identify the information that is needed, and allow the requestor an opportunity to provide the information.

d. When the employee's health care provider has completed the form but it is unclear regarding the functional limitations, the LRAC may consult with Occupational Health under the conditions described in Section 11 (d).

**VA HANDBOOK 5975.1**                                                **November 27, 2013**

e. When there is a need to directly contact the health care professional to clarify an employee's functional limitations, the LRAC must first obtain agreement from the OGC, RC or NRAC.  After obtaining agreement, the LRAC will give the employee VA Form 0857k, Authorization for Limited Release of Medical Information. The contact with the health care professional must be in writing via U.S. Postal Service mail; it cannot be via phone, email, or other non-official method, per the Health Insurance Portability and Accountability Act.  If the requestor refuses to provide the necessary release of medical information and fails to respond to requests for information, after further consultation with OGC, the RC, or the NRAC, the request may be denied. Note that the Form 0857k is not needed when giving the completed (top half) Form 0857e to the employee.

f. In rare cases, if the employee has been cooperative but the completed Form VA 0857e and responses to subsequent inquiries are insufficient to determine whether the employee has a disability within the meaning of applicable law, the LRAC may consult with the OGC, RC, or NRAC to obtain permission to request that the employee be examined by a health care professional of VA's choice, at no cost to the employee.  If the employee or applicant refuses to be evaluated, the reasonable accommodation request may be denied, but only after consultation with the OGC, RC, or the NRAC. Extreme caution should be used in determining to take this step as improper use of this procedure may violate the Rehabilitation Act and create liability for VA.

g. If a fitness-for-duty exam reveals a functional limitation that will adversely impact the employee's ability to perform the essential duties of the job, the employee should not be asked to obtain additional medical documentation.  The exam results should be shared with the employee; and the accommodation process begins at that point.

h. Processing timelines freeze from the time that medical documentation is requested to when it is received.  Even if medical documentation is received from an employee long after it was requested, the DMO must continue or resume processing the request.

**Note**:  The medical documentation may identify a particular accommodation, but is not required to do so. Duration of the disability and need for accommodation also should not be held to a demanding level of specificity, given the inherent uncertainty of some disabilities and impairments.

**EEOC has held that requiring additional medical documentation unnecessarily is a violation of the Rehabilitation Act, so this guidance is essential to the appropriate processing of accommodation requests.  If you have any questions, please contact your EEO Manager, RC or NRAC.**

## 13. CONFIDENTIALITY REQUIREMENTS

Under the Rehabilitation Act, the request, the disability, and any medical information obtained in the accommodation process or via other channels, must be kept confidential.  Confidentiality rules regarding disability status apply to all employees and applicants, whether or not they are individuals with disabilities.  Violation of the Rehabilitation Act's medical confidentiality

**24**

<u>requirements exposes the agency to liability, even if no other action is taken against the individual whose medical information is disclosed</u>.

a. After making a determination that an employee is covered by the Rehabilitation Act, the LRAC should inform the DMO of the relevant functional limitations caused by the disability. The LRAC may <u>not</u> share the name or the particulars of the disability, or any medical information.

b.  Each LRAC shall maintain medical and other records pertaining to requests for reasonable accommodations in a locked dedicated file cabinet, in accordance with the Privacy Act of 1974, 29 CFR 1611, EEOC Order 150.003, and VA information security and privacy policies, including VA Handbook 6500 (Information Security Program).  Other records such as personnel, timekeeping, etc. shall not be kept in this file. The LRAC should raise any information security or privacy concerns, including lost, missing or stolen personally identifiable information, with the operating unit's Information Security Officer (ISO) or Privacy Officer.

c. If the employee transfers to a different VA facility, the medical information and other documentation should be sent via United Parcel Service (UPS) to the LRAC at the new facility and kept in a locked cabinet.

d. Individuals who have access to information necessary to make a decision about whether to grant a requested accommodation may not disclose the information except as follows:

(1) Supervisors and managers (aside from the DMO) who need to know may be told only the necessary restrictions on the work or duties of the employee and the necessary accommodation(s);

(2) In the event of medical emergency, first aid and safety personnel may be informed if an employee's disability might require emergency treatment;

(3) VA and other government officials may be given information necessary to investigate VA's compliance with the Rehabilitation Act;

(4) The information may, in certain circumstances, be disclosed to workers' compensation offices or insurance carriers, and Department EEO officials may be given the information to maintain records and evaluate and report VA's performance in processing reasonable accommodation requests;

(5) Where medical information regarding a requested reasonable accommodation is disclosed, the DMO must inform the recipient about the confidentiality requirements that attach to the information;

e. The medical information or accommodation may not be shared with the employee's co-workers or other employees.  Supervisors can respond to inquiries by explaining that many workplace issues confronted by employees are personal, and that in these circumstances, it is the VA's policy to respect employee privacy.

f. LRACs, DMOs, and other officials are reminded that when an employee is also a Veteran, the records concerning the accommodation request and documentation process (if needed) must be separate from the records concerning the Veteran's medical care from VA staff.  Under no circumstances should the LRAC or DMO access the Veteran's medical or benefits file.  To do so may be grounds for disciplinary action, up to and including removal.

g. Discussion and email traffic concerning accommodation decisions should be limited to the LRAC, Alternate LRAC, DMO, and the employee.  When there is a bona fide need to know, the RC, OGC, or NRAC will be included.  Emails that include any additional employees or offices are not permitted to include the name of the employee or the disability information.

## 14. IDENTIFYING AND GRANTING ACCOMMODATIONS FOR APPLICANTS.

a. The HRMO and the LRAC will review the functional limitations claimed by an applicant requesting accommodation and will identify possible accommodations that will enable the individual to complete the applicant process, including the interview.  Some specific examples of reasonable accommodation for applicants are:

(1) Allowing a hard copy application instead of requiring the on-line process.

(2) Moving the interview location to a facility that is physically accessible.

(3) Providing an oral or sign language interpreter for a deaf applicant at the interview.

(4) Providing application materials and responses in an accessible format, such as digital, large print, or email.

(5) Escorting a blind applicant to and from the interview room.

The above examples are not all-inclusive.  An applicant may request a different accommodation.

b. Time is of the essence for any accommodation, but is especially important when it is for an applicant.

## 15. IDENTIFYING AND GRANTING ACCOMMODATIONS FOR EMPLOYEES.

a. The DMO, the HRMO (as needed), and the LRAC will review the functional limitations and in discussions with the employee, identify possible reasonable accommodations that will enable the employee to perform the essential functions of the position or enjoy the benefits and privileges of employment.  For additional assistance, please see section 26, ADDITIONAL RESOURCES.  The requestor may propose an accommodation; however, the DMO will make the final decision on whether to grant a reasonable accommodation.  Some specific examples of reasonable accommodation are (but are not limited to) the following:

(1) Modifying a cubicle to allow room for a wheelchair or scooter.

(2) Restructuring of marginal (non-essential) job functions which cannot be performed because of functional limitations.

(3) Allowing a modified work schedule or telecommuting for an individual who has a disability that makes commuting difficult.

(4) Obtaining screen-reader software for an individual who is blind.

(5) Printing examinations and training materials in large font.

(6) Providing interpreters or captioning services for an employee who is deaf.

(7) Ensuring that training is offered only at fully accessible facilities.

(8) Providing an assigned accessible parking space close to the building entrance and the employee's office is a routine accommodation that should be granted for an individual with a mobility impairment.

(9) Allowing an employee to use a service animal in the workplace.

(10) Reassignment to another position.  This is the accommodation of last resort and will be considered only if there are no other accommodations available that will enable the employee to perform the essential functions of his or her current job.  Reassignment should be initiated by the DMO, in collaboration with the HRMO.  The interactive process is especially critical when reassignment is being considered.

b. When the disability is known or documented, supervisors should grant accommodation requests, if feasible. Decisions should be made at the lowest level to ensure timeliness and efficiency.  Facility Directors should not serve as the DMO except for employees who report directly to them.  This allows the appeal process for most employees to stay within the facility.

c. Once an accommodation request is approved for a permanent disability/functional limitation, the employee should be allowed to keep the accommodation after the DMO no longer supervises the employee.  In rare instances, the accommodation may need to be changed, but the DMO and LRAC should first check with RC, OGC, or NRAC before making any changes that are not requested by the employee.  The accommodation, including necessary equipment and software, also "goes with" the employee when transferring to a new VA location.  If an employee's job duties change, the LRAC may check to verify that the current accommodation is still needed and effective.

## 16. REASSIGNMENT AS A REASONABLE ACCOMMODATION FOR EMPLOYEES.

This is the accommodation of last resort and will be considered only if there is no other accommodation available that will enable the employee to perform the essential functions of

his or her current job, and the employee has a permanent or long-term disability.  (If the employee has a temporary disability, a detail may be an appropriate accommodation.)  Reassignment should be initiated by the LRAC, in collaboration with the HRMO.  The interactive process is especially critical when reassignment is being considered.

a. Reassignments are non-competitive and ideally are made to a position that has not been announced.

b. Before the organization conducts a search, it may require the requestor to indicate, in writing on VA Form 0857h, Employee Limitations on Reassignment Options, whether he or she is willing to accept reassignment to:

(1) a job series that is different from the series of his or her current position and if so, which job series;

(2) locations outside the facility or the commuting area, and if so, which locations

(3) a lower grade position, if there are no vacant equivalent position; and/or

(4) a part-time position;

c. Reassignment should be to a funded, vacant position, or to a funded position that will be vacant within sixty (60) calendar days from the date the organization commences a search for an appropriate position.  The reassignment is non-competitive.  Most reassignment processes should be completed within ninety (90) calendar days.

d.  The employee's HR Office will:

(1) Obtain the employee's resume and search for suitable job openings, including positions that will be open within the next 60 days, at their facility. The essential elements of the job will be compared to the individual's resume.  The physical requirements of the job as described in the job announcement or position description should not exceed the employee's physical limitations, when appropriate accommodations are considered. HR will email the Service Chiefs, Directors, or other hiring officials at the facility to request information on any vacancies expected to open in the next sixty (60) calendar days, and ask if there are any pending retirements for the job series and pay level identified by the employee.   HR can also review VA vacancies on USAJOBS.

(2) Once a position is identified, HR will consult with the hiring official to confirm the skills sets, duties, etc. that are required, in order to make a qualifications determination.  HR should ask whether there are any qualifications or requirements that were not mentioned in the announcement.   At this point, HR should not mention the reassignment attempt.

(3) Once HR has ascertained all of the requirements for the position, it will compare them to the employee's skills, experience and knowledge.  If the employee qualifies for the position

and can perform the essential functions of the position, with or without accommodation, HR will inform the hiring official that the position must be held for the employee.

(4) If the employee meets the minimum qualifications for the position identified, the placement should be non-competitive.  Thus, there is no interview or ranking process.

(5) If no position is found at the current location, HR will share the employee's resume and job/pay choice with the other facility or facilities identified by the employee.  The HR staff at that location or those locations will follow the guidance in (1) to (4) above.

(6) HR will cooperate with any other HR office in VA that asks for a search of suitable positions for an employee who must be reassigned as a disability accommodation.  For the purposes of reassignment, all components of VA are considered to be one agency; the employee may request reassignment to any component/facility.

(7) This process will continue until a position is found or 90 (ninety) calendar days expire.

    e. Reassignment in the same location will be sought first but if the employee agrees to a broader search, reassignment can be made to positions in VA facilities and Administrations beyond the organization or facility where the requestor was originally employed.  Relocation costs will be provided only if indicated in the vacancy announcement or if relocation expenses are normally paid with respect to the position identified.

    f. The HR staff should explain to the supervisor for the identified vacancy:  "Your vacancy was identified as a suitable position for an employee who needs a reassignment as an accommodation.  VA is required to follow U.S. Equal Employment Opportunity Commission (EEOC) guidance in this matter; the EEOC interprets agency obligations under the Rehabilitation Act of 1973, as amended.  Therefore, this reassignment is non-competitive.  The Staffing Specialist reviewed the job description and compared it to the employee's resume, and he was found to be qualified.  If you wish to meet the employee before he comes on board, you may do so, but we need to stress that this is not an interview.  It has already been decided that this employee will be reassigned to this position.  Please note that an individual's disability status is private information and may not be shared with anyone not having a bona fide, business related need to know.  I want to thank you for your support of VA's efforts to comply with legal requirements."

    g. Once the OHR of the facility to which the employee will be reassigned has identified an appropriate reassignment, he or she will notify the employee or applicant, in writing.  The OHR should also notify the employee's OHR of the job offer.

    h. Reassignment must be considered as an accommodation prior to terminating an employee with a disability who cannot be accommodated in his or her current position.  In this situation, reassignment should be considered even if not specifically requested.

    i. Once the job offer is made, the employee's OHR or LRAC will give the employee a completed VA Form 0857j, Offer of Reassignment.

j. The employee will have fourteen (14) calendar days from his or her receipt of the offer to consider whether to accept the offered reassignment. The identified vacancy must be held open during this time.

k. If the employee is moving to a new location and has VA or CAP issued equipment, that equipment follows the employee to the new location.

l. If other VA employees applied for the slot that will be filled by the reassigned employee, the manager/supervisor at the new location may only tell the unsuccessful candidates that the individual "…was selected in compliance with applicable laws."  Under no circumstances should they tell anyone that the individual was placed as a reasonable accommodation, and no mention should be made of the disability.

m. If the requestor has identified a vacant, funded position, the essential functions of which he or she claims he or she can perform, HR must make a sufficient inquiry to determine whether the reassignment proposed by the requestor would effectively accommodate his or her disability, and whether the position is otherwise suitable.  If so, the requestor should be offered and placed in the position non-competitively.

n. If HR is unable to identify a suitable position to which the employee can be reassigned, the request will be denied and the employee will be advised as to avenues for redress (Section 19 of this Handbook), using VA Form 0857f.

## 17.  PARKING

a.  When there are a limited number of employee parking spaces, employees with mobility impairments or a disability that precludes them from using public transportation have priority over all other groups, per Title 41 CFR § 102-74.305.  Additional handicapped (HC) spaces will have to be created if a facility does not have enough HC parking spaces for the number of employees with mobility impairments who requested parking as a reasonable accommodation. Facilities may NOT require employees to arrive early in order to get a space.  Assigning each HC space to a specific employee is highly recommended.

b.  When an employee requests a space near the building as a reasonable accommodation (and goes through the accommodation process), that employee must be provided an assigned space with the shortest route to their workspace.  The Americans with Disabilities Act Accessibility Guidelines specify the size of the space and the access area.

c.  Every facility that provides any parking spaces to employees MUST have a standardized method for ensuring that employees with mobility impairments receive the parking spaces that are closest to the building if requested, or spaces large enough for egress.  This applies to all VA facilities, including leased facilities.

**November 27, 2013**                                              **VA HANDBOOK 5975.1**

## 18.  TELEWORK

a.  Telework can be an appropriate reasonable accommodation for an employee with a disability.  Further, an employee with a disability may also be permitted to telework when other staff members are not.  As Federal law, the Rehabilitation Act is superior to any office, facility, or agency policy on telework.

b.  When telework is provided as an accommodation, there is more flexibility in the number of days and the frequency of telework.  For example, an employee with a disability that does not hinder productivity but does make it difficult to come to the office on a daily basis may be allowed to telework up to five days a week.  Alternatively, an employee may have a disability that is aggravated by extreme temperatures or poor air quality and will need a telework agreement permitting telework on days when these situations occur.

c. If an employee is approved for telework and needs the same equipment to work from home, the equipment/assistive technology should be provided.  Examples are ergonomic desks, JAWS software, etc.  If the employee has the necessary equipment in the office, but will be teleworking full time, the equipment should be moved to the employee's home.  When the need for telework ends or the employee leaves VA, the equipment must be returned to the facility.

## 19. The VA-DoD PARTNERSHIP REGARDING THE COMPUTER/ELECTRONIC ACCOMMODATIONS PROGRAM (CAP).

a. VA facilities and offices should fully utilize VA's partnership agreement with DoD's CAP, which provides assistive technology free of charge to individuals with disabilities who are Federal employees or participating in the Workforce Recruitment Program.  Accommodation requests for assistive technology should be made directly to CAP online by the LRAC or ALRAC after an employee's request is approved.  Only the LRAC and ALRAC are authorized to submit requests to CAP.

b. CAP provides assistive technology for Federal employees and Workforce Recruitment Program interns who are blind, have low vision, are deaf, hard of hearing, or have dexterity, communication, cognitive, or learning disabilities, post-traumatic stress disorder (PTSD) and other disabilities.

c. CAP, when necessary, can conduct a needs assessment to identify the most appropriate solutions for an individual requesting a reasonable accommodation when it is unclear what would be most effective.  When feasible, CAP will provide the accommodation. CAP covers the cost of installation, integration, and training on assistive technology.  Before requesting a needs assessment from CAP, the employee's functional limitations and duties should be discussed with staff at the Job Accommodation Network (JAN) <www.askjan.org>.  JAN can often suggest a suitable accommodation.

d. In some cases, CAP staff will have questions, and may even request medical documentation. These inquiries should be addressed as soon as possible. A lack of response

**November 27, 2013**                                        **VA HANDBOOK 5975.1**

f. To request reimbursement from the Centralized Fund, follow the instructions on the website:  <http://www.diversity.va.gov/programs/pwd.aspx#fund>

## 21.  DENIAL OF REASONABLE ACCOMMODATION REQUESTS.

a. After consultation with the NRAC or Regional OGC, the DMO may deny the request for accommodation for the following reasons:

(1) **Undue Hardship**.  A determination of undue hardship means that VA finds that a specific accommodation would be significantly difficult to provide, or would fundamentally alter the nature of the operations of the affected VA organization, as defined earlier.  Before reaching this determination, the DMO, in consultation with the LRAC, must explore whether other effective accommodations are available and can be provided.
(Note: In determining whether an accommodation poses an undue hardship, the financial resources of the organization or the Department as a whole should be considered, not just the resources of the individual facility or staff office.  Thus, only the Secretary, VA, can deny a request based on cost, and facilities can invoke undue hardship only for impact on operations.)

(2) **Insufficient Medical Documentation**. The employee or applicant, when requested, did not provide sufficient medical documentation to establish a covered disability or a need for reasonable accommodation.  <u>Medical documentation should not be requested when the disability is obvious or the employee has already submitted documentation to VA in the past for the same functional limitation.</u>

If medical documentation is received from an appropriate health care provider individual or entity, states the disability and nature of the impairment (the expected/likely duration, its severity, and one or more activities it limits including the extent/degree to which they are limited) and either the reason the individual requires accommodation or how the accommodation will assist the individual, it is VA's policy to not request additional medical documentation.  Instead, the facility or office must move to the decision process.  Additional documentation can be requested only if the medical provider did not answer the questions on VA Form 0857e, and/or the employee is unwilling to ask the medical provider to answer the questions.

(3) **Removes Essential Function(s)**. The requested accommodation would require the removal of an essential function from the position occupied by the employee or from the position for which the applicant applied. See section 2 (d) for the definition of essential functions.

(4) **Lowers Standards**. The requested accommodation would require lowering a performance or production standard that is required of all employees in similar positions (job series/grade level). To invoke this as the reason for denial, the performance or production standard must exist prior to the time of the request.

(5) **Direct Threat**. The individual poses a "direct threat" to the health and safety of himself or herself or others. To meet this factor, there must be a high probability of substantial harm that cannot be eliminated or reduced by providing an accommodation.   In those instances, the DMO must consider the limitations of the individual, specifically, the risk posed by the impairment or functional limitation, the duration of the risk, the nature and severity of the potential harm, the likelihood that the harm will actually occur, and imminence of the potential harm.  Per EEOC guidance, direct threat determinations, as with all decisions related to reasonable accommodation, are made on a case by case basis; the decision <u>may not be based on generalizations or assumptions</u>.  A health care professional, facility safety officer, or RC may be consulted for assistance.

b. The DMO may NOT deny the request for accommodation for the following reasons:

(1) A bias against the employee or the accommodation process.

(2) The facility cannot fund the cost of the accommodation. The funding is the responsibility of VA as a whole. Thus only the Secretary, VA may deny an accommodation based upon cost.

(3) The requested accommodation is/requires a change or exception to an office or facility policy. There will be situations when an accommodation will mean a departure from routine practices or procedures.  For example, if work duties can be performed off site, but the office has a practice of not allowing telework, an employee who finds the commute to be too challenging may be allowed to telework.  In the same vein, a parking space near the building should be granted when requested by an employee who has a mobility impairment. The Rehabilitation Act of 1973 supersedes a facility's parking, telework and other policies if the policy, in its application, denies an individual with a disability reasonable access to the workplace.

(4) Based upon the fact that non-disabled employees are not granted the same privilege. People who do not have a disability are not a protected class, and there is no reason to compare the two groups.

c. **Denial of a request from an employee**.  If the DMO cannot grant a requested accommodation, he or she must complete VA Form 0857f, Accommodation Request Determination, explaining in detail why the request was denied.  The DMO must then share the VA 0857f with the NRAC in ODI, the RC in the facility's geographic area or, if the requestor is employed by OIG, the DMO may consult with the Counselor to the Inspector General.  The aforementioned offices will only serve as consultants and concurrence is not required.  Once a final determination is made, the DMO must notify the employee of the denial in writing, using the VA 0857f, which provides details on the specific reason for the denial and informs the employee of possible avenues of redress.

d. **Denial of a request from an applicant**.  If the HRMO cannot grant a request for accommodation, the HRMO must consult with the NRAC or the Office of General/Regional Counsel in the facility's geographic area. If the requestor is an applicant for a position in OIG,

November 27, 2013                                    **VA HANDBOOK 5975.1**

the DMO may consult with the Counselor to the Inspector General. All denials will be communicated via a completed VA Form 0857f, Accommodation Request Determination (Appendix B). The aforementioned offices will only serve as consultants and concurrence is not required. Denial of a request from an applicant should be very rare. The HRMO should notify the applicant in writing of the denial within <u>ten</u> (10) calendar days of the initial request and inform the applicant of possible avenues of redress.

## 22. AVENUES FOR REDRESS OF DENIALS.

a. If an employee or applicant believes that he or she has been denied a reasonable accommodation, he or she has the following options:

(1) **Reconsideration**. Upon receipt of the decision from the DMO, the employee or applicant has seven (7) calendar days to request reconsideration. After receiving a request for reconsideration, a senior official above the DMO has fourteen (14) calendar days to render a decision and notify the requestor, in writing. A final interactive process with the LRAC or ALRAC, the employee, and the senior official is recommended, to ensure that any concerns are heard before a final decision is made. The Form VA 0857f can be used to document the decision; a copy should be given to the employee.

(2) **EEO Complaint**. To file an EEO complaint, applicants for employment or employees must contact an EEO counselor within forty-five (45) calendar days of receiving the decision, pursuant to 29 C.F.R. Part 1614. Contact your local Office of Resolution Management for further information.

(3) **Union Grievance**. Bargaining unit employees may file a grievance in accordance with applicable Collective Bargaining Agreements. The union's negotiated grievance procedure will apply. Contact your local union representative for further information.

(4) **Administrative Grievance**. This is a procedure used by non-bargaining unit employees who may file an Administrative Grievance to challenge the decision within fifteen (15) calendar days of receiving the decision by contacting anyone in their chain of command. The employee should also inform Human Resources that they are filing an Administrative Grievance. Contact your local Human Resources Office for further information.

(5) **Alternative Dispute Resolution (ADR)**. Employees and applicants are encouraged to participate in informal resolution processes available to address the reasonable accommodation outcome. The ADR process is outlined in VA Directive 5978: Alternative Dispute Resolution. Individuals may participate in ADR as part of the above avenues of redress or independently. If participation is independent of the above avenues of redress, it does not meet the requirements for filing claims under the aforementioned processes. If the employee believes she or he may also want to pursue other avenues of redress, the employee should check with the appropriate EEO/Union/HR office to ensure that time requirements are met. Find your local ADR Coordinator at: <http://www1.va.gov/adr/docs/ADR_Coordinators_List.pdf> and contact them for further information.

the DMO may consult with the Counselor to the Inspector General. All denials will be communicated via a completed VA Form 0857f, Accommodation Request Determination (Appendix B). The aforementioned offices will only serve as consultants and concurrence is not required.  Denial of a request from an applicant should be very rare.  The HRMO should notify the applicant in writing of the denial within <u>ten</u> (10) calendar days of the initial request and inform the applicant of possible avenues of redress.

## 22. AVENUES FOR REDRESS OF DENIALS.

a. If an employee or applicant believes that he or she has been denied a reasonable accommodation, he or she has the following options:

(1) **Reconsideration**. Upon receipt of the decision from the DMO, the employee or applicant has seven (7) calendar days to request reconsideration.  After receiving a request for reconsideration, a senior official above the DMO has fourteen (14) calendar days to render a decision and notify the requestor, in writing.  A final interactive process with the LRAC or ALRAC, the employee, and the senior official is recommended, to ensure that any concerns are heard before a final decision is made.  The Form VA 0857f can be used to document the decision; a copy should be given to the employee.

(2) **EEO Complaint**. To file an EEO complaint, applicants for employment or employees must contact an EEO counselor within forty-five (45) calendar days of receiving the decision, pursuant to 29 C.F.R. Part 1614.  Contact your local Office of Resolution Management for further information.

(3) **Union Grievance**. Bargaining unit employees may file a grievance in accordance with applicable Collective Bargaining Agreements.  The union's negotiated grievance procedure will apply.  Contact your local union representative for further information.

(4) **Administrative Grievance**. This is a procedure used by non-bargaining unit employees who may file an Administrative Grievance to challenge the decision within fifteen (15) calendar days of receiving the decision by contacting anyone in their chain of command. The employee should also inform Human Resources that they are filing an Administrative Grievance.  Contact your local Human Resources Office for further information.

(5) **Alternative Dispute Resolution (ADR)**.  Employees and applicants are encouraged to participate in informal resolution processes available to address the reasonable accommodation outcome.  The ADR process is outlined in VA Directive 5978: Alternative Dispute Resolution.  Individuals may participate in ADR as part of the above avenues of redress or independently.  If participation is independent of the above avenues of redress, it does not meet the requirements for filing claims under the aforementioned processes.  If the employee believes she or he may also want to pursue other avenues of redress, the employee should check with the appropriate EEO/Union/HR office to ensure that time requirements are met.   Find your local ADR Coordinator at: <http://www1.va.gov/adr/docs/ADR_Coordinators_List.pdf> and contact them for further information.

## 23.  ADMINISTRATIVE CLOSURE.

Under certain circumstances, a request may be administratively closed, using line 10 on VA Form 0857d.  When the employee does not respond to emails and phone calls for thirty (30) calendar days, creating the impression that s/he has abandoned the process, the request can be closed.  At any later date, when the employee expresses an interest in resuming the process, the request can be re-opened and the time frame begins again.

## 24. INFORMATION TRACKING AND REPORTING.

a. LRACs shall be responsible for retaining records related to a particular individual who has requested a reasonable accommodation for the duration of that individual's employment in the Department. These records include any documentation of the individual's disability or need for reasonable accommodation, as well as information about the disposition of that individual's accommodation request. These records must be kept separate from the individual's personnel file.  If an individual transfers to another organization in VA, the records should go to the LRAC in the new organization.  Three years after the individual separates from VA, the medical documentation and other information regarding the individual accommodation request should be destroyed, as instructed by the General Records Schedule.

b. LRACs shall be responsible for tracking all reasonable accommodation requests via RACS and utilizing applicable forms contained in this Handbook.

c. Cumulative information will be retained for at least three years in order to track VA performance and assess whether accommodation requests are being processed adequately.

## 25.  REFERENCES

a.  Rehabilitation Act of 1973, as amended.

b.  Title 1 of the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008 (ADAAA).

c.  EEOC guidance on the ADAAA.

d.  Executive Order 13548

e.  OPM's Model Strategies for Recruitment and Hiring of People with Disabilities as Required Under Executive Order 13548.

f.  Collective bargaining agreements, as appropriate.

g.  EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act

h.  EEOC Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended (29 CFR 1630 Appendix)

i.  Executive Order 13164, Requiring Agencies to Establish Procedures to Facilitate the Provision of Reasonable Accommodation

j.  EEOC Policy Guidance on Executive Order 13164

k.  Human Resources Information Letter 05-12-02, Employment of Persons with Disabilities.

l.   The Memorandum for Under Secretaries, Assistant Secretaries, Other Key Officials and Facility Directors on the Americans with Disabilities Amendments Act of 2008, February, 23, 2009.

m. Privacy Act of 1974 (Public Law 93-597).

n.  Title 29 Code of Federal Regulations (CFR), Sections 1611, 1614, and 1630.

o.   Title 29 United States Code (U.S.C.), Sections 791, 792, and 793.

p.   VA Directive 5978: Alternative Dispute Resolution

## 26. ADDITIONAL RESOURCES.

a. **U.S. Equal Employment Opportunity Commission** at
<http://www.eeoc.gov/federal/directives/index.cfm> provides resource information and policy guidance for processing reasonable accommodation requests and frequently asked questions.

b. **Job Accommodation Network (JAN)** at <http://askjan.org> is funded by the U.S. Department of Labor's Office of Disability Employment (ODEP) Policy and provides information on the Americans with Disabilities Act (ADA) and a wide range of reasonable accommodations options for many different types of disabilities.

c. **VA's Section 508 Program Office** at <http://vaww.section508.va.gov/> is responsible for ensuring that VA's Electronic Data Systems and websites are accessible to individuals with disabilities under the authority of Section 508 of the Rehabilitation Act of 1973.

d. **VHA, Office of Health Information, Health Data and Informatics.**  Section 508 Office (19F) also provides section 508 consulting services for VHA organizations that need assistance. Web site:  <http://vaww.vista.med.va.gov/508workgroup/>

e. **VA's ODI web site** for the People with Disabilities Program provides additional information regarding VA's reasonable accommodation procedures. Web site: <http://www.diversity.va.gov/programs/pwd.aspx>

Case: 1:18-cv-00969-PAB  Doc #: 29-3  Filed:  05/21/19  41 of 109.  PageID #: 238

**Major Life Activities:**

Activities such as caring for one's self, performing activities of daily living, performing manual tasks, walking, seeing, standing, sitting, reaching, lifting, bending, speaking, hearing, breathing, learning, concentrating, thinking, interacting with others, and working.  Also included are the operations of major bodily functions, including, but not limited to:  functions of the immune system, special sense organs, and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions.

**FORMS:**

VA Form 0857a, Written Confirmation of Request for Accommodation
http://www.diversity.va.gov/programs/files/pwd/VA0857a.pdf

VA Form 0857b, Acknowledgement of Receipt of Request
http://www.diversity.va.gov/programs/files/pwd/VA0857b.pdf

VA Form 0857c, Approval of Interim Accommodation
http://www.diversity.va.gov/programs/files/pwd/VA0857c.pdf

VA Form 0857d, Administrative Closure of Accommodation Request
http://www.diversity.va.gov/programs/files/pwd/VA0857d.pdf

VA Form 0857e, Request for Medical Documentation
http://www.diversity.va.gov/programs/files/pwd/VA0857e.pdf

VA Form 0857f, Accommodation Request Determination
http://www.diversity.va.gov/programs/files/pwd/VA0857f.pdf

VA Form 0857g, Denial of Accommodation Request
http://www.diversity.va.gov/programs/files/pwd/VA0857g.pdf

VA Form 0857h, Employee Limitations on Reassignment Options
http://www.diversity.va.gov/programs/files/pwd/VA0857h.pdf

VA Form 0857i, Centralized Accommodation Fund Application
http://www.diversity.va.gov/programs/files/pwd/VA0857i.pdf

VA Form 0857j, Offer of Reassignment
http://www.diversity.va.gov/programs/files/pwd/VA0857j.pdf

VA Form 0857k, Authorization for Limited Release of Medical Information
http://www.diversity.va.gov/programs/files/pwd/VA0857k.pdf

**November 27, 2013**

**VA HANDBOOK 5975.1**
**APPENDIX C**

| | |
|---|---|
| **Timeframes for Processing Reasonable Accommodation Request(s)** | |
| **The entire reasonable accommodation process must be completed as soon as possible, but within 30 calendar days.  The timeframes below are suggested guidelines.** | |
| Day 0<br>Initial Request | An employee, an applicant for employment, or an individual acting on behalf of the employee or applicant, requests an accommodation, either orally or in writing |
| Within 5 calendar days of receiving initial request | The individual who received the request sends the employee VA Form 0857A "Confirmation of Reasonable Accommodation" and explains that completion is voluntary but would be appreciated.  The DMO responds to the employee or applicant in writing using VA Form 0857b, "Acknowledgement of Receipt of Request" and provides a copy of that response to the LRAC.  The DMO or supervisor begins the interactive process with the employee or applicant. |
| Within 10 calendar days of receiving initial request | If the employee's disability is not obvious, or VA has no documentation, the DMO decides if medical information is needed; if so, the LRAC will request and facilitate collection of medical information.  **Note**: Timeframes freeze from the time that medical documentation is requested to the time that it is received.<br><br>*For Applicants*:  The HRMO should make every effort to process requests from applicants as soon as possible in order for them to be able to participate in the application process.  The HRMO should notify the applicant in writing of the denial within ten calendar days of the initial request and inform the applicant of possible avenues of redress (see Form VA 0857f).  If the disability is not obvious or VA has no documentation, and the applicant does not provide a certification letter, HRMO will request medical documentation.  If the applicant fails to produce required medical documentation, VA is not required to provide accommodation. |
| Within 13 calendar days of receiving initial request | When medical documentation *is not* requested (i.e., the disability is obvious or VA has documentation), the DMO determines whether the individual is a Qualified Individual with a Disability, in consultation with the LRAC.<br><br>Where sufficient medical documentation is received, a determination will be made on whether the individual is a Qualified Individual with a Disability.  If the documentation is not sufficient, the DMO or the LRAC may request additional medical documentation from the requestor.  Again, timeframes freeze until the additional medical documentation is provided.  If an interim workplace adjustment is possible, it should be made. |
| Within 27 calendar days of receiving initial request | The DMO decides whether accommodation will be granted.  When approving a request, use Form VA 0857f "Accommodation Request Determination."  If the decision is to deny the request, the DMO will consult with General/Regional Counsel or ODI, prior to issuing denial of the request. If accommodation is denied, inform requestor, in writing, of denial and his or her right to request reconsideration, using VA Form 0857f.  Provide a copy to the LRAC. |
| Within 30 calendar days of receiving initial request | Provide accommodation or, in extenuating circumstance, an interim workplace adjustment. |

Document ID: 0.7.2655.53438

| | |
|---|---|
| From: | Roach, Kevin D. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhacleroachk> |
| To: | Kafer, Bruce L. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclekaferb>; Raphaely, Susan (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhacleraphas>; Lisan, Ronald M. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclelisanr> |
| Cc: | Zekanovic, Jelena (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclezekanj>; Beham, Shawn T. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclebehams> |
| Bcc: | |
| Subject: | RE: Reasonable accommodations Dr. ronald Lisan |
| Date: | Mon Dec 19 2016 12:16:36 EST |
| Attachments: | image001.png Written Confirmation of Request for Accommodation (Lisan, Ronald) with Medical Documentation.pdf |

Hi Bruce,

Please see the attachment which contains Dr. Lisan's request for accommodation and medical documentation.

Thank you,

Kevin D. Roach, MBA

Health System Specialist

Chief of Staff/Anesthesiology Service

VA Phone: 216-791-3800 x5165

Cell: 216-854-7916

From: Kafer, Bruce L. (VHACLE)
Sent: Monday, December 19, 2016 11:36 AM
To: Raphaely, Susan (VHACLE); Lisan, Ronald M. (VHACLE)
Cc: Zekanovic, Jelena (VHACLE); Roach, Kevin D. (VHACLE); Beham, Shawn T. (VHACLE)
Subject: RE: Reasonable accommodations

Dr. Raphaely / Dr. Lisan, I will need medical documentation to receive with a VA Reasonable

EXHIBIT
3 B

USA-004481

Accommodation request. You may fax to my secure fax at 216-707-7627 or scan email to me. Accordingly, we can then proceed further.


Thank you,

-Bruce


Bruce Kafer, RN, MSN

Local Reasonable Accommodation Coordinator (LRAC)

Minority Veterans Program Coordinator

Office of the Director

Louis Stokes Cleveland VA Medical Center

10701 East Boulevard

Mail Stop: EEO

Cleveland, Ohio 44106

(216) 791-2300 ext. 6601

Bruce.Kafer@va.gov


FAX: (216) 707-7627


Equal Employment Opportunity, Diversity and Inclusion, Statement of the Month:

"The true measure of the value of any business leader and manager is performance" ~Brian Tracy


From: Raphaely, Susan (VHACLE)
Sent: Monday, December 19, 2016 10:50 AM
To: Kafer, Bruce L. (VHACLE); Lisan, Ronald M. (VHACLE)
Cc: Zekanovic, Jelena (VHACLE); Roach, Kevin D. (VHACLE); Beham, Shawn T. (VHACLE)
Subject: Reasonable accommodations

Bruce,

I am reaching out to you for your assistance with a request I have received for accommodations by Dr. Ronald Lisan.  Dr. Lisan is a long standing member of the anesthesia department and due to changes in his health status he is stating he is unable to participate in call.  After much consideration, I feel that as a department we are unable to meet his request.  Taking call is an essential function of his position. All the anesthesiologists within the Service who work primarily at Wade Park need to be able to participate in the call schedule.  We do have one position for a full time, no call anesthesiologist that works exclusively at the ASC, but that position is currently filled.

Therefore, I am would request that if Dr. Lisan is indeed unable to perform the essential functions of his position, you could assist him in alternative reasonable accommodations.

I did receive a signed note by one of Dr. Lisan' s care providers if you need that for your documentation.  Let me know and I will forward that to you.

Sincerely,

Susan Raphaely, MD

Chief, Department of Anesthesiology

Louis Stokes VA Medical Center

Cleveland, OH 44106

216-791-3800, ext 6334

Document ID: 0.7.2655.53438-000001

| | |
|---|---|
| Owner: | Roach, Kevin D. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhacleroachk> |
| Filename: | image001.png |
| Last Modified: | Mon Dec 19 11:16:36 CST 2016 |



Document ID: 0.7.2655.53438-000002
Owner:          Roach, Kevin D. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhacleroachk>
Filename:       Written Confirmation of Request for Accommodation (Lisan, Ronald) with Medical
Documentation.pdf
Last Modified:  Mon Dec 19 11:16:36 CST 2016

Written Confirmation of Request for Accommodation (Lisan, Ronald) with Medical Documentation.pdf for Printed Item: 1602 ( Attachment 2 of 2)

Case: 1:18-cv-00969-PAB  Doc #: 29-3  Filed: 05/21/19  50 of 109.  PageID #: 247

OMB Number: 2900-0767
Respondent Burden: 10 minutes

**VA** Department of Veterans Affairs

# WRITTEN CONFIRMATION OF REQUEST FOR ACCOMMODATION

An oral request from an employee is sufficient to begin the reasonable accommodation process. Completion of this form is voluntary. However, individuals who have requested an accommodation are asked to fill out this form for record-keeping purposes.

The Paperwork Reduction Act (PRA) of 1995 requires us to notify you that this information collection is in accordance with the clearance requirements of Section 3507 of the PRA. We cannot sponsor or require you to respond to a collection of information unless it displays a valid OMB number. We anticipate that the time expended by all individuals who must complete this form will average ten minutes including the time it will take to read the instructions, gather the necessary facts, and fill out the form.

**Privacy Act Information:** The information requested on this form is solicited under the authority of Executive Order 13164 that requires the collection of data that will allow measurement and evaluation of the efficiency and appropriateness of the actions taken by the Department of Veterans Affairs in processing accommodation requests. Information from the data collection will become part of a System of Records that complies with the Privacy Act of 1974. This System of Records is identified as "Reasonable Accommodation Processing Records" as set forth in the Compilation of Privacy Act issuances via online GPO access at **http://www.gpoaccess.gov/privacyact/index.html**.

If you need assistance in completing this form, please contact the Local Reasonable Accommodation Coordinator.

| 1. NAME OF EMPLOYEE | 2. PHONE NUMBER OF EMPLOYEE *(Include Area Code)* | 3. DATE OF REQUEST | 4. TODAY'S DATE |
|---|---|---|---|
| RONALD M. LISAN MD | 216-791-3800 x4955 | 12-16 2016 | 12-19-2016 |

| 5. EMAIL ADDRESS OF EMPLOYEE | 6. OFFICE OF EMPLOYEE |
|---|---|
| RONALD.LISAN@VA.GOV | Anesthesiology |

| 7. SUPERVISOR'S NAME | 8. SUPERVISOR'S PHONE NUMBER |
|---|---|
| SUSAN RAPHAELY MD | 216-791-3800 X 6334 |

**9. ACCOMMODATION REQUESTED** *(Be as specific as possible)*

Not taking call (Nights, Weekends, weekdays, holidays, etc.)

**10. REASON FOR REQUEST**

Psychiatric care (including OCD, depression, anxiety)

**11. IF ACCOMMODATION IS TIME SENSITIVE, PLEASE EXPLAIN BELOW**

Need ASAP so that January call schedule (& beyond) can be made appropriately. As of now, I am tentatively scheduled for several calls, starting January 3rd, 2017

Employees should give this form to their immediate supervisor or the LRAC.

| 12. NAME OF LRAC | 13. PHONE NUMBER OF LRAC | 14. LOG NUMBER ASSIGNED |
|---|---|---|
| | | |

This form should be retained separately from the employee's Official Personnel Folder.

VA FORM
MAY 2013  **0857A**

USA-004487

Written Confirmation of Request for Accommodation (Lisan, Ronald) with Medical Documentation.pdf for Printed Item: 1602 ( Attachment 2 of 2)

Case: 1:18-cv-00969-PAB  Doc #: 29-3  Filed: 05/21/19  51 of 109.  PageID #: 248   P. 1

24400 Highpoint Road  Suite 9
Beachwood, OH  44122

26777 Lorain Road  Suite 414
North Olmsted, OH  44070



**Behavioral Health Associates, Inc.**

# Fax

To: Kevin Roach

Date: 12-16-16

At: 216-707-5905

From: Carole M. Marcano

Fax: 216-831-40_5

Re: Ronald Lisan

Phone: 216-831-25_0

CC:

Pages: 2

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● Comments:

CONFIDENTIALITY NOTICE: This message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender at the above numbers and destroy all copies of the original message. Thank you.

USA-004488

Dec 16 12 01:55p
Case: 1:18-cv-00969-PAB Doc #: 29-3 Filed: 05/21/19 52 of 109. PageID #: 249   p.2
Written Confirmation of Request for Accommodation (Lisan, Ronald) with Medical Documentation.pdf for Printed Item: 1602 ( Attachment 2 of 2)

# **B**ehavioral **H**ealth **A**ssociates

*Partners in Quality Mental Health Services*

(216) 831-2500 • FAX (216) 831-4035

24400 Highpoint Road • Suite 9 • Beachwood, Ohio 44122
26777 Lorain Road • Suite 414 • North Olmsted, Ohio 44070

**Cleveland Center for Cognitive Therapy**

James Pretzer, Ph.D., Director

*Specializing in cognitive therapy as well as consultation and training for mental health professionals*

**Anxiety Treatment Center**

Barbara Fleming, Ph.D., Director

*Specializing in the treatment of anxiety disorders, phobias and stress*

**PsychSource**

Warren D. Salkin, Ph.D., Director

*Specializing in clinical consulting to private and public organizations, employee assistance, and debriefing services*

**Visit Us On The Web**

www.BehavioralHealthAssoc.com

December 16, 2012

Re: Ronald, LISA
ID: ████████

To Kevin Roach;

This will verify this patient's need to not be on call as he is recovering from a recent hospital stay.

Sincerely,
Carole Marciano

**B**ehavioral **H**ealth **A**ssociates
*Partners in Quality Mental Health Services*

Cleveland Center for Cognitive Therapy
Anxiety Treatment Center
PsychSource

**CAROLE M. MARCIANO, L.I.S.W.**

(216) 831-2500 • FAX (216) 831-4035
24400 Highpoint Road • Suite 9 • Beachwood, Ohio 44122
26777 Lorain Road • Suite 414 • North Olmsted, Ohio 44070
www.BehavioralHealthAssoc.com

USA-004489

| From: | Kafer, Bruce L. (VHACLE) |
|---|---|
| To: | Roach, Kevin D. (VHACLE); Raphaely, Susan (VHACLE); Lisan, Ronald M. (VHACLE) |
| Cc: | Zekanovic, Jelena (VHACLE); Beham, Shawn T. (VHACLE) |
| Subject: | RE: Reasonable accommodations |
| Date: | Monday, December 19, 2016 1:09:00 PM |
| Attachments: | image001.png |

Colleagues,

The attached medical documentation is insufficient for the granting of a VA Reasonable Accommodation. I can send Dr. Lisan the specific medical documentation paperwork that is needed and instruction. All medical documentation will be kept confidential and only needs to be returned to me.

Essentially, and pursuant to the VA policy on Reasonable Accommodation which was promulgated pursuant to the Americans with Disabilities Act Amendments Act, the documentation must show how the disability impairs the performance of essential functions. As I understand the process of being "on call," an employee could be paged and must report to work anytime during the duration of the "on call" status. I am also understanding for anesthesiology service that "on call" duties are an essential function of the position. Insomuch as we are prohibited from removing essential functions of a position, I will offer the following considerations for your review as we move forward in this process.

1. What is the expected duration of the "no call" request and is it associated with some type of formal treatment program of an expected duration? If so, we may be able to use FMLA and plan accordingly.

2. In situations where there is no accommodation the VA can make, then we look at "Reassignment" but only as an option of last resort. In the absence of the needed medical documentation it is impossible to make this assessment at this juncture.

3. I will send the medical documentation form and other associated paperwork and instructions directly to Dr. Ronald Lisan.

Please let me know if there are questions.

Respectfully,
-Bruce

Bruce Kafer, RN, MSN
Local Reasonable Accommodation Coordinator (LRAC)
Minority Veterans Program Coordinator
Office of the Director
Louis Stokes Cleveland VA Medical Center
10701 East Boulevard
Mail Stop: EEO
Cleveland, Ohio 44106

EXHIBIT
2-C

USA- 000940

(216) 791-2300 ext. 6601
Bruce.Kafer@va.gov

*FAX: (216) 707-7627*

### Equal Employment Opportunity, Diversity and Inclusion, Statement of the Month:

*"The true measure of the value of any business leader and manager is performance"*
*~Brian Tracy*



---

**From:** Roach, Kevin D. (VHACLE)
**Sent:** Monday, December 19, 2016 12:17 PM
**To:** Kafer, Bruce L. (VHACLE); Raphaely, Susan (VHACLE); Lisan, Ronald M. (VHACLE)
**Cc:** Zekanovic, Jelena (VHACLE); Beham, Shawn T. (VHACLE)
**Subject:** RE: Reasonable accommodations

Hi Bruce,

Please see the attachment which contains Dr. Lisan's request for accommodation and medical documentation.

Thank you,

Kevin D. Roach, MBA
Health System Specialist
Chief of Staff/Anesthesiology Service
VA Phone: 216-791-3800 x5165
Cell: 216-854-7916

---

**From:** Kafer, Bruce L. (VHACLE)
**Sent:** Monday, December 19, 2016 11:36 AM
**To:** Raphaely, Susan (VHACLE); Lisan, Ronald M. (VHACLE)
**Cc:** Zekanovic, Jelena (VHACLE); Roach, Kevin D. (VHACLE); Beham, Shawn T. (VHACLE)
**Subject:** RE: Reasonable accommodations

Dr. Raphaely / Dr. Lisan, I will need medical documentation to receive with a VA Reasonable Accommodation request. You may fax to my secure fax at 216-707-7627 or scan email to me. Accordingly, we can then proceed further.

Thank you,

24400 Highpoint Road  Suite 9
Beachwood, OH  44122

26777 Lorain Road  Suite 414
North Olmsted, OH  44070



**Behavioral Health Associates, inc.**

## Fax

To: BRUCE KAFER, RN, MSN          Date: 12-30-16

At: FAX 216. 707-7627

From: CURAEL M. MARCIANO          Fax: 216-831-40 5

Re: RON LISAN, M.D.          Phone: 216-831-25 0

CC:          Pages: 4

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

● Comments:

TO CLARIFY: THIS IS A TEMPORARY ACCOMMODATION
TO CONTINUE ~~his that~~ hierarchal exposure
therapy WITHOUT FLOODING which would
overwhelm.

CONFIDENTIALITY NOTICE: This message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender at the above numbers and destroy all copies of the original message. Thank you.

EXHIBIT
2-D

USA- 000956

24400 Highpoint Road  Suite 9
Beachwood, OH  44122

20777 Lorain Road  Suite 414
North Olmsted, OH  44070





To: BRUCE KAFER, RN, MSN                     Date: 12-22-16

At: Fax  216-707-7627

From: CAROLE M. MARELLANO
                                             Fax: 216-831-40 15
Re: RON LISAN, MD
                                             Phone: 216-831-25 10

CC:
                                             Pages:

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● Comments:

CONFIDENTIALITY NOTICE: This message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender at the above numbers and destroy all copies of the original message. Thank you.

USA- 000957



**ROGERS**
MEMORIAL HOSPITAL

**Rogers Memorial Hospital**
34700 Valley Road
Oconomowoc, WI 53066

**Hospital Telephone Number: 262-646-4411**
**Health Information Fax Number : 262-646-5745**

## Fax Cover Sheet

Medical Record # _____                    Date _____

To: _____*Bruce Kafer*_____

ATTN: _____

Fax Number Sending to: ___*216 - 707 - 7627*_____

Regarding: _____*Ron LiSAN*_____
**(Patient's Name)**

From: _____
**(Your Name/Department)**

There will be a total of _____*2*_____ pages. (Including the cover sheet)

The following information is being sent: _____
**Date of Record(s)**   *ADMIT 9/7/16*
*D/C 11/16/16*

| | |
|---|---|
| ___ Entire Record | ___ Progress Notes |
| ___ Discharge Summary | ___ Personal Recovery Plan |
| ___ History & Physical | ___ Treatment Plan |
| ___ Psychiatric Evaluation | ___ Request for Screening |
| ___ Consultations | ___ Facesheet |
| ___ Laboratory reports | ___ EKG |
| ___ Authorization form | ___ Other (specify below) |

*This letter replaces the 1st letter*
*as it more clearly defines*
*the time limitations for this*
*accomodation.*

**Message:** _____

_____

**Please Note:** The documents accompanying this transmission contain information which is **CONFIDENTIAL** and/or privileged. This information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any of this information is prohibited, and may constitute an invasion of privacy of the intended recipient and/or the subject of the documents.

If you have received this tranmission in error, please notify us by telephone immediately. We will arrange for the retrieval of the original documents at no cost to you.

HIM-071-1010

USA- 000958



**ROGERS** MEMORIAL HOSPITAL

Rogers Memorial Hospital
34700 Valley Road
Oconomowoc, WI 53066

Hospital Telephone Number: 262-646-4411
Health Information Fax Number : 262-646-5745

## Fax Cover Sheet

1/3/17
Date

Medical Record #

To: _Bruce Kafer_

ATTN: _____

Fax Number Sending to: _216 - 707 - 7627_

Regarding: _RONALD LiSAN_
(Patient's Name)

From: _DR. M. J. KrameR_
(Your Name/Department)

There will be a total of _8_ pages. (Including the cover sheet)

The following information is being sent: _____

Date of Record(s)

| | |
|---|---|
| ___ Entire Record | ___ Progress Notes |
| ✓ Discharge Summary | ___ Personal Recovery Plan |
| ___ History & Physical | ___ Treatment Plan |
| ___ Psychiatric Evaluation | ___ Request for Screening |
| ___ Consultations | ___ Facesheet |
| ___ Laboratory reports | ___ EKG |
| ___ Authorization form | ✓ Other (specify below) |

_Reasonable Accomodation paper work_

Message: _____

**Please Note:** The documents accompanying this transmission contain information which is **CONFIDENTIAL** and/or privileged. This information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any of this information is prohibited, and may constitute an invasion of privacy of the intended recipient and/or the subject of the documents.

If you have received this tranmission in error, please notify us by telephone immediately. We will arrange for the retrieval of the original documents at no cost to you.

HIM-071-1010

USA- 000959

## Department of Veterans Affairs

## REQUEST FOR MEDICAL DOCUMENTATION

**1. DATE** 12-22-16

**2. Dear Health Care Provider:**

Your patient  Ronald Lisan, MD

has requested an accommodation *(describe the requested accommodation here)*

because of functional limitations caused by his/her disability. Since the disability is not visible, and we do not have documentation on file, I would appreciate information that would allow me to determine whether this individual has a disability covered by the Rehabilitation Act of 1973. The information that you provide will also help me determine whether the requested accommodation will be effective in eliminating or minimizing the limitations caused by the disability.

**3.** The key duties that your patient has advised that he/she is unable to perform, or benefits and privileges of employment that he/she is unable to enjoy are:

To be excused from "on call" duties, for nights, weekdays, weekends, and holidays, etc. It is unclear if this is a time limited request.

TO BE REVIEWED in 6 MONTHS.

**4.** I have been given the responsibility for determining if your patient is covered by the Rehabilitation Act. I cannot proceed until I receive the requested information. If you have any questions, please contact me at the telephone number below.

| 5. MY NAME IS | 6. MY PHONE NO. IS | 7. MY TITLE IS |
|---|---|---|
| Bruce Kafer, RN, MSN   (216) 791-2300 | Ext. 6601 | L. Reasonable Accommodation Coordinator |

**8.** Please return this form and the requested information to me at:
*(Enter complete mailing address and fax number.)*
Bruce Kafer, RN, MSN
Cleveland VA Medical Center
10701 East Boulevard
Cleveland, OH 44106-1702
FAX: 216-707-7627

**9. Please do NOT provide a copy of the patient's complete medical history.**
The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services. At present, we only need the following information:

(a) the nature, severity, and duration of the impairment;

RECENTLY RELEASED FROM ROGERS Hospital WHERE REMAINED FOR TEN (10) WEEKS TO RECEIVE Therapy FOR OCD.

(b) one or more of the activities the impairment limits (walking, reaching, breathing, etc.);

PATIENT CONTINUES TO WORK ON COGNITIVE Therapy TO TREAT His OCD. RECOVERY IS based upon His ABILITY TO HAVE A REGULAR SLEEP Schedule.

VA FORM
SEP 2013  **0857e**                    Page 1 of 2

USA- 000962

Ronald Lisan, MD

(c) the extent or degree to which the impairment limits an activity.

*Sleep depuvation derens his healthy Recovery.*

(d) the reason the individual requires accommodation or the particular accommodation requested, and/or

*PATIENT is using exposure therapy TO gradually Recover.*

(e) how the accommodation will assist the individual in applying for a job, performing the essential functions of the job, or to enjoy a benefits of employment.

*PATIENT will be ABLE TO Maentaen his Daytime schedule effectively*

| 10. NAME OF HEALTH CARE PROVIDER | 11. SIGNATURE OF HEALTH CARE PROVIDER | 12. DATE OF SIGNATURE |
|---|---|---|
| CAROLE H. MARCIANO | *Rmarciano* | 12-22-16 |

13. MEDICAL/PROFESSIONAL LICENSE CATEGORY AND NUMBER

LISW

I7148

This form should be retained separately from the employee's Official Personnel Folder.

VA FORM 0657e, SEP 2013, back

USA- 000963



34700 Valley Road, Oconomowoc, WI 53066-4500
P. 262-646-4411  F. 262-646-3158
Admissions or Information  800-767-4411  rogershospital.org

December 26, 2016

To Whom It May Concern,

Dr. Ronald Lisan, DOB ████, was a patient of mine in the OCD Residential Program here at Rogers Memorial Hospital from September 7th to November 16, 2016. His OCD symptoms were very severe and interfered with his ability to function as a physician, despite his best efforts and motivation to do so. His mood symptoms were also intricately linked to his OCD, worsening his depression. Though his symptoms improved considerably with both pharmacotherapy and psychotherapy, he still has some limitations in functioning.

It is my strong recommendation that Dr. Lisan be allowed to reacclimatize slowly at work, so as to avoid a precipitous decompensation which, if severe, could require readmission. In doing so, it will not only improve his depression, but also increase his chance to successfully return to work full time, without a worsening of his OCD symptoms. I would strongly recommend that Dr. Lisan have a no-call position for the foreseeable future, as he readjusts to his work schedule. To that end, I have also completed the Request for Medical Documentation form as well, outlining his functional limitations. Again, this request for no-call is temporary and time limited and if given this reasonable accommodation I believe he will be able to successfully return to a position in which he takes call in the near future.

If you have any questions please don't hesitate to contact me at the number listed above.

Most Sincerely,

Dr. M.J. Kramer
Staff Psychiatrist for OCD residential, PHP and IOP services
Rogers Memorial Hospital

# Life. Worth. Living.

USA- 000964



34700 Valley Road, Oconomowoc, WI 53066-4500
P. 262-646-4411   F. 262-646-3158
Admissions or Information · 800-767-4411   rogershospital.org

**ROGERS**
MEMORIAL HOSPITAL

December 26, 2016

To Whom It May Concern,

Dr. Ronald Lisan, DOB ████████9, was a patient of mine in the OCD Residential Program here at Rogers Memorial Hospital from September 7th to November 16, 2016. His OCD symptoms were very severe and interfered with his ability to function as a physician, despite his best efforts and motivation to do so. His mood symptoms were also intricately linked to his OCD, worsening his depression. Though his symptoms improved considerably with both pharmacotherapy and psychotherapy, he still has some limitations in functioning.

It is my strong recommendation that Dr. Lisan be allowed to reacclimatize slowly at work, so as to avoid a precipitous decompensation which, if severe, could require readmission. In doing so, it will not only improve his depression, but also increase his chance to successfully return to work full time, without a worsening of his OCD symptoms. I would strongly recommend that Dr. Lisan have a no-call position for the foreseeable future, as he readjusts to his work schedule. To that end, I have also completed the Request for Medical Documentation form as well, outlining his functional limitations.

If you have any questions please don't hesitate to contact me at the number listed above.

Most Sincerely,

Dr. M./. Kramer
Staff Psychiatrist for OCD residential, PHP and IOP services
Rogers Memorial Hospital

Life. Worth. Living.

**Department of Veterans Affairs**

# REQUEST FOR MEDICAL DOCUMENTATION

1. DATE  12/27/16

2. Dear Health Care Provider:

Your patient  Ronald Lisan, MD  has requested an accommodation *(describe the requested accommodation here)*

because of functional limitations caused by his/her disability. Since the disability is not visible, and we do not have documentation on file, I would appreciate information that would allow me to determine whether this individual has a disability covered by the Rehabilitation Act of 1973. The information that you provide will also help me determine whether the requested accommodation will be effective in eliminating or minimizing the limitations caused by the disability.

3. The key duties that your patient has advised that he/she is unable to perform, or benefits and privileges of employment that he/she is unable to enjoy are:
To be excused from "on call" duties, for nights, weekdays, weekends, and holidays, etc. It is unclear if this is a time limited request.

4. I have been given the responsibility for determining if your patient is covered by the Rehabilitation Act. I cannot proceed until I receive the requested information. If you have any questions, please contact me at the telephone number below.

| 5. MY NAME IS | 6. MY PHONE NO. IS | 7. MY TITLE IS |
|---|---|---|
| Bruce Kafer, RN, MSN | (216) 791-2300  Ext.6601 | L. Reasonable Accommodation Coordinator |

8. Please return this form and the requested information to me at:
*(Enter complete mailing address and fax number.)*
Bruce Kafer, RN, MSN
Cleveland VA Medical Center
10701 East Boulevard
Cleveland, OH 44106-1702
FAX: 216-707-7627

9. Please do NOT provide a copy of the patient's complete medical history.
The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. `Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.
At present, we only need the following information:

(a) the nature, severity, and duration of the impairment;
Ron has contamination based OCD [obsessive Compulsive Disorder] + co-morbid depression.

(b) one or more of the activities the impairment limits (walking, reaching, breathing, etc.);
Ron needs to be allowed to slowly acclimate to his work schedule so as to avoid flooding him with work stressors /responsibilities. If allowed to slowly

reacclimate, his prognosis for returning to full functioning is good! However if Ron is overwhelmed with duty hours (especially call

USA-000966

Ronald Lisan, MD

(c) the extent or degree to which the impairment limits an activity;

likely deteriorate rapidly, necessitating readmission for further treatment. Prior to treatment his symptoms were so severe as to interfere not only

(d) the reason the individual requires accommodation or the particular accommodation requested, and/or

with work but also basic ADL'S. His mood symptoms included passive thoughts of suicide, severe anhedonia & poor appetite with considerable weight los

(e) how the accommodation will assist the individual in applying for a job, performing the essential functions of the job, or to enjoy a benefits of employment.

Again, this no-call request would be temporary. However the stresses of call including lack of sleep & increased anxiety could likely have deliritous

| 10. NAME OF HEALTH CARE PROVIDER | 11. SIGNATURE OF HEALTH CARE PROVIDER | 12. DATE OF SIGNATURE |
|---|---|---|
| M. J. Kramer | | 12/27/16 |

effect on his health

13. MEDICAL/PROFESSIONAL LICENSE CATEGORY AND NUMBER

Medical licenses:
WI : 6466520          IL :
GA : 66450

I have attached his discharge summary as well.

Please call my work cell at 262-370-0614 with questions

This form should be retained separately from the employee's Official Personnel Folder.

VA FORM 0857a, SEP 2013, back

Page 2 of 2

USA- 000967



# Rogers Memorial Hospital- Oconomowoc

34700 Valley Road
Oconomowoc, WI 53066-4500

| | | | |
|---|---|---|---|
| Patient: | **LISAN, RONALD M** | | |
| MRN: | 00101783 | Admit: | 9/7/2016 |
| FIN: | 000041083 | Disch: | 11/16/2016 |
| DOB/Age/Sex: | ███ years  Male | Admitting: | Kramer,Mitzi |
| Location: | 1-RES OCD; 134; B | Attending: | Kramer,Mitzi |

## *Discharge Planning Documents*

| | |
|---|---|
| Document Type: | Discharge Summary |
| Service Date/Time: | 11/16/2016 11:01 CST |
| Result Status: | Auth (Verified) |
| Perform Information: | Kramer,Mitzi (11/16/2016 11:01 CST) |
| Sign Information: | Kramer,Mitzi (12/5/2016 20:53 CST) |

**Chief Complaint**

"My anxiety and subsequently my depression are getting overwhelming, I feel hopeless and filled with despair, so it's time I got some help."

**Admission Information**

Ronald is a ██ yo anesthesiologist who has primarily contamination based OCD symptoms which are now very severe and interfere significantly with his daily routines to the point that he can no longer function normally. As a consequence of his OCD, he has been unable to work, and he spends a good portion of his day isolating himself to his bed. His mood symptoms are intricately linked to his OCD, and as such he reports significant anhedonia, loss of energy with poor appetite and noted weight loss of 10 lbs, decreased concentration, sad mood, strong feelings of despair, along with feelings of helplessness and hopelessness and significant insomnia. In addition, Ronald has passive thoughts of death, but no active SI.

Regarding his contamination fears, Ronald can spend many hours in his am shower routine and as such has been avoiding daily showers d/t the time constraints. He fears getting dirty, states he feels "gross, revolted, disgusted by nasty things" and has some concern over becoming ill (though not nearly as prominent). As such he compulsively engages in hand washing rituals after touching anything that he deems "contaminated" (which is the majority of items he encounters during his daily routine, including door knobs and faucets). He avoids leaving home (again, he doesn't want to touch door handles or surfaces outside of the home) and this serves only to increase his depressive symptoms. He will wash until he gets that just right feeling. Patient reports if he doesn't get that just right feeling he has to start over, and he can wash for multiple hours, stuck in his rituals. He reports he's had OCD symptoms most of his life, but over the last few months they've increased so significantly that it's taking up greater than 70-90 % of his waking hours. Pt reports the intrusive thoughts of contamination are also severe, and he's "incapacitated with very little time that I"m not thinking about my obsessions or having doubts."

Regarding his intrusive thoughts, patient reports he uses barriers to open drawers as he fears that his wife has touched a surface after picking up dog poop, and now that surface is contaminated. It's to the point that he cannot remember which paper towels are clean, and when he throws away a "contaminated" paper towel, he fears he touched the trash can. He states these thoughts are "almost psychotic and with a warped sense of what's real." Ronald will look down at his hand, and see that he actually has not touched the trash can, but then "I begin to doubt it despite the reality in front of my eyes. I doubt everything. I know it's not possible but these intrusive thoughts continue to recur, then I get stuck in compulsive thought loops wondering if I am contaminated, until I have to wash my hands to relieve the thoughts." Ronald just cannot sit with the uncertainty of not knowing if he's

**Medications**
Inpatient



---

Report Request ID:  3699044          Page 2 of 5          Print Date/Time:  1/3/2017 11:53 CST

USA- 000968

# Rogers Memorial Hospital- Oconomowoc

Patient Name:   LISAN, RONALD M
MRN:            00101783                           Admit:    9/7/2016
FIN:            000041083                          Disch:    11/16/2016
DOB/Age/Sex:    ███████     57 years    Male

## *Discharge Planning Documents*

contaminated his hands.

Ronald also endorses some rereading and rewriting to ensure he gets every single word on the page, but this is not as prominent or worrisome as his intrusive thoughts and contamination concerns.



Home

Though he denies religious scrupulosity, Ronald does feel that "maybe I"m being punished because I'm not dong what I should be doing. Why isn't God helping me? God must hate me because I'm plagued with OCD." Ronald doesn't want to go to the synagogue as he fears people didn't wash their hands and then touched the pews or the Bibles.

He became a bit tearful and extremely anxious during the latter part of the admission interview, and was visibly sweating. He then leaned in and confided in this author, stating "I thought I would have my own room and bathroom. I'm not complaining, we shared rooms in college but that was then. I just cannot envision how I can use a public shared bathroom to shower as it would be overwhelming. I don't know if I can do this."

Regarding medication management, patient was started on Fluoxetine 3 weeks ago at 20mg, which was increased to 40mg daily. Pt unsure if it worsened his anxiety or if it was coincidental that his symptoms became more severe.

## Course of Treatment

Ron was admitted to Cedar Ridge RTC to treat his considerable OCD symptoms. and comorbid depression. We created his hierarchy and based on hierarchy began Exposure and Response Prevention treatment. Other therapeutic interventions included relaxation techniques, CBT, experiential therapy, and thought challenging. His medication regimen was adjusted while on the unit to target his OCD and comorbid depression as follows: we increased his Prozac to 80 mg daily, and titrated down his Xanax as it has an addictive potential and can also dampen his exposure work. Melatonin was on board to help with insomnia. In addition, routine labs were drawn, including CBC, CMP, vitamin D and TFT's. He tolerated his medication regimen well, reporting some GI distress which could be secondary to comorbid diagnosis, but which improved considerably during his treatment. He did endorse a dampening of the libido, however overall mood and OCD were much improved so it was felt the benefits outweigh side effects and we opted to continue current regimen, with consideration for downward titration in the future on an OP basis. Prior to discharge he was more forward thinking, had completed 87% of his hierarchy, denied any significant mood symptoms and was stable for transition to a lower level of care.

"He has greatly increased his ability to sit with triggering situations without ritualizing in regards to his contamination fears in a variety of areas. Resident originally started program with needing to use one bathroom that was designated only for him. Through exposure work he now can use any bathroom in the building for toileting as well as showering. He can use public bathrooms and has done extensive work touching toilet handles, sink handles, bathroom floors, soap dispensers, bathroom counters, door handles with minimal to no hand washes necessary. He has reduced his overall shower routine, use of baby powder, and checking in bathroom. Resident is now able to resist all hand washes other that after defecating. Ron could benefit from further outpatient Cognitive Behavioral therapy with a focus on exposure and response prevention for Obsessive Compulsive Disorder. Focus should be on his contamination fears of his home environment and the potential triggers that working in a hospital brings him. Ron was provided a discharge hierarchy of potential exposures for him to start with at home. Ron completed discharge assessments

---

USA- 000969

## Rogers Memorial Hospital- Oconomowoc

| | | | | |
|---|---|---|---|---|
| Patient Name: | LISAN, RONALD M | | | |
| MRN: | 00101783 | | Admit: | 9/7/2016 |
| FIN: | 000041083 | | Disch: | 11/16/2016 |
| DOB/Age/Sex: | ▮▮▮▮ years | Male | | |

### *Discharge Planning Documents*

that reflected the progress he has made with treatment. LSAS admit 33 discharge 15, Qlds admit 20 discharge 7 ASI admit 20 discharge 13 YBOC admit 29 discharge 7." (1)

(1). Patient Summary 11/15/16 Kristin Stephens

### Discharge Condition /Prognosis

Condition is stable and appropriate for discharge. Prognosis is good, as patient is highly motivated to remain in treatment and has a good modicum of insight into his illness. In addition, he is able to weight the risks and benefits of informing versus not informing others if his symptoms are worsening. He has solid familial support in his daughter and has access to mental health resources.  He also has a very strong working relationship with his psychiatrist.

### Assessment/Formulation/Plan

Patient understands he should call 911 or go to nearest ER if he has worsening thoughts of self harm/harming others.
He is instructed to take all medications as prescribed and keep all follow up appointments. Patient has met maximum benefit from this level of care and is appropriate for transition to outpatient psychiatric services.

### Diagnoses

1. OCD - Obsessive-compulsive disorder
Acid reflux
Acute dermatitis
Anxious depression
Asthma
Bradycardia
Carpal tunnel
Coronary artery disease
Degenerative disc disease
Hypercholesterolemia
Hypertension
Intertrigo
Lumbar radiculopathy
Migraine
Seasonal nasal allergies

### Discharge Disposition

Discharge To, Anticipated: Outpatient therapy (11/15/16 09:26:39)



**Vitals & Measurements**



**Lab Results**



USA- 000970

## Rogers Memorial Hospital- Oconomowoc

Patient Name:  LISAN, RONALD M
MRN:  00101783                         Admit:  9/7/2016
FIN:  000041083                        Disch:  11/16/2016
DOB/Age/Sex:  ███████  ███ years  Male

### *Discharge Planning Documents*



**Scales and Assessments**

USA- 000971

COPY 2 of some

**Department of Veterans Affairs**

# REQUEST FOR MEDICAL DOCUMENTATION

1. DATE  / 2 - 2 2 - / 6

2. Dear Health Care Provider:

Your patient    Ronald Lisan, MD         has requested an accommodation *(describe the requested accommodation here)*

because of functional limitations caused by his/her disability. Since the disability is not visible, and we do not have documentation on file, I would appreciate information that would allow me to determine whether this individual has a disability covered by the Rehabilitation Act of 1973. The information that you provide will also help me determine whether the requested accommodation will be effective in eliminating or minimizing the limitations caused by the disability.

3. The key duties that your patient has advised that he/she is unable to perform, or benefits and privileges of employment that he/she is unable to enjoy are:
To be excused from "on call" duties, for nights, weekdays, weekends, and holidays, etc. It is unclear if this is a time limited request.

    TO BE REVIEWED in 6 MONTHS.

4. I have been given the responsibility for determining if your patient is covered by the Rehabilitation Act. I cannot proceed until I receive the requested information. If you have any questions, please contact me at the telephone number below.

| 5. MY NAME IS | 6. MY PHONE NO. IS | 7. MY TITLE IS |
|---|---|---|
| Bruce Kafer, RN, MSN          (216)791-2300 | Ext.6601 | L. Reasonable Accommodation Coordinator |

8. Please return this form and the requested information to me at:
*(Enter complete mailing address and fax number.)*
Bruce Kafer, RN, MSN
Cleveland VA Medical Center
10701 East Boulevard
Cleveland, OH 44106-1702
FAX: 216-707-7627

9. **Please do NOT provide a copy of the patient's complete medical history.**
The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.
At present, we only need the following information:

    (a) the nature, severity, and duration of the impairment;
    RECENTLY  RELEASED  FROM ROGERS Hospital
      WHERE REMAINED FOR TEN(10) WEEKS TO
      RECEIVE Therapy FOR OCD.

    (b) one or more of the activities the impairment limits (walking, reaching, breathing, etc.):
    PATIENT CONTINUES TO WORK ON COGNITIVE
      Therapy TO tREAT His OCD. RECOVERY is
      based upon His ABILITY, TO HAVE A REGULAR
      SLEEP schedule.

VA FORM
SEP 2013 **0857e**                    Page 1 of 2

USA- 000972

Ronald Lisan, MD

(c) the extent or degree to which the impairment limits an activity:

Sleep deprivation deters his healthy Recovery.

(d) the reason the individual requires accommodation or the particular accommodation requested, and/or

Patient is using exposure therapy to gradually recover.

(e) how the accommodation will assist the individual in applying for a job, performing the essential functions of the job, or to enjoy a benefits of employment.

Patient will be able to maintain his daytime schedule effectively

| 10. NAME OF HEALTH CARE PROVIDER | 11. SIGNATURE OF HEALTH CARE PROVIDER | 12. DATE OF SIGNATURE |
|---|---|---|
| CAROLE M. MARCIANO | *(signature)* | 12-22-16 |
| 13. MEDICAL/PROFESSIONAL LICENSE CATEGORY AND NUMBER | | |
| LISW | | |
| I7148 | | |

This form should be retained separately from the employee's Official Personnel Folder

VA FORM 0857e, SEP 2013, back

USA- 000973

24400 Highpoint Road Suite 9
Beachwood, OH 44122

26777 Lorain Road Suite 414
North Olmsted, OH 44070

**Behavioral Health Associates, Inc.**



To: BRUCE KAFER, RN, MSN          Date: 12-22-16

At: Fax 216-707-7627

From: CAROLE M. MARCIANO          Fax: 216-831-4085

Re: RON LISAN, MD                 Phone: 216-831-2300

CC:                               Pages:

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

● Comments:

CONFIDENTIALITY NOTICE: This message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender at the above numbers and destroy all copies of the original message. Thank you.

USA- 000974

Document ID: 0.7.2655.62231

| | |
|---|---|
| From: | Kafer, Bruce L. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclekaferb> |
| To: | Raphaely, Susan (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhacleraphas>; Reese, Leshelle L. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclereesl2> |
| Cc: | Freeman, Andrea M. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclefreema> |
| Bcc: | |
| Subject: | RE: Ron Lisan |
| Date: | Tue Jan 10 2017 17:56:14 EST |
| Attachments: | image001.png |

Dr Raphaely,

Please cancel our meeting for Thursday, just inform him it is cancelled.

Thank you,

-Bruce

Bruce Kafer, RN, MSN

Local Reasonable Accommodation Coordinator (LRAC)

Minority Veterans Program Coordinator

Office of the Director

Louis Stokes Cleveland VA Medical Center

10701 East Boulevard

Mail Stop: EEO

Cleveland, Ohio 44106

(216) 791-2300 ext. 6601

Bruce.Kafer@va.gov

FAX: (216) 707-7627

EXHIBIT

2-E

USA-004017

"The true measure of the value of any business leader and manager is performance" ~Brian Tracy

From: Raphaely, Susan (VHACLE)
Sent: Tuesday, January 10, 2017 4:58 PM
To: Kafer, Bruce L. (VHACLE); Reese, Leshelle L. (VHACLE)
Subject: RE: Ron Lisan

Bruce,

I notified Dr. Lisan of his meeting with us on Thursday at 10 am and he stated he wanted his lawyer to be present.  Secondly, I notified him that the ROC would be presented to him but as a bargaining unit he was advised that he had right to request representation and again he asked if he could have his lawyer present.

What are your thoughts/suggestions on this??????

Susan Raphaely, MD

Chief, Department of Anesthesiology

Louis Stokes VA Medical Center

Cleveland, OH 44106

216-791-3800, ext 6334

From: Raphaely, Susan (VHACLE)
Sent: Tuesday, January 10, 2017 3:10 PM

To: Kafer, Bruce L. (VHACLE)

Subject: RE: Ron Lisan

Thursday at 10am in my office will work.  My office is 2C-414  on the second floor of the medical center.  I am located just outside of the Urology Clinic and across from the 2nd floor service elevators.

Thank you for your assistance.

From: Kafer, Bruce L. (VHACLE)
Sent: Tuesday, January 10, 2017 2:56 PM
To: Raphaely, Susan (VHACLE)
Subject: RE: Ron Lisan

How about 10AM – do you have a conference room or office we can use? I am unfamiliar with the location of your area but Thursday at 10AM would be ideal.

Bruce Kafer, RN, MSN

Local Reasonable Accommodation Coordinator (LRAC)

Minority Veterans Program Coordinator

Office of the Director

Louis Stokes Cleveland VA Medical Center

10701 East Boulevard

Mail Stop: EEO

Cleveland, Ohio 44106

(216) 791-2300 ext. 6601

Bruce.Kafer@va.gov

FAX: (216) 707-7627

Equal Employment Opportunity, Diversity and Inclusion, Statement of the Month:

"The true measure of the value of any business leader and manager is performance" ~Brian Tracy

From: Raphaely, Susan (VHACLE)
Sent: Tuesday, January 10, 2017 2:51 PM
To: Kafer, Bruce L. (VHACLE)
Subject: RE: Ron Lisan


Thursday would be good to meet, any time after 9:00 am and before 2pm.


Please let me know what works for you.



Susan Raphaely, MD

Chief, Department of Anesthesiology

Louis Stokes VA Medical Center

Cleveland, OH 44106

216-791-3800, ext 6334



From: Kafer, Bruce L. (VHACLE)
Sent: Tuesday, January 10, 2017 2:44 PM
To: Raphaely, Susan (VHACLE)
Cc: Roach, Kevin D. (VHACLE)
Subject: RE: Ron Lisan


Dr Raphaely, when would you like to schedule a meeting to meet with him? Wednesday looks booked for me at this juncture. Thursday or Friday would be optimum if we can meet that soon.

Please advise

Thank you,

-bruce


Bruce Kafer, RN, MSN

Local Reasonable Accommodation Coordinator (LRAC)

Minority Veterans Program Coordinator

Office of the Director

Louis Stokes Cleveland VA Medical Center

10701 East Boulevard

Mail Stop: EEO

Cleveland, Ohio 44106

(216) 791-2300 ext. 6601

Bruce.Kafer@va.gov


FAX: (216) 707-7627


Equal Employment Opportunity, Diversity and Inclusion, Statement of the Month:

"The true measure of the value of any business leader and manager is performance" ~Brian Tracy


From: Raphaely, Susan (VHACLE)
Sent: Tuesday, January 10, 2017 2:38 PM
To: Kafer, Bruce L. (VHACLE)
Cc: Roach, Kevin D. (VHACLE)
Subject: Ron Lisan

Bruce,

I would like to proceed as we discussed with notifying Dr. Lisan that we will continue to accommodate his no call request for the remainder of January but no further.  If we could speak with him sooner than later it would be helpful as it is time to put together the call schedule for February.

Thank you for your assistance.

Susan Raphaely, MD

Chief, Department of Anesthesiology

Louis Stokes VA Medical Center

Cleveland, OH 44106

216-791-3800, ext 6334

Document ID: 0.7.2655.62231-000001

| | |
|---|---|
| Owner: | Kafer, Bruce L. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclekaferb> |
| Filename: | image001.png |
| Last Modified: | Tue Jan 10 16:56:14 CST 2017 |

USA-004023



Document ID: 0.7.2655.10398

| | |
|---|---|
| From: | Kafer, Bruce L. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclekaferb> |
| To: | Lisan, Ronald M. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclelisanr> |
| Cc: | |
| Bcc: | |
| Subject: | Review of VA Reasonable Accommodation Request: Dr. Ronald Lisan |
| Date: | Tue Jan 17 2017 17:20:59 EST |
| Attachments: | image001.png |

Dr. Lisan, I have completed my review of the medical documentation submitted by your psychiatrist. At this juncture, your medical documentation is incomplete and cannot justify the VA providing you the reasonable accommodation you have requested. While you are considered an individual with a disability your documentation fails to show how your disabilities impair your performance of essential functions. The VA policy on reasonable accommodation prohibits management from removing essential functions of your position.

Please let me know if you have questions.

Sincerely,

-Bruce

Bruce Kafer, RN, MSN

Local Reasonable Accommodation Coordinator (LRAC)

Minority Veterans Program Coordinator

Office of the Director

Louis Stokes Cleveland VA Medical Center

10701 East Boulevard

Mail Stop: EEO

Cleveland, Ohio 44106

(216) 791-2300 ext. 6601

Bruce.Kafer@va.gov

EXHIBIT

2-E

USA-003447

FAX: (216) 707-7627

Equal Employment Opportunity, Diversity and Inclusion, Statement of the Month:

"The true measure of the value of any business leader and manager is performance" ~Brian Tracy

Document ID: 0.7.2655.10398-000001

| | |
|---|---|
| Owner: | Kafer, Bruce L. (VHACLE) </o=va/ou=visn 10/cn=recipients/cn=vhaclekaferb> |
| Filename: | image001.png |
| Last Modified: | Tue Jan 17 16:20:59 CST 2017 |



**Kafer, Bruce L. (VHACLE)**

| | |
|---|---|
| **From:** | Kafer, Bruce L. (VHACLE) |
| **Sent:** | Thursday, January 19, 2017 3:41 PM |
| **To:** | Lisan, Ronald M. (VHACLE) |
| **Subject:** | RE: Follow Up "On Call" Reasonable Accommodation Request |
| **Attachments:** | REASONABLE ACCOMMODATION VA HANDBOOK 5975 (1).pdf |

| | |
|---|---|
| **Importance:** | High |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Lisan, Ronald M. (VHACLE) | Read: 1/20/2017 8:07 AM |

Dear Dr. Lisan,

In order to receive a reasonable accommodation from the Department of Veterans Affairs your medical documentation must provide evidence of how your disability impairs the performance of essential functions of your position. Documented medical evidence is different than discussions or recommendations or even verbal explanations.

Please remember, the VA Reasonable Accommodation process is a vehicle to provide an accommodation regarded as reasonable so an employee with a disability <u>can perform</u> the essential functions of their position.

In your case, being "on call" is an essential function of your position as an anesthesiologist. You are requesting the VA to take away an essential function. This is why you're unable to use the VA Reasonable Accommodation to accomplish this.

Typically, an employee would use the Family Medical Leave Act (FMLA) if their condition necessitated recovery time of a shorter duration.

It is important to remember the VA Reasonable Accommodation process is a very specific process whereby a requestor with a disability asks for an accommodation so they <u>may perform</u> the essential functions of their position. As an example, if an employee had to document progress notes but had significantly impaired vision and could not see the computer screen, we could provide them a large computer monitor or special software so the employee <u>could perform</u> the essential function of documentation. We would be prohibited from taking away an essential function of the position, because that's why we hired the employee. Rather, we look to see if there is something we can provide to accommodate the employee in the performance of essential functions. Moreover, we would be providing an accommodation based on the medical documentation of how the employee's disability impairs the performance of an essential function of their position.

I hope this clarifies the VA Reasonable Accommodation process. To facilitate easy reference, i have attached the VA policy on Reasonable Accommodation.

Please let me know if you have questions.

Respectfully,
-Bruce



**EXHIBIT**

**2-G**

USA- 000923

1

Bruce Kafer, RN, MSN
Local Reasonable Accommodation Coordinator (LRAC)
Minority Veterans Program Coordinator
Office of the Director
Louis Stokes Cleveland VA Medical Center
10701 East Boulevard
Mail Stop: EEO
Cleveland, Ohio 44106
(216) 791-2300 ext. 6601
Bruce.Kafer@va.gov

*FAX: (216) 707-7627*

**<u>Equal Employment Opportunity, Diversity and Inclusion, Statement of the Month:</u>**
*"The true measure of the value of any business leader and manager is performance" ~Brian Tracy*



---

**From:** Lisan, Ronald M. (VHACLE)
**Sent:** Thursday, January 19, 2017 9:23 AM
**To:** Kafer, Bruce L. (VHACLE)
**Cc:** info@sindellattorneys.com; rachel@sindellattorneys.com; ronald.lisan@case.edu
**Subject:** RE: Follow Up "On Call" Reasonable Accommodation Request
**Importance:** High

Dear Mr. Kafer,

Thank you for your reply.

However, I am rather surprised to see that you seem to be immediately dismissing my reasonable accommodation request (RAR) without even having heard from me or my attorneys as to what those requests actually are.  In fact, it seems that my RAR is being denied even though I have had no opportunity to meet with you – or anyone else – to even discuss the issues.  Furthermore the one and only meeting (which had been scheduled for last week) was abruptly cancelled -- still without any explanation to me as to why -- and now I am finding that my request is being denied anyway.
I find this to be most troubling, to say the least.

To be clear, contrary to what is implied in your email, my RAR is not for a completely no-call position.  While I would have preferred that to begin with – and Dr. Raphaely had told me on multiple occasions before and after I returned to work "that should be doable, we just need you to submit medical documentation" --  I understand Dr. Raphaely still has the legal right to determine that no such position can be made available, and that she has done so, even though she originally told me otherwise.

That is why I had my psychiatrist and therapist re-submit their letters of medical documentation (as Dr. Raphaely specifically asked me to do) to be clear to state that what has been requested is a temporary period of gradual adjustment, i.e that I gradually work my way back into the call schedule over a few months, before going back to taking

2

USA- 000924

the full, regular call. (No matter what, it seems to me that actually having had a meeting to discuss these issues would have been the most appropriate thing to do before making any determinations). Dr. Raphaely also told me, on multiple occasions, that this accommodation could be made if I submitted documentation of medical necessity – which I have now done, twice.

It is extremely difficult to imagine how asking for a relatively brief, gradual transition back into the call duties could not be considered a "reasonable" temporary accommodation.

Therefore, I would appreciate a response from you ASAP so that my employment attorneys and I can determine how to proceed. It also seems to me at the moment (though I must consult with my attorneys on this) that it might still be helpful to actually have a meeting in which my RAR can be discussed more easily, fully and openly by all parties – which is what I assume normal procedure should have been anyway.

Thank you for your prompt attention to this matter.

Sincerely,

Ronald Lisan, MD

---

**From:** Kafer, Bruce L. (VHACLE)
**Sent:** Wednesday, January 18, 2017 2:28 PM
**To:** Lisan, Ronald M. (VHACLE)
**Subject:** Follow Up "On Call"
**Importance:** High

Dr. Lisan,

I want to make you aware that you are free to make a transfer request to another position which has no "on call" duties. You can always submit a request to Dr. Altose to see if anything is available. While your medical documentation is insufficient for the VA Reasonable Accommodation process as that is a very specific process pursuant to policy, I want to advise you there is another process you may use which is simply a transfer request.

As you may know, you are a Title 38 employee and there is a Title 38 representative in the AFGE Local Chapter 31 who can also assist you if you have questions about submitting a transfer request. His name is Mr. Carlton Daniel, RN, and he is at Carlton.Daniel@va.gov .

Please let me know if you have questions.

Respectfully,
-Bruce

Bruce Kafer, RN, MSN
Local Reasonable Accommodation Coordinator (LRAC)
Minority Veterans Program Coordinator
Office of the Director
Louis Stokes Cleveland VA Medical Center
10701 East Boulevard

USA- 000925

Mail Stop: EEO
Cleveland, Ohio 44106
(216) 791-2300 ext. 6601
Bruce.Kafer@va.gov

FAX: (216) 707-7627

**Equal Employment Opportunity, Diversity and Inclusion, Statement of the Month:**
*"The true measure of the value of any business leader and manager is performance" ~Brian Tracy*



4

USA- 000926

**LOUIS STOKES CLEVELAND**        **MEDICAL CENTER POLICY 003-003**
**VA MEDICAL CENTER**              **March 1, 2016**
**10701 East Blvd**
**Cleveland, Ohio  44106**

### POLICY ON THE PREVENTION OF SEXUAL HARASSMENT

1.    **PURPOSE**.  The purpose of this policy is to advise all employees of their responsibility regarding the prevention of sexual harassment in the workplace, to define and establish procedures for monitoring and evaluation, and to enforce the laws relative to sexual harassment.

2.    **POLICY**.    It is the policy of the Louis Stokes Cleveland Veterans Affairs Medical Center (LSCVAMC) that sexual harassment is unacceptable conduct in the workplace and will not be tolerated.  This policy applies to all employees and covers all employees outside the work place while conducting Government business and to non-employees while conducting business in the VA work place.  This facility aims to provide a work environment free from sexual harassment, and in cases that so warrant, corrective action will be taken by appropriate management officials.  Sexual Harassment is a form of employee misconduct that seriously undermines the integrity of the employment relationship.

3.    **DEFINITION**

    a.    Sexual harassment is deliberate or repeated unwelcome verbal comments, gestures, physical contact of a sexual nature, sexual advances, requests for sexual favors, and other verbal conduct of a sexual nature when:

        1)  Submission to such conduct is made either explicitly or implicitly a term or condition of employment;

        2)  Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

    b.    Hostile-environment harassment is any lewd sexual conduct including, but not limited to:  pictures, words, jokes, questions, remarks, teasing, and/or touching that unreasonably interferes with an individual's work performance or creates an intimidating, hostile or offensive work environment.

    c.    It is important to note that unless the conduct is quite severe, a single incident or remark does not generally create a hostile environment.  The conduct must substantially affect the work environment of a "reasonable" person to be considered harassment.  The exception is that a single incident of touching a person in an unacceptable place is usually considered offensive enough to be labeled sexual harassment.

EXHIBIT

2-H

d.    The key word in defining sexual harassment is unwelcome.  When any unwelcome or unsolicited conduct is imposed on a person who regards it as offensive or undesirable, could be construed as sexual harassment.  When a person communicates that the conduct is unwelcome, it could become illegal.

4.    **RESPONSIBILITIES**

a.    **The Medical Center Director** has overall responsibility for the program through managers and supervisors in the exercise of their human resource management activities.  In addition, he/she assures that the Department of Veterans Affairs mandatory training is provided in a timely manner.

b.    **The EEO/Affirmative Employment Program Manager** is responsible for providing assistance as needed, in this, as in all other areas of EEO Policy and procedures.  The EEO/Affirmative Employment Program Manager is also responsible for providing assistance to the Medical Center Director by assuring that all employees are informed of pertinent regulations and procedures relative to the prevention of sexual harassment and by emphasizing this policy in new employee orientation and in-service training sessions.

c.    **Management Officials, Service Chiefs and Supervisors** at all levels are responsible for creating and ensuring a work environment free from sexual harassment by affirmatively raising the subject with staff, expressing strong disapproval, continually assessing the potential for inappropriate behaviors in the work place and assuring their ready accessibility and efforts relative to the resolution of matters of this type.

1)  Management Officials, Service Chiefs and Supervisors must take immediate and appropriate action upon receipt of actual or constructive knowledge of sexual harassment affecting any of their employees.

2)   Management Officials, Service Chiefs and Supervisors who tolerate such behavior by failing to take appropriate action, or who retaliate against employees who report incidents or file formal complaints of sexual harassment will be subject to disciplinary action.

d.    **Employees** at all levels are responsible for aiding in the prevention of sexual harassment by actively safeguarding against conduct and behaviors that could be construed as sexual harassment. Employees also have the responsibility of bringing any instance or allegation of sexual harassment to the attention of their supervisor or **appropriate management official**. Any employee engaging in sexually harassing activities will be subject to disciplinary action. All employees are expected and encouraged to take an active role in the elimination of all forms of sexual harassment at the Medical Center.

     e.    **Management Officials, Service Chiefs, Supervisors and Employees** should become thoroughly knowledgeable of what constitutes sexual harassment and responsive to any form of improper behavior that could lead to such allegations.

5.   **PROCEDURES**

     a.    All LSCVAMC employees must receive a minimum of two (2) hours training on the Prevention of Sexual Harassment within 60 days of employment and thereafter a minimum of two (2) hours refresher training every two years.  In addition, medical center will maintain an active program of training, including new employee's orientation, supervisory training, in-services and other forms of communication as appropriate.

     b.    <u>What to do if you are the victim of sexual harassment</u>

       1) Tell the harasser that the behavior is unwanted, unwelcomed and unsolicited.

       2)  Keep a record of any instances of harassment such as dates, places, times, comments, your responses, and witnesses.  Also keep a record of any follow-up actions.

       3)  Ask co-workers if they observed the behavior or are aware of similar behavior to keep a record of any instances they observe.

       4) Tell your manager, supervisor, or someone else about the incident.  If the harasser is your supervisor, inform a higher level management official.

       5) Contact the EEO/Affirmative Employment Program Manager, Union representative, Human Resource Management Office, or the Office of Resolution Management within 45 days of the incident.

     c.    <u>Handling Allegations of Sexual Harassment</u>

       1) As soon as an allegation of sexual harassment has been brought to the attention of a management official, he/she will immediately notify the EEO/Affirmative Employment Program Manager, who will report the allegation to the Director, LSCVAMC within 24 hours.  If necessary the employees involved will be physically separated immediately.

       2) The following procedures will take place:

         a) A management official within the same service as the individual alleging sexual harassment should take the complaint.  They should

express no opinion and make no commitment.  But encourage the person to speak candidly.

       b) The management official will conduct an administrative inquiry on the alleged allegation.  The individual will utilize Attachment "A", "Sexual Harassment Allegation Checklist " throughout the process.  The management official will interview the alleged victim.  If the complainant appears uncomfortable relating the problem to someone of the opposite gender, it is appropriate to have an individual of the same gender discuss the matter with the employee.  If the complainant is a bargaining unit employee, it is necessary to apprise the individual that he/she may request to have a union representative present at any meeting or discussion.  Tape recorders will not be used during the interviews or fact-finding process.

       c) In the process of the interview, the official will record items pertinent to the incident, including dates, times, witnesses and other information.  The information will be helpful to an Administrative Board of Investigation, if it becomes necessary to appoint one.

       d) The alleged victim will be given the information to utilize the EEO complaint process and be informed that counseling is available through the Employee Assistance Program (EAP) to enable him/her to deal with any emotional trauma.

       e) The alleged harasser will be contacted and interviewed by a management official within the same service as the individual accused of sexual harassment.  The definition of sexual harassment will be discussed, as well as the statement provided by the complainant.  The alleged harasser will be offered the opportunity to provide comments concerning the allegation and be informed that higher levels of management will evaluate the information presented in order to determine if further reviews is necessary.  The alleged harasser will be ordered to cease any further contact with the alleged victim except that of which is absolutely required by official business.  If the complainant is a bargaining unit employee, it is necessary to apprise the individual that he/she may request to have a union representative present at any meeting or discussion.  Tape recorders will not be used during the interviews or fact-finding process.  The management official will utilize Attachment "B", "Sexual Harassment Allegation Checklist" throughout the process.

       (f) Prompt action is required for all allegations of sexual harassment.  Within 96 hours of being notified, the designated management official will submit a written report of the sexual harassment allegation to the EEO/Affirmative Employment Program Manager.  To the extent possible, the identities of the complainant, alleged harasser and witnesses will be limited to those directly involved with the investigative procedure.  This report will include a description of the complainant and alleged harasser, along with the steps taken to neutralize the situation.  The EEO/Affirmative Employment Program Manager

will review the written report with the Risk Manager, Associate Medical Center Director and a decision will be made as to whether any additional action should be completed.  If at any time an element of criminal intent is discovered, then that information will be referred to Police Service for appropriate action.

        3)  Administrative Investigation Board (AIB): When deemed necessary, the Director will assemble an Administrative Investigation Board (AIB) to conduct a detailed evaluation of the allegations.  The team will be comprised of at least two individuals and MUST include a member of each sex.  If the alleged victim is female it is recommended that the female member of the team conduct the interviews of any females involved or if the AIB would prefer to talk with the female member of the team privately, the other member of the team will leave the room.  After the AIB has been completed, if the board makes an administrative remedy recommendation; then that information will be referred to Human Management Resource Service for appropriate action.  If information received during the Administrative Board of Investigation reveals an element of criminal intent then that information will be referred to Police Service for appropriate action.

        4)  Resolution: If the issue is resolved at the local level, it is recommended that both parties sign an agreement.  The agreement shall be dated and witnessed by a management official, with copies given to both parties.

6.  **REFERENCES**.  Veterans Health Administration Directive 2008-018 The Prevention of Sexual Harassment.

7.  **RESCISSION**.  All previous versions of Medical Center Policy 003-003 are rescinded.  The next review date of this policy is March 1, 2019.

8.  **FOLLOW-UP RESPONSIBILITY**.  EEO/Affirmative Employment Program Manager.


//s//
SUSAN M. FUEHRER
Medical Center Director

Attachments

**ATTACHMENT A**                    **MEDICAL CENTER POLICY 003-003**
                                    **March 1, 2016**

**Sexual Harassment Allegation Checklist**
**(Alleged Victim)**
**A copy of this checklist will be attached to the written report and submitted to the**
**Director, LSCVAMC through the EEO/Affirmative Employment Program Manager.**

1.    The employee occupies a position that is covered by the bargaining unit; he/she was advised that he/she may request representation during the fact-finding process.

   Not applicable_____ Initials_____ Date_____

2.    The alleged victim has been interviewed and the information gathered is included in the attached report.

   Initials_____ Date_____

3.    During the interview, I notified the alleged victim of his/her right to utilize the EEO complaint process.  I provided the telephone number to the Office of Resolution Management.  (1-888-737-3361)

   Initials_____ Date_____

4.    I have explained to the alleged victim that counseling is available through the Employee Assistance Program (EAP) to enable him/her to deal with the trauma caused by the circumstances.  I provided the telephone number to EAP.  (1-216-791-3800 ext. 6818)

   Initials_____ Date_____

5.    I have included my written report, along with the statements made by both parties, witnesses, and if applicable, a VA Police report.

Initials_____ Date_____

6.    For EEO Manager:

      I have made a recommendation as to the Medical Center Director as to whether an Administrative Investigation Board should be appointed.

Initials_____ Date_____

**ATTACHMENT B**                          **MEDICAL CENTER POLICY 003-003**
                                          **March 1, 2016**

**Sexual Harassment Allegation Checklist**
**(Alleged Harasser)**
**A copy of this checklist will be attached to the written report and submitted to the**
**Director, LSCVAMC through the EEO/Affirmative Employment Program Manager.**

1.    The employee occupies a position that is covered by the bargaining unit; he/she was advised that he/she may request representation during the fact-finding process.

   Not applicable_____ Initials_____ Date_____


2.    The alleged harasser has been interviewed and the information gathered is included in the attached report.

   Initials_____ Date_____


3.    I have explained to the alleged harasser that counseling is available through the Employee Assistance Program (EAP) to enable him/her to deal with the trauma caused by the circumstances.  I provided the telephone number to EAP.  (1-216-791-3800 ext. 6818)

    Initials_____ Date_____


4.    I have ordered the alleged harasser to cease any contact with the alleged victim except that which is absolutely required for official business.

   Initials_____ Date_____


5.    I have included my written report, along with the statements made by both parties, witnesses, and if applicable, a VA Police report.

Initials_____ Date_____


6.    For EEO Manager:

       I have made a recommendation as to the Medical Center Director as to whether an Administrative Investigation Board should be appointed.

Initials_____ Date_____

**From:** Bruce Kafer, RN, MSN / Leshelle Reese, EEO Specialist

**Subject:** Report of Investigation into Allegations of Sexual Harassment:

CRNAs complaints against Ronald Lisan, MD

**Thru:** EEO Affirmative Employment Manager

Associate Medical Center Director

**Cc:** Susan Raphaely, MD, Chief, Anesthesiology

**To:** Medical Center Director


### INTRODUCTION

This report presents the findings of a sexual harassment investigation of allegations made by Certified Registered Nurse Anesthetists who alleged sexual harassment perpetrated by Ronald Lisan, MD. Following a review of written reports of contact and interviews of appropriate staff it was evident that sexually inappropriate behavior may had occurred by Dr. Lisan. However, the evidence in this case did not rise to the level of "sexual harassment" as defined in the VA policy. Despite the finding in this case corrective actions are being implemented to ensure all staff are trained in the Prevention of Sexual Harassment as well as the VA requirements for professional conduct.

### POLICY

It is the policy of the Louis Stokes Cleveland Veterans Affairs Medical Center (LSCVAMC) that sexual harassment is unacceptable conduct in the workplace and will not be tolerated. The policy applies to all employees and covers employees outside the workplace while conducting official business. This facility aims to provide a work environment free from sexual harassment, and in cases that so warrant, corrective action will be taken by appropriate management officials (MCP 003-003).

Furthermore, no employee will be subjected to harassment, a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA). All employees are entitled to a work environment in which they feel

EXHIBIT

**2-I**

USA - 000043

free to raise concerns and are confident that those concerns will be addressed. Unwelcome harassing conduct will not be tolerated and immediate, appropriate action will be taken when management becomes aware of allegations per MCP 003-008.

### a. Factors

In determining a hostile work environment, the central inquiry is whether the conduct "unreasonably interfered with an individual's work performance" or created "an intimidating, hostile, or offensive working environment."

Determining unwelcome conduct when confronted with conflicting evidence as to whether conduct was welcome, the record as a whole will be reviewed and the totality of the circumstances, evaluating each situation on a case by case basis. The investigation should determine whether the complainant's conduct was consistent, or inconsistent, with his/her assertion that the sexual conduct, was unwelcome.

### b. Responsibilities

As required per Medical Center Policy 003-003, all parties involved have been advised of their responsibility regarding the prevention of sexual harassment in the workplace. When conduct perceived as sexual harassment occurs, it is incumbent on the recipient to verbally direct the perpetrator of the unwanted conduct to cease and desist the unwanted actions and then report the occurrence to the appropriate management official and also provide written documentation regarding the incident. Employees have annual training on the Prevention of Sexual Harassment.

### BACKGROUND

Ronald Lisan, MD, is an Anesthesiologist within Anesthesiology Service. His direct supervisor is Susan Raphaely, MD, Chief, Anesthesiology Service. Four Certified Registered Nurse Anesthetists (CRNA) alleged sexual harassment by Dr. Ronald Lisan, which occurred over an extended period of time. The CRNA's alleging sexual harassment complaints are as follows:

USA - 000044

1. Karin Bonfili, CRNA
2. Jessica Foster, CRNA
3. Elaine Costanzo, CRNA
4. Rhonda Verb, CRNA

Reports of Contact were obtained from each complainant and direct interviews were conducted by Bruce Kafer, RN, and Leshelle Reese, EEO Specialist. Copies of the Reports of Contact were provided to Dr. Ronald Lisan by his direct supervisor. Dr. Lisan's attorney provided a response to the Reports of Contact denying the allegations of sexual harassment. Findings from the interviews will follow.

**INTERVIEW: Karen Bonfili, CRNA**

Karen Bonfili, CRNA, was interviewed by Bruce Kafer and Leshelle Reese. Notable was her admission that she had refrained from verbally responding to Dr. Lisan's inappropriate sexual jokes which initially began as just him telling her sexual jokes. Karen Bonfili verbalized that she felt uncomfortable saying anything to Dr. Lisan because he was an attending anesthesiologist. Karen Bonfili wrote a report of contact on January 11, 2017, and expounded on what had been occurring. She also reported that Dr. Lisan had been observed licking the bottom of his shoe in an effort to demonstrate to others he was cured of any sickness.

Karen Bonfili stated the reason she was coming forward now was because it seemed Dr. Lisan had changed from general sexual jokes to comments that are more directed at her. Karen Bonfili's Report of Contact has examples of what Dr. Lisan had said to her. Following Karen Bonfili informing her supervisor and making her aware of what has been occurring, her supervisor subsequently provided the Reports of Contact to Dr. Lisan and also ordered Dr. Lisan to refrain from interacting with Karen Bonfili unless there was a relevant patient care issue to discuss with her.  In addition, Dr. Raphaely began scheduling them separately so they would not be working together during the course of this review.

USA - 000045

*Violation of Supervisory Order*

On March 8, 2017, Karen Bonfili reported an unwanted incident of touching to Bruce Kafer and Leshelle Reese. In addition, she informed her supervisor and completed a VA Police Report. Subsequently, a "cease and desist" letter was drafted and issued to Dr. Ronald Lisan. Dr. Lisan had been ordered to refrain from interacting with Karin Bonfili on any non-patient care issues. In addition to violating this order, Karin Bonfili alleges he touched her despite her verbal instructions to him to refrain from touching her. In addition, he refused to leave her assigned patient room and despite prompting from another physician he refused to leave and continued to attempt to interact with Karen Bonfili in an intimidating and threatening manner.

**INTERVIEW: Jessica Foster, CRNA**

Jessica Foster, CRNA, informed Bruce Kafer and Leshelle Reese that on January 4, 2017, Dr. Lisan had made sexual references and also observed her marriage may be like his which resulted in divorce. Jessica Foster indicated she refrained from instructing Dr. Lisan to discontinue sexual topics as she felt uncomfortable in doing so.

**INTERVIEW: Elaine Constanzo, CRNA**

Elaine Constanzo cited incidents that occurred in 2015 that she did not report at the time. She stated because she was a new employee she felt uncomfortable talking to others about these two incidents that occurred. In particular, she recalled one of the incidents from 2015 where Dr. Lisan began talking about his own male genitalia. Upon hearing this she put her hands over her ears and informed Dr. Lisan she wanted him to stop telling her. It is notable that he stopped interacting with her on the sexual subject matter and no further incidents were experienced by Elaine Constanzo.

**INTERVIEW: Rhonda Verb, CRNA**

Ms. Rhonda Verb cites that Dr. Lisan has said many inappropriate things to her while working. She cited an example of her leaving for the day and informing Dr. Lisan. She stated Dr. Lisan responded by inquiring what time should he come over. She reported she said nothing in response to this sexual innuendo remark. She added this has

USA - 000046

always been how she responds to his inappropriate remarks, which is to say nothing and just look at him.

**INTERVIEW: Ronald Lisan, MD**

While Dr. Lisan's attorney had denied all allegations of sexual harassment on his client's behalf. It is appropriate to interview Dr. Lisan regarding the recent infraction of the supervisory order. Dr. Lisan stated that he did touch Karin Bonfili, with her permission.  Dr. Lisan is adamant that Karin Bonfili gave him permission to touch her shoulder and states that during this same period, he became noticely upset and that Ms. Bonfili then placed her hands on his shoulder.  It is obvious that both parties have two different perceptions of the incident.  However, it is also obvious that Dr. Lisan did not follow the direct order to have no contact with the CRNA's.

**CONCLUSION**

The Policy on the Prevention of Sexual Harassment underscores VA employees have the responsibility of bringing any instance or allegation of sexual harassment to the attention of their supervisor or appropriate management official.  When the January 2017 reports were received there was an immediate fact finding process as well as instructions to Dr. Lisan to refrain from contacting the complainants, which he violated. As a result, a cease and desist letter was issued to him. Any further violations will result in appropriate disciplinary actions.

While the complainants have cited that Dr Lisan has engaged in sexually inappropriate jokes and commentary throughout the course of their employment, there is no indication that anyone informed him to stop with the exception of Elaine Constanzo after which he stopped.

In reviewing the totality of the case it fails to rise to the level of sexual harassment as defined in policy which was promulgated pursuant to Equal Opportunity Employment

USA - 000047

law. However, it is clear sexually inappropriate behavior was occurring. Moreover, Dr. Lisan had violated the supervisory order. Ms. Bonfili reported the infraction appropriately and action was taken.

USA - 000048

*To: Bruce Greenspan*
*9 pages total*

**AFFIDAVIT**

STATE of: Ohio

I, **Bruce Kafer** make the following statement freely and voluntarily to **Burton Greenspan**, who has identified himself to me as a Contract EEO Investigator, investigating a complaint of discrimination filed by **Ronald Lisan** under agency Case No. **200H-0541-2017101627,** against the **Department of Veterans Affairs** knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know).

I have been advised that the accepted issues for investigation is:

**Whether complainant was subjected to a hostile work environment based on sex (male), disability, and reprisal as evidenced by the following events:**

1) **When on December 7, 2016, Susan Raphaely (SR), Chief of Anesthesiology, gave complainant an unusually heavy workload after he returned to work from a medical leave of absence related to his disability.**
2) **When since December 19, 2016, SR has failed to provide complainant with a reasonable accommodation by not exempting him from 'On-Call' duties.**
3) **When since January 6, 2017, Susan Fuehrer (SF), Facility Director, and Murray Altose (MA), Chief of Staff, have not taken appropriate corrective action after complainant's attorney sent a letter of complaint regarding SR's harassment.**
4) **When on January 11, 2017, SR emailed complainant to say that his scheduled meeting the next day with Bruce Kafer (BK), Reasonable Accommodation Coordinator, was canceled and that his request for reasonable accommodation would be decided without allowing complainant to discuss his circumstances with BK.**
5) **When on January 11, 2017, SR began promoting and fostering false accusations of complainant sexually harassing CRNA's (Certified Registered Nurse Anesthetists).**
6) **When since January 17, 2017, SR continued to not provide complainant a reasonable accommodation by assigning him 'On-Call' duties.**
7) **When in March and April 2017 RS attempted to force complainant to work in the same operating room with the CRNA's who accused him of sexual harassment, even though there were other CRNA's available.**
8) **When on March 9, 2017, RS issued complainant a Written Warning.**
9) **When on March 13 and 14, 2017, RS assigned complainant to serve as the anesthesiologist during operations without a CRNA to assist him, which is contrary to VA standard operating procedure, and put the patients at risk.**
10) **When on March 28, 2017, RS issued complainant's Proposed 10-Day Suspension.**
11) **When on July 10, 2017, complainant was suspended for 10 days.**

**Events 2, 6, and 8** above constitute timely raised discrete acts that are hereby **ACCEPTED** for investigation as independently actionable claims. **They also represent 3 of the 10 actions or harassing behaviors taken against or directed toward your client. These events are**

Page 1 of 9                                                                 Initials

EXHIBIT
2-J

USA- 000975

sufficiently related to the overall pattern of harassment and will be included for consideration in the analysis of the harassment claim.

In a letter dated July 14, 2017 the complaint was amended:
**Events 2, 6, 8,** remain Accepted for investigation as independent claims; **event 11** is Accepted for investigation as an independently actionable claim; and Complainant's harassment claim, consisting of events **1 through 11** is Accepted for investigation.

2. **When since December 19, 2016, SR has failed to provide complainant with a reasonable accommodation by not exempting him from 'On-Call' duties.**
6. **When since January 17, 2017, SR continued to not provide complainant with a reasonable accommodation by assigning him 'On-Call' duties.**
8. **When on March 9, 2017, SR issued complainant a Written Warning.**
11. **When on July 10, 2017, complainant was suspended for 10 days.**

I hereby solemnly swear or affirm that:

1. **For the record, please state your name.**

   Bruce Kafer, RN, MSN

2. **What is your current position title, grade and agency unit/division?**

   As it relates to this case, Registered Nurse, Local Reasonable Accommodation Coordinator, Grade 3, Louis Stokes Cleveland VA Medical Center.

3. **How long have you been in this position? How long with this agency?**

   Approximately six years, with agency as a registered nurse since September 1999.

4. **Who are your first and second level supervisors at the time of the Complaint, by name and position title?**

   Andrea Freeman, EEO Manager, Cleveland VAMC, second level supervisor is the Medical Center Director, Susan Fuehrer.

5. **What is your working relationship with the Complainant?**

   The only relationship I had with the complaint is the processing of his VA Reasonable Accommodation request.

6. **What is your working relationship with Dr. Susan Raphaely?**

Initials

USA- 000976

Only coordinating VA Reasonable Accommodation requests for employees in her service.

7. **Please state for the record your sex?**

Male

8. **Please state for the record your disability?**

None

9. **Have you been involved in any prior EEO activity or protected activity? Please explain what the activity consisted of and when it took place.**

Yes, I have responded to various interrogatories associated with my position. The last one was approximately 3 months ago.

**Issue 1: Whether complainant was subjected to a hostile work environment based on sex (male), disability, and reprisal as evidenced by the following events:**

1. **When on December 7, 2016, Susan Raphaely (SR), Chief of Anesthesiology, gave complainant an unusually heavy workload after he returned to work from a medical leave of absence related to his disability.**
2. **When since December 19, 2016, SR has failed to provide complainant with a reasonable accommodation by not exempting him from 'On-Call' duties.**
3. **When since January 6, 2017, Susan Fuehrer (SF), Facility Director, and Murray Altose (MA), Chief of Staff, have not taken appropriate corrective action after complainant's attorney sent a letter of complaint regarding SR's harassment.**
4. **When on January 11, 2017, SR emailed complainant to say that his scheduled meeting the next day with Bruce Kafer (BK), Reasonable Accommodation Coordinator, was canceled and that his request for reasonable accommodation would be decided without allowing complainant to discuss his circumstances with BK.**
5. **When on January 11, 2017, SR began promoting and fostering false accusations of complainant sexually harassing CRNA's (Certified Registered Nurse Anesthetists).**
6. **When since January 17, 2017, SR continued to not provide complainant with a reasonable accommodation by assigning him 'On-Call' duties.**
7. **When in March and April 2017 RS attempted to force complainant to work in the same operating room with the CRNA's who accused him of sexual harassment, even though there were other CRNA's available.**
8. **When on March 9, 2017, SR issued complainant a Written Warning.**

Initials

USA- 000977

9. **When on March 13 and 14, 2017, RS assigned complainant to serve as the anesthesiologist during operations without a CRNA to assist him, which is contrary to VA standard operating procedure, and put the patients at risk.**
10. **When on March 28, 2017, RS issued complainant's Proposed 10-Day Suspension.**
11. **When on July 10, 2017, complainant was suspended for 10 days.**

**Issue 1: Whether complainant was subjected to a hostile work environment based on sex (male), disability, and reprisal as evidenced by the following events:**

> **When since December 19, 2016, SR has failed to provide complainant with a reasonable accommodation by not exempting him from 'On-Call' duties.**

10. **Did Complainant request a reasonable accommodation? If so what was the reasonable accommodation requested and when was it requested? To whom was the request made and was it made in writing?**

The complainant requested to be relieved from an essential function of his position as an anesthesiologist, which was his being required to be "On Call," which involves carrying a medical pager and responding to pages either by phone or coming into the hospital in person when needed. There could be an emergency surgery requiring his professional anesthesiology services. As such, an "On Call" schedule is maintained which uses a rotation based system among anesthesiology physicians within the Surgical Service.

11. **To your knowledge what is the Agency protocol for requesting a reasonable accommodation?**

Pursuant to the VA policy on reasonable accommodation, a request may be submitted in writing, verbally, or even inferred from a manager's perspective. Subsequently, and as part of the request process, the requestor must submit medical documentation, unless the disability is obvious (like a broke leg) to the Local Reasonable Accommodation Coordinator.

The submitted medical documentation must document not only a disability. as defined by the Americans With Disabilities Act Amendments Act, but also how the disability impairs the performance of essential functions.

As part of the request process, all requestors receive the VA Handbook 5975.1 on the VA Reasonable Accommodation process. In the event a requestor's medical documentation fails to document what is needed the requestor is informed of this and what is needed within the medical documentation.

12. **What was Complainant's disability?**

_____ Initials

USA- 000978

Obsessive Compulsive Disorder (OCD)

13. **What documentation of his disability did Complainant provide and was it provided in writing?**

The complainant provided progress notes from his doctor from a recent two month hospitalization where he received inpatient treatment of OCD.

14. **Who is responsible for processing a reasonable accommodation request?**

The Local Reasonable Accommodation Coordinator is responsible for processing the VA Reasonable Accommodation requests for the local facility.

15. **What was your direct involvement Complainant's request for a reasonable accommodation?**

As the Local Reasonable Accommodation Coordinator for the Cleveland VA Medical Center, I reviewed the complainant's medical documentation that was submitted and communicated to him that it was insufficient and failed to meet the essential criteria. In addition, that the VA policy on reasonable accommodation prohibited the removal of essential functions from his position.

16. **To the best of your knowledge what was Susan Raphaely's inolvement in Complainant's request?**

Dr. Susan Raphaely involvement in this complaint was to communicate with me when I needed to ascertain the essential functions of an anesthesiologist. Also, she assisted me in ensuring the complainant received messages from me when needed.

17. **Was Complainant's request for a reasonable accommodation granted or denied?**

The complainants request was denied because he had no medical documentation which substantiated how his disability impaired the performance of any essential functions of an anesthesiologist. Moreover, the VA policy on VA reasonable accommodations prohibits the removal of essential functions from any position. Only when there is appropriate medical documentation the Local Reasonable Accommodation Coordinator and the supervisor can determine if there is an accommodation regarded as reasonable.

18. **If Complaiannt's request was denied what was the reason for denial? Was Complainant provided the reason and was it provided in writing/**

Initials

USA- 000979

The medical documentation failed to document any functional limitations related to the disability which impaired the performance of essential functions. Yes, the complainant was informed in writing by the Local Reasonable Accommodation Coordinator of what is needed in medical documentation and also that essential functions cannot be removed within the VA reasonable accommodation process.

**19.  If Complainant's request was denied who was responsible for denying the request?**

The Local Reasonable Accommodation Coordinator is responsible for determining if the medical documentation meets the criteria for the provision of a VA Reasonable Accommodation and will subsequently inform the requestor in writing and management. VA management are typically responsible for denying the request.

**20.  Were you aware of Complainant's sex, disability and or prior EEO activity prior to your involvement in Complainant's request for a reasonable accomodation? If so when and how did you become aware?**

No, I never met or knew of the complainant prior to his VA reasonable accommodation request process.

**21.  Were Complainant's sex, disability, and or prior EEO activity in any way a basis for denying Complainant's request for a reasonable accommodation?**

No

**When since January 17, 2017, SR continued to not provide complainant with a reasonable accommodation by assigning him 'On-Call' duties.**

**22.  Did Complainant request a reasonable accommodation in January 2017 and if so what was the reasonable accommodation requested? Was it requested in writing?**

Yes, the complainant requested to be exempted from being included on the "On Call" schedule.

**23. Was this a separate request from the request made by Complainant in December 2016?**

This was a resubmission of the same request.

**24. If this was a separate request what documentation did Complainant provide?**

This was the same request and the complainant sent additional medical documentation which provide no further information.

Initials

USA- 000980

**25. Was Complainant's request granted or denied?**

The complainant's request was denied.

**26. If Complainant's request was denied what was the basis for denying Complainant's request for a reasonable accommodation and was Complainant provided that information in writing?**

Yes, in writing.

**27. What was your direct involvement in granting or denying this request for a reasonable accommodation?**

As the Local Reasonable Accommodation Coordinator, my role is to determine if a requestor's medical documentation meets the criteria pursuant to the VA policy in order to proceed with the VA reasonable accommodation. A requestor's medical documentation is protected so the Local Reasonable Accommodation Coordinator and the Alternate Local Reasonable Accommodation Coordinator are the only ones authorized to view the VA reasonable accommodation medical documentation.

**28. To the best of your knowledge what was Dr. Susan Raphaely's role in Complainant's request for a reasonable accommodation?**

Her role was to inform me about the essential functions of an anesthesiologist and also how the "On Call" schedule is rotated.

**When on January 11, 2017, SR emailed complainant to say that his scheduled meeting the next day with Bruce Kafer (BK), Reasonable Accommodation Coordinator, was canceled and that his request for reasonable accommodation would be decided without allowing complainant to discuss his circumstances with BK.**

**29. Was Complainant's meeting with you cancelled and if so what was the basis for the cancellation?**

The meeting was cancelled as I had all of the written documentation I needed and I had a schedule conflict so I asked Dr Raphaely to cancel the meeting. The policy underscores the interactive process which is typically done via email with the Local Reasonable Accommodation Coordinator and the requestor.

**30. What was your role in the cancellation?**

I recall needing to cancel due to a schedule conflict and asking Dr. Raphaely to inform the complainant.

Initials

USA- 000981

31. **To the best of your knowledge what was Dr. Susan Raphaely's role in the cancellation?**

Dr Raphaely informed the complainant on my behalf.

32. **Was the meeting cancelled because of Complainant's sex, disability and or prior EEO activity?**

No

Hostile Work Environment/ harassment Issue 1-11

34. **Did the Complainant ever raise the issue that he was being harassed with you and or that he was being subjected to a hostile work environment? If yes, please explain in detail what Complainant raised and when Complainant raised the issue with you. Was it raised in writing?**

No, the complainant never informed me of this allegation.

35. **If Complainant raised the issue with you who did Complainant allege was harassing him and what did Complainant say was the basis of the alleged harassment?**

Not applicable, the issue was not raised with me.

36. **To the best of your knowledge, did Complainant raise the issue of being subject of being harassed or subjected to a hostile work environment with any member of management? If yes, with whom did Complainant raise the issue?**

I think the client asked his attorney to write a letter to the Medical Center Director about the alleged harassment.

37. **Is there anything you would like to add that is relevant to this claim, which has not already been addressed?**

No



Initials

USA- 000982

_____END OF STATEMENT_____

I have read this statement, consisting of ____ and it is true, complete, and correct to the best of my knowledge and belief.

_____
Signature

_____
Date

Signed and sworn to before me
on this _____ day of _____, _____, at _____.

_____
Neutral witness, notary, or Investigator

_____Initials

USA- 000983