```
                                                              104
 1            IN THE UNITED STATES DISTRICT COURT

 2        NORTHERN DISTRICT OF OHIO - EASTERN DIVISION

 3    RONALD M. LISAN, M.D.,

 4              Plaintiff,
                                JUDGE PATRICIA A. GAUGHAN
 5        -vs-                  CASE NO. 1:18-CV-00969

 6    ROBERT WILKE, ACTING SECRETARY
      OF THE UNITED STATES DEPARTMENT
 7    OF VETERANS AFFAIRS,

 8              Defendant.   VOLUME II

 9                           -   -   -   -

10       Continued deposition of SUSAN M. FUEHRER,

11    taken as if upon cross-examination before Pamela

12    S. Greenfield, a Certified Realtime Reporter,

13    Registered Diplomate Reporter and Notary Public

14    within and for the State of Ohio, at the offices

15    of Sindell & Sindell, LLP, 23611 Chagrin

16    Boulevard, Suite 227, Beachwood, Ohio, at 1:35

17    p.m. on Friday, April 26, 2019, pursuant to

18    notice and/or stipulations of counsel, on behalf

19    of the Plaintiff in this cause.

20                           -   -   -   -

21                     MEHLER & HAGESTROM
                         Court Reporters
22
              CLEVELAND                      AKRON
23     780 Skylight Office Tower   720 Akron Centre Plaza
        1660 West 2nd Street         50 South Main Street
24      Cleveland, Ohio 44113        Akron, Ohio 44308
             216.241.9000                 330.535.7300
25                      FAX 216.621.0050
```

EXHIBIT 12

105

1   APPEARANCES:

2       Steven A. Sindell, Esq.
        Rachel Sindell, Esq.
3       Sindell & Sindell, LLP
        23611 Chagrin Boulevard
4       Suite 227
        Beachwood, Ohio  44122
5       (216) 292-3393
        Info@SindellAttorneys.com,
6
            On behalf of the Plaintiff;
7
        Ruchi Asher, Esq.
8       Assistant United States Attorney
        U.S. Department of Justice
9       United States Attorney's Office
        Northern District of Ohio
10      United States Court House
        801 West Superior Avenue
11      Suite 400
        Cleveland, Ohio  44113
12      (216) 622-3679
        Rushi.Asher@usdoj.gov,
13
            On behalf of the Defendant.
14

15

16

17

18

19

20

21

22

23

24

25

188

1 would have never come to me.
2 Once I got the letter, the actions were that
3 doctor --
4 Q. What letter?
5 A. I'm sorry, the evidence file with the proposal to
6 make the decision. I reviewed the evidence, you
7 know, the facts in the case as I read them were
8 that there were allegations by several women,
9 numerous, four at the beginning, two at the later
10 end including a police report, including entry
11 into an OR, issues with patient safety and based
12 on that, there needed to be a suspension.
13 Q. Well, but you sustained a 10-day suspension
14 without pay?
15 A. Yes, I did.
16 Q. Okay. Well, why is -- if your own chief of staff
17 recommended counseling, a counseling approach,
18 that would be far -- you didn't even consider
19 that disciplinary? Is what you're telling me?
20 A. Correct.
21 Q. You could have, you could have rejected the
22 suspension and suggested counseling, too, or
23 ordered counseling, right?
24 A. I could have.
25 Q. Why didn't you do that?

**189**

1  A.  Because, as I said, Dr. Lisan was asked by his
2      supervisor on a couple -- on several occasions as
3      well as in writing, as we discussed earlier, he
4      was in fact asked by a couple nurses to stop, and
5      he failed.  He didn't show remorse.  He didn't
6      say, acknowledge that he, his behavior was not
7      appropriate and in an OR setting, which if any of
8      us were in the OR, I would hope that none of us
9      would want someone feeling threatened or feeling
10     like they had to leave the OR and get someone to
11     come in because someone else had entered the OR
12     that wasn't even involved in the case, and I
13     think that this is a very strong message.  And
14     this, mind you, was in advance of the hashtag
15     MeToo but certainly, you know, in this era, you
16     know, sexual harassment, sexual tones, touching
17     is totally unacceptable.
18 Q.  **My question to you was, of course -- withdrawn.**
19     **The actual allegation was that he violated**
20     **the gag order by talking about this.  Wasn't that**
21     **part of it?**
22              MS. ASHER:  Objection.
23          Mischaracterizes.
24 Q.  **He was ordered not to discuss it and he allegedly**
25     **discussed it with Karin Bonfili or somebody else?**

193

1 Q. That's okay. Go ahead.

2 A. And, you know, one of the things that I look for
3 is remorse, rehabilitality?

4 Q. Rehabilitation?

5 A. Rehabilitation.

6 You know, was this behavior going to stop.

7 What did we need to do to get the message
8 across to Dr. Lisan that he could not go into ORs
9 for which he had no professional business to be
10 in and initiate an inappropriate comment and
11 touch CRNAs that was putting our nation's heroes
12 at risk, our veterans.

13 Q. **So what you're telling me is that part of your**
14 **fact finding considerations in making your**
15 **decision to sustain his proposed suspension was**
16 **the fact that by refusing to accept an offer of a**
17 **counseling, he failed to show any remorse for his**
18 **conduct or an indication acceptable to you that**
19 **this wouldn't occur again?**

20 MS. ASHER: Objection.

21 Q. **Is that correct?**

22 MS. ASHER: Objection. Go ahead.

23 A. That and the comments that were made in the oral
24 reply, so.

25 Q. **The oral reply?**

194

1  A. To Dr. Altose.
2  Q. There's no record made of it, was there?
3  A. Yes.
4  Q. Was it in writing?
5  A. Yes.
6  Q. Was that something that was typed up or written
7     out by hand?
8  A. I believe it was typed.
9            MS. ASHER:  We produced it.
10 Q. Who provided that?
11 A. It was in the evidence file.
12 Q. Was that ever given to Dr. Lisan or his counsel?
13 A. If it was in the evidence file, I would assume it
14    would be.
15           MS. ASHER:  It was given to you
16        with the initial disclosures.  We gave that
17        to you many months ago actually.
18           MR. SINDELL:  Yes, there were just
19        two or three documents and I don't recall
20        that that was one of your disclosures.
21           MS. ASHER:  It was.
22           MR. SINDELL:  But there weren't
23        two or three documents.  It was a mountain.
24        I don't remember it.  I'm not saying it
25        wasn't there.