PLAINTIFF'S EXHIBIT NO. 86 FOR IDENTIFICATION DATE: RPTR: PENGAD 800-631-6989

**From:** Bruce Kafer, RN, MSN / Leshelle Reese, EEO Specialist
**Subject:** Report of Investigation into Allegations of Sexual Harassment: CRNAs complaints against Ronald Lisan, MD
**Thru:** EEO Affirmative Employment Manager
Associate Medical Center Director
**Cc:** Susan Raphaely, MD, Chief, Anesthesiology
**To:** Medical Center Director
**Date:** March 13, 2017

## INTRODUCTION

This report presents the findings of a sexual harassment investigation of allegations made by Certified Registered Nurse Anesthetists who alleged sexual harassment perpetrated by Ronald Lisan, MD. Following a review of written reports of contact and interviews of appropriate staff it was evident that sexually inappropriate behavior had occurred by Dr. Lisan. However, the evidence in this case did not rise to the level of "sexual harassment" as defined in the VA policy. Despite the finding in this case corrective actions are being implemented to ensure all staff are trained in the Prevention of Sexual Harassment as well as the ᴧ requirements for professional conduct.

## POLICY

It is the policy of the Louis Stokes Cleveland Veterans Affairs Medical Center (LSCVAMC) that sexual harassment is unacceptable conduct in the workplace and will not be tolerated. The policy applies to all employees and covers employees outside the workplace while conducting official business. This facility aims to provide a work environment free from sexual harassment, and in cases that so warrant, corrective action will be taken by appropriate management officials (MCP 003-003).

Furthermore, no employee will be subjected to harassment, a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities

Act of 1990, (ADA). All employees are entitled to a work environment in which they feel free to raise concerns and are confident that those concerns will be addressed. Unwelcome harassing conduct will not be tolerated and immediate, appropriate action will be taken when management becomes aware of allegations per MCP 003-008.

### a. Factors

In determining a hostile work environment, the central inquiry is whether the conduct "unreasonably interfered with an individual's work performance" or created "an intimidating, hostile, or offensive working environment."

Determining unwelcome conduct when confronted with conflicting evidence as to whether conduct was welcome, the record as a whole will be reviewed and the totality of the circumstances, evaluating each situation on a case by case basis. The investigation should determine whether the complainant's conduct was consistent, or inconsistent, with his/her assertion that the sexual conduct, was unwelcome.

### b. Responsibilities

As required per Medical Center Policy 003-003, all parties involved have been advised of their responsibility regarding the prevention of sexual harassment in the workplace. When conduct perceived as sexual harassment occurs, it is incumbent on the recipient to verbally direct the perpetrator of the unwanted conduct to cease and desist the unwanted actions and then report the occurrence to the appropriate management official and also provide written documentation regarding the incident. Employees have annual training on the Prevention of Sexual Harassment.

### BACKGROUND

Ronald Lisan, MD, is an Anesthesiologist within Anesthesiology Service. His direct supervisor is Susan Raphaely, MD, Chief, Anesthesiology Service. Four Certified Registered Nurse Anesthetists (CRNA) alleged sexual harassment by Dr. Ronald Lisan, which occurred over an extended period of time. The CRNA's alleging sexual harassment complaints are as follows:

USA-001190

1. Karin Bonfili, CRNA
2. Jessica Foster, CRNA
3. Elaine Costanzo, CRNA
4. Rhonda Verb, CRNA

Reports of Contact were obtained from each complainant and direct interviews were conducted by Bruce Kafer, RN, and Leshelle Reese, EEO Specialist. Copies of the Reports of Contact were provided to Dr. Ronald Lisan by his direct supervisor. Dr. Lisan's attorney provided a response to the Reports of Contact denying the allegations of sexual harassment. Findings from the interviews will follow.

**INTERVIEW: Karen Bonfili, CRNA**

Karen Bonfili, CRNA, was interviewed by Bruce Kafer and Leshelle Reese. Notable was her admission that she had refrained from verbally responding to Dr. Lisan's inappropriate sexual jokes which initially began as just him telling her sexual jokes. Karen Bonfili verbalized that she felt uncomfortable saying anything to Dr. Lisan because he was an attending anesthesiologist. Karen Bonfili wrote a report of contact on January 11, 2017, and expounded on what had been occurring. She also reported that Dr. Lisan had been observed licking the bottom of his shoe in an effort to demonstrate to others he was cured of any sickness.

Karen Bonfili stated the reason she was coming forward now was because it seemed Dr. Lisan had changed from general sexual jokes to comments that are more directed at her. Karen Bonfili's Report of Contact has examples of what Dr. Lisan had said to her. Following Karen Bonfili informing her supervisor aware of what has been occurring, her supervisor subsequently provided the Reports of Contact to Dr. Lisan and also ordered Dr. Lisan to refrain from interacting with Karen Bonfili unless there was a relevant patient care issue to discuss with her. In addition, Dr. Raphaely began scheduling them separately so they would not be working together during the course of this investigation.

USA-001191

*Violation of Supervisory Order*

On March 8, 2017, Karen Bonfili reported an unwanted incident of touching to Bruce Kafer and Leshelle Reese. In addition, she informed her supervisor and completed a VA Police Report. Subsequently, a "cease and desist" letter was drafted and issued to Dr. Ronald Lisan. Dr. Lisan had been ordered to refrain from interacting with Karin Bonfili on any non-patient care issues. In addition to violating this order he touched Ms. Bonfili despite her verbal instructions to him to refrain from touching her. In addition, he refused to leave her assigned patient room and despite prompting from another physician he refused to leave and continued to attempt to interact with Karen Bonfili in an intimidating and threatening manner.

**INTERVIEW: Jessica Foster, CRNA**

Jessica Foster, CRNA, informed Bruce Kafer and Leshelle Reese that on January 4, 2017, Dr. Lisan had made sexual references and also observed her marriage may be like his which resulted in divorce. Jessica Foster indicated she refrained from instructing Dr. Lisan to discontinue sexual topics as she felt uncomfortable in doing so.

**INTERVIEW: Elaine Constanzo, CRNA**

Elaine Constanzo cited incidents that occurred in 2015 that she did not report at the time. She stated because she was a new employee she felt uncomfortable talking to others about these two incidents that occurred. In particular, she recalled one of the incidents from 2015 where Dr. Lisan began talking about his own male genitalia. Upon hearing this she put her hands over her ears and informed Dr. Lisan she wanted him to stop telling her. It is notable that he stopped interacting with her on the sexual subject matter and no further incidents were experienced by Elaine Constanzo.

**INTERVIEW: Rhonda Verb, CRNA**

Ms. Rhonda Verb cites that Dr. Lisan has said many inappropriate things to her while working. She cited an example of her leaving for the day and informing Dr. Lisan. She stated Dr. Lisan responded by inquiring what time should he come over. She reported

she said nothing in response to this sexual innuendo remark. She added this has always been how she responds to his inappropriate remarks, which is to say nothing and just look at him.

### INTERVIEW: Ronald Lisan, MD

While Dr. Lisan's attorney had denied all allegations of sexual harassment on his client's behalf. It is appropriate to interview Dr. Lisan regarding the recent infraction of the supervisory order.

### CONCLUSION

The Policy on the Prevention of Sexual Harassment underscores VA employees have the responsibility of bringing any instance or allegation of sexual harassment to the attention of their supervisor or appropriate management official. When the January 2017 reports were received there was an immediate fact finding process as well as instructions to Dr. Lisan to refrain from contacting the complainants, which he violated. As a result, a cease and desist letter was issued to him. Any further violations will result in appropriate disciplinary actions.

While the complainants have cited that Dr Lisan has engaged in sexually inappropriate jokes and commentary throughout the course of their employment, there is no indication that anyone informed him to stop with the exception of Elaine Constanzo after which he stopped.

In reviewing the totality of the case it fails to rise to the level of sexual harassment as defined in policy which was promulgated pursuant to Equal Opportunity Employment law. However, it is clear sexually inappropriate behavior was occurring. Moreover, Dr. Lisan had violated the supervisory order and was intimidating, and threatening Karin Bonfili and even touched her on the back despite her directives to refrain from touching. Ms. Bonfili reported the infraction appropriately and action was taken.

USA-001194