IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD M. LISAN, M.D. | ) | Case No. 1:18-CV-0969 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | REPLY IN SUPPORT OF |
| ROBERT WILKE, Secretary of | ) | DEFENDANT'S MOTION FOR |
| Veterans Affairs, | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | | |

In his Opposition to the VA's Motion for Summary Judgment (ECF No. 50), Plaintiff Ronald Lisan abandoned all but one of his claims in this case: Lisan concedes his gender and disability discrimination claims, his failure to accommodate claim, and his hostile work environment retaliation claim.[1] "The only claim of relief [Lisan] is pursuing is his retaliation claims arising out of his protected activities related to Reasonable Accommodation, Sex and Disability Discrimination," (ECF No. 50, PageID # 3277). Any alleged facts related to his abandoned claims or the other employees' allegations are immaterial to his single claim of retaliation. Because Lisan fails to demonstrate pretext, and because he fails to prove a genuine issue of material fact on his only claim, the VA is entitled to summary judgment in its favor.

### I.     Lisan Has Not Presented Direct Evidence of Retaliatory Intent.

Lisan incorrectly claims that he has produced "direct evidence of retaliatory intent on the part of Dr. Raphaely," Lisan's direct supervisor. Lisan alleges that Dr. Raphaely stated that she "wanted Dr. Lisan out of the VA Anesthesiology Department" on an unknown date after receiving a complaint letter from Lisan's lawyer. (Opp'n, ECF No. 50, PageID # 3303.) This statement, even if it was made, is not direct evidence of retaliation under Title VII.

A plaintiff may prove a claim of retaliation through either direct or circumstantial evidence. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). Direct evidence is evidence which, if believed, does not require an inference to conclude that unlawful retaliation motivated the employer's action. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 543–44 (6th Cir. 2008)). "Evidence that only suggests discrimination or that is subject to more than one interpretation does

---

[1] Lisan argues that the VA retaliated against him when it gave him a ten-day suspension without pay. (ECF No. 50, PageID # 3303.) Lisan also asserts that the "adverse employment action" taken against him was the suspension. (*Id.*) Lisan fails to make any argument that he was subject to hostile work environment retaliation. (*Id.*, PageID # 3303-3306.) Therefore, Lisan has abandoned his hostile work environment claim as well. (ECF No. 50, PageID # 3277.)

1

not constitute direct evidence." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (citations omitted). For that reason, only an employer's actions or statements that reflect a clearly discriminatory or retaliatory motive are direct evidence. *Compare Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 577 n.7 (6th Cir. 2000) (finding direct evidence of discrimination where the employer allegedly said, "[w]e already have two black vice presidents. I can't bring in a black provost"), *with Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (finding no direct evidence of discrimination where a manager expressed "concern about the potentially detrimental effect on business of having an African American co[-]manager").

Lisan's alleged "direct evidence" is that some time after Lisan's attorney sent the VA letter, "Dr. Raphaely told Mr. Bearss that she wanted Drs. Lisan and Moss 'out of the department'." (ECF No. 50, PageID # 3287.) Bearss, however, did not know when Dr. Raphaely allegedly expressed this "interest or desire or intention," other than it being in 2017, within a few months of January 2017. (Deposition of Robert Bearss ("Bearss Tr."), ECF No. 39, PageID # 1699, 99:6-100:2). Mr. Bearss's testimony on this point is below:

> Q. Okay. What did she tell you about getting him out of the department?
> A. She just wanted him out of the department.
> Q. What did she say?
> A. She said, "I want him out of the department."
> Q. Did she say why?
> A. No.
> Q Did she explain that in any way?
> A. No.
> Q. Was anybody else present when she said that?
> A. No.
> Q. Did you know why she wanted him out of the department?
> A. No.
> Q. Did you tell anybody else that she had said that?
> A. Yes.
> Q. Who did you tell?
> A. I can't recall right now who I told, but I'm sure I told somebody.
> [ … ]
> Q. Did she ever indicate that she preferred females as anesthesiologists than males?

2

    A.    No.

(*Id.*, 100:3-25, 101:9-11, PageID # 1700-01.) Thus, Bearss did not know why Dr. Raphaely allegedly made the statement, and could not provide any context for it. (*Id.*)

Even construing this evidence in Lisan's favor, Dr. Raphaely's alleged statement is not direct evidence of retaliation. In order for the statement to constitute direct evidence, a factfinder would have to make at least one inference—that the reason Dr. Raphaely wanted Lisan out of the department was because he requested an accommodation or complained about discrimination. Without such a reference to Lisan's protected activities, however, the statement alone is not direct evidence of retaliation. *See Yazdian v. ConMed Endoscopic Techs.*, 793 F.3d 634, 648-49 (6th Cir. 2015) (employer's statement specifically referencing the plaintiff's protected activities as examples of insubordination was direct evidence of retaliation); *Loggins v. Costco Wholesale Corp.*, No. 2:17CV2688, 2019 WL 2203120, at *5 (W.D. Tenn. May 21, 2019) (explicit statement that an adverse action was taken in response to employee's discrimination claim is direct evidence of retaliation). The alleged statement does not refer to Lisan's protected activity, and therefore is not direct evidence of retaliation. Lisan therefore must prove his case using the *McDonnell-Douglas* burden shifting framework.

**II.**    **Lisan Has Failed To Show That The VA's Legitimate, Non-Discriminatory Reasons For Its Actions Were Pretextual.**

Even if Lisan were able to establish his prima facie case, the VA is entitled to summary judgment because he provided no evidence that the VA's actions were pre-textual. Under the *McDonnell Douglas* burden-shifting framework, if Lisan is able to prove a prima facie case, the burden of production then shifts to the VA to offer a "legitimate, non-discriminatory reason for its actions." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Here, the VA articulated legitimate, non-discriminatory reasons for suspending Lisan for ten days: he intentionally

3

disobeyed a direct order to not contact the nurse anesthetists (CRNAs) who had filed complaints against him, and engaged in inappropriate behavior. (D.'s Ex. 8, Proposed Suspension, PageID # 363-367; Pl.'s Exhibit 78, Decision – Suspension, ECF No. 50, PageID # 281-304). Violating a direct order is a legitimate, non-discriminatory reason for discipline. *See Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013) (finding no discrimination where plaintiff disobeyed a direct order and holding "[w]e have repeatedly held that insubordination may constitute a legitimate, nondiscriminatory reason for adverse action."); *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). Since the VA articulated a legitimate, non-discriminatory reason for its actions, the burden reverts to Lisan to show by a preponderance of the evidence that the VA's explanation is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 803-04.

To meet his burden, Lisan must provide evidence to show that the VA's stated reason (1) has no basis in fact; (2) was not its actual motivation; or (3) was insufficient to explain its action. *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 915 (6th Cir. 2013). Lisan has "the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the VA's] explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (citation and internal quotation marks omitted).

### A. Lisan Fails to Prove that the VA's Justification for the Ten-Day Suspension Has No Basis in Fact.

First, Lisan fails to show that the VA's justification has no basis in fact. Any discrepancy between Bonfili's and Lisan's accounts of what happened in the operating room (OR) on March 8, 2017 is immaterial because Lisan does not dispute that on that day, he went into an operating room – during an ongoing surgery, where he was not assigned to work – to discuss the allegations made against him with Bonfili, one of the alleged victims; that he touched her; and that she looked

4

terrified. (Deposition of Ronald Lisan ("Lisan Tr."), ECF No. 44, 216:1-3; 216:21-25, 219:22-221:1, 226:21-25; 227:21-228:14.) He interprets the incident by speculating as to Bonfili's thoughts, but he does not dispute that he violated the VA's order not to have contact with employees who had filed complaints against him. (*Id.*; Opp'n, ECF No. 50, PageID # 3298). Contrary to Lisan's characterization, the no-contact order was not the result of some retaliatory animus by Dr. Raphaely; rather, it was required by the VA's policy on how a supervisor should react when confronted with what appear to be sexual harassment allegations. (*See* D.'s Ex. 2-H, Medical Center Policy ("MCP") 003-003, ECF No. 29-3, PageID # 288) ("[…] the alleged harasser will be ordered to cease any further contact with the alleged victim except that of which is absolutely required by official business.") The order was even written into the "Sexual Harassment Checklists" that Dr. Raphaely was required to administer. (*Id.* at PageID # 291; D.'s Ex. 1-L, Completed Attachment B, ECF No. 29-2, PageID # 196). Lisan rails against the unfairness of this part of the VA's sexual harassment policy, which he deems a "gag order." But his protestations against the VA's policy, and the question of whether Bonfili gave him permission to touch or speak to her, are immaterial: the undisputed fact is that he was given an order to avoid all non-patient-care related contact with the allegers, and he intentionally violated the order. Therefore, Lisan fails show that the VA's actions had no basis in fact.

      **B.    Lisan Fails To Prove that the VA's Legitimate, Non-Discriminatory Reason Was Not Defendant's Actual Motivation**

Lisan offers only his speculation that the VA imposed his suspension in retaliation for his protected conduct, which is insufficient to create a genuine issue of material fact. S*ee, Lovelace v. BP Prods. N. Am.*, 252 F. App'x 33, 40-41 (6th Cir. 2007) ("Plaintiffs offer only their subjective beliefs that these incidents were racially motivated […] Such subjective and conclusory allegations are insufficient to create a genuine issue of material fact regarding whether the work environment

5

was racially hostile in violation of Title VII as defined by *Harris*.") Lisan's sole – but misplaced – argument that the OR incident involving Bonfili was not the VA's actual motivation for the suspension is that a written "admonishment," issued by Dr. Raphaely in response to the OR incident, precluded further discipline. (ECF No. 50, PageID # 3302-06.)

> The document itself, with the subject-line, "Written Warning," states, in pertinent part:
>
> 1. I have learned of additional serious allegations that were made against you. I was advised that you may have engaged in additional conversations regarding allegations of inappropriate behavior of sexual nature involving female coworkers.2
>
> 2. The above-mentioned allegations are potentially serious. If true, they may likely constitute sexual harassment on your part. For this reason, you are hereby warned that such conduct will not be tolerated. *While I am bringing these allegations to your attention at the present, be advised that they will be fully investigated.* In the meantime, I am placing you at notice that if these allegations are true, you must cease this offending behavior immediately. […]
>
> 3. If these allegations are not true, and an investigation exonerates you of these charges, you must still be aware of how your interactions with your coworkers are interpreted. […]
>
> 4. *At this time, disciplinary action will not be imposed. As more is learned about the nature of these allegations, you will be advised as to your rights and responsibilities in this matter.* . . .

(Pl.'s Ex. 75, ECF No. 50-1, PageID # 3577, *also at* D.'s Ex. 1-M, ECF No. 29-2, PageID # 197). (emphasis added). The "written warning" is not an "admonishment" for the purposes of the VA's former progressive discipline policy,³ as the document itself makes clear that it is a preliminary measure pending an investigation. (*See also*, Deposition of Susan Fuehrer Vol. II ("Fuehrer Tr.

---

2 Elaine Costanzo also notified Dr. Raphaely and the VA police that Lisan contacted her on her personal cell phone and mentioned her allegations against him. *See*, D's Ex. 5, Costanzo Decl. ¶ 5, ECF No. 29-6, PageID # 330, and attachment 5-D thereto, PageID # 333.
³ The VA's Progressive Discipline Policy was modified by 38 U.S.C. § 714, effective June 23, 2017. Although the VA did not issue a final decision on Lisan's suspension until after this date, it does not appear that Lisan's suspension was proposed under 38 U.S.C. § 714.

II"), ECF No. 43, 187:12-17, stating "In the many years that I've worked at the [VA,] […] letters of written counseling aren't considered disciplinary action.") In her letter, Dr. Raphaely advised Lisan that, after an investigation, discipline might be appropriate. (D.'s Ex. 1-M, ECF No. 29-2, PageID # 197.) The letter was simply an immediate act to prevent Lisan from further contacting the alleged victims. (*Id.*) Finally, nothing in the VA's progressive discipline policy states that, and Lisan produces no evidence that, the VA is precluded from issuing a suspension for misconduct after a supervisor has issued a written warning.

What is undisputed is this: the VA had four allegations of possible sexual harassment by Lisan, and according to Medical Center Policy No. 003-003, Dr. Raphaely had an obligation to respond to those allegations, even if those complaints turned out to be false. *See* D.'s Ex. 2-H, MCP 003-003, ECF No. 29-3, PageID # 285-91; *see also, King v. Mansfield Corr. Inst.*, Case No. 1:16-CV-2558, 2019 WL 498351, at *7 (N.D. Ohio Feb. 7, 2019) (Nugent, J.) quoting *Newton v. Ohio Dept. of Rehab. & Corrections-Toledo Corr. Inst.*, 496 Fed. Appx. 558, 563 (6th Cir. 2012). (In the context of a coworker sexual harassment allegation, the "employer is liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.") Dr. Raphaely responded to those allegations, after seeking advice from the EEO office and MCP 003-003. She warned Lisan that his behavior was inappropriate, and again ordered him not to contact the accusers except for patient care purposes. (D.'s Ex. 1, Raphaely Decl. ¶ 8(a)-(d), ECF No. 29-3, PageID # 163-64). The VA police and the EEO office investigated the incident. (See, D.'s Ex. 2, Kafer Decl., ¶ 9, ECF No. 29-3, PageID # 200; D.'s Ex. 7, Holbaugh Decl. and attachments thereto, ECF No. 29-8, PageID # 350-62).

Lisan's descriptions of Dr. Raphaely's alleged "retaliation" against CRNAs are irrelevant to whether his suspension was pretextual because only retaliation based upon protected activities

7

violates the law. The CRNAs' "retaliation" allegations involve complaints about workplace decisions, and the CRNAs allege that the "retaliation" was based on Dr. Raphaely's displeasure about their complaints. They have nothing to do with race, gender or protected activity under Title VII. *Braun v. Ultimate Jet Charters*, LLC, 828 F.3d 501, 511 (6th Cir. 2016) (holding that generalized "complaints to management" do not constitute protected activity when the complainant "does not object[] to discriminatory conduct under relevant laws."); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516, 520 (6th Cir. 2009) (citing *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir.2006) ("With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings … [and] those who oppose discrimination made unlawful by Title VII")).

    **C.**    **Lisan Fails to Show that the VA's Legitimate Justification Was Insufficient to be the VA's Actual Motivation**

Lisan's contention that four CRNAs' allegations against him were masterminded by Dr. Raphaely is based only on his speculation; he disputes the credibility of the complainants and argues that they were solicited. His subjective feelings, however, are insufficient to show pretext. *See Hein v. All Am. Plywood Co.*, 232 F.3d 482, 490 (6th Cir. 2000) (subjective interpretation that employer's action was a comment on plaintiff's age insufficient to establish pretext*); Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (stating that "rumors, conclusory allegations and subjective beliefs" are "wholly insufficient evidence to establish a claim of discrimination, as a matter of law.") (citations omitted). This is especially true here, where there is clear, unrebutted evidence that the CRNAs themselves brought their complaints to Dr. Raphaely. (*See*, *infra*, p. 9).

The record shows how the allegations came to Dr. Raphaely's attention. On Wednesday, January 4, 2017, Jessica Foster felt that Lisan sexually harassed her in an encounter with him. (D.'s Ex. 4, Foster Decl. ¶ 2, ECF No. 29-5, PageID # 318.) On January 10, 2017, Foster told Dr.

8

Raphaely about the encounter, who asked Foster to document it. (D.'s Ex. 4, Foster Decl. ¶ 3, ECF No. 29-5, PageID # 318). In her EEO affidavit, Foster reiterated that allegations she made were true and that Dr. Raphaely did not solicit them. (*Id*. ¶ 5, Ex. 4-D thereto, PageID # 326.) On January 5 and 6, 2017, Karin Bonfili had two conversations with Lisan in which he made comment with sexual undertones. (D.'s Ex. 3, Bonfili Decl. ¶ 2, ECF No. 29-4, PageID # 307; *see also*, Deposition of Karin Bonfili ("Bonfili Tr."), ECF No. 31, 120:13-121:7.) Bonfili voluntarily reported the incident to Dr. Raphaely on January 9, 2017. (Bonfili Decl. ¶ 3; Bonfili Tr. 27:25-28:13). After Dr. Raphaely asked her to document the incident, Bonfili voluntarily filled out the blank form provided to her by Dr. Raphaely. (*Id.*) Bonfili did not ever think that she "coached" by Dr. Raphaely, and testified that the information in her report of contact was true. (Bonfili Tr. 45:5-16, 47:15-49:2, 111:12-20, 112:1-20). On or about January 20, 2017, Rhonda Verb told Dr. Raphaely that Lisan had also made inappropriate sexually suggestive comments to her. (D.'s Ex. 6, Verb Decl. ¶ 2-3, ECF No. 29-7, PageID # 342.) Dr. Raphaely asked Bearss, the CRNAs' first line supervisor, to ask Verb document her experience, which Verb did. (*Id.* ¶ 4). Similarly, Elaine Costanzo shared her own experience with Lisan with a CRNA co-worker. (D. Ex. 5, Costanzo Decl., ¶ 2-4, ECF No. 29-6, PageID # 329). That co-worker reported Costanzo's experience to Dr. Raphaely, who then asked Costanzo to "report the facts of what my experience – my specific experience with Dr. Lisan was." (Deposition of Elaine Constanzo, 83:5-9, ECF No. 33.) Costanzo did not discuss her ROC with anyone prior to writing it. (*Id.* at 93:18-94:10).

Neither Bob Bearss' inadmissible hearsay testimony, nor Brenda Spicer's "Climate Assessment" hearsay statements mischaracterizing Bonfili's actual experience can create a genuine issue of fact on summary judgment. *See, Alpert v. United States*, 481 F.3d 404, 409 (6th Cir.2007) ("evidence submitted in opposition to a motion for summary judgment must be

9

admissible. […] That is why hearsay evidence … must be disregarded.") (internal citations omitted); *see also Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) (holding that hearsay may not be considered on a motion for summary judgment.") There is not even a scintilla of evidence that the CRNAs' reports were fabricated by or solicited by Dr. Raphaely.

The record evidence shows that the Lisan's suspension was appropriate and not pretext for retaliation. An investigation conducted by LeShelle Reese and Bruce Kafer in the VA's EEO Office, not Dr. Raphaely, concluded Lisan had engaged in "sexually inappropriate behavior" and that he "had violated the supervisory order." (D.'s Ex. 2-I, Investigation, ECF No. 29-3, PageID # 292-297.) VA Medical Center Director Susan Fuehrer, the final decision-maker, reviewed an evidence file and a transcript of Lisan's oral reply to the proposed suspension. (Fuehrer Tr. II, 183:5-8, 189:1-17, ECF No. 43). She made a decision based on Lisan's violation of the no-contact order, and she evaluated the penalty to make sure that it was consistent. (*Id.*, 190:19-25. 191:19-21.) She testified, "[…] Dr. Lisan is not the first person that has acted inappropriately and made sexual-like or inappropriate comments and in consultation with our employee relations, we took similar action compared to what we would have done with other employees […] Other employees have received more severe penalty for the behaviors I saw in the evidence file than Dr. Lisan received." (*Id.*). Fuehrer also considered whether Lisan showed remorse, testifying, "[w]hat did we need to do to get the message across to Dr. Lisan that he could not go into ORs for which he had no professional business to be in and initiate an inappropriate comment and touch CRNAs that was putting our nation's heroes at risk, our veterans." (*Id.* 193:7-12.) She explained:

> We have an anesthesiologist that is highly professional, that should be professional and should not be going into operating rooms that he had no business going into that he had been told not once, not twice but at least three times to not do and he went into an operating room active with a patient, spoke to someone, touched the CRNA, a physician came in, a separate physician came in, asked him to leave. He refused to leave. Another physician came in to excuse the CRNA. That alone is

10

how I made this decision to suspend him.

*Id.* 211:10-22.

In sum, Lisan was given an order to abstain from non-patient-care related contact with CRNAs who voluntarily accused him of making inappropriately sexual comments. He violated the order, entered an operating room during an ongoing surgery for the *purpose* of violating that order, and he refused to leave. These undisputed facts are the VA's justification for his suspension.

### D. The VA Has Demonstrated an Honest Belief in the Proffered Justification for Lisan's Suspension.

Because the VA can demonstrate an honest belief in its proffered justification for Lisan's suspension, an inference of pretext is unwarranted. *Seeger v. Cincinnati Bell Telephone Co. LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (construing honest belief rule in context of FMLA retaliation). The Sixth Circuit adopted the "honest belief" rule, under which an employer's proffered reason is considered honestly held where the employer can establish it reasonably relied on particularized facts before it at the time the decision was made. *Id.* Plaintiff has the burden to show that the employer's belief was not honestly held by showing "more than a dispute over the facts upon which the discharge was based." *Id.*, citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir.2001). The key inquiry is whether the VA made a reasonably informed and considered decision before taking an adverse employment action. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998). Indeed, "the falsity of [a] [d]efendant's reason for terminating [a] plaintiff cannot establish pretext as a matter of law" under the honest belief rule, and "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Joostberns v. UPS*, 166 Fed.Appx. 783, 794 (6th Cir. 2006) (footnote omitted).

Here, the VA honestly believed the following: in January 2017, Dr. Raphaely received four complaints of, at minimum, sexually inappropriate behavior. (D's Ex. 1, Raphaely Decl., ¶ 8 ECF

11

No. 29-3 PageID # 163.) Kafer and Reese, in the EEO office, conducted an investigation and found that sexually inappropriate conduct occurred. (D.'s Ex. 2, Kafer Decl., ¶ 9 ECF No. 29-3 PageID #200, Attach. 2-L PageId # 292-97.) Lisan was ordered at least four times not to discuss the allegations with the complainants. (D.'s Ex. 1, Raphaely Decl., ¶ 8(c)-(d) ECF No. 29-3 PageID # 163-64, attach. thereto.) He intentionally disobeyed that order by entering an OR during surgery for the explicit purpose of discussing the allegations with Bonfili. He does not dispute that he touched Bonfili. He does not dispute that he was asked to leave but did not. Regardless of how the conversation proceeded, it left Bonfili upset enough to go to the VA Police, on the advice of the EEO office, and file a police report. (D.'s Ex. 7., Holbaugh Decl. and attach. thereto ECF No. 29-8 PageID #350-62; Deposition of Leshelle Reese, ECF No. 40, 125:8-10 (". . . So I instructed Bonfili that if she felt like she was in fear that she needed to contact police services and make a report."). These are the undisputed material facts upon which the VA relied when it imposed a ten-day suspension.

Lisan's allegation that the CRNAs lied in their complaints is insufficient. Even if the CRNAs did lie, or if Bonfili lied about the March incident to HR and the VA police, cannot create a genuine issue on pretext. *See Pierce v. GM L.L.C.*, 716 F. App'x 515, 518 (6th Cir. 2017) (no pretext where decision-makers honestly believed that employee threatened supervisor, even if the supervisor was lying.)

Lisan's attack on the EEO office's investigation does not overcome the honest belief rule. An "optimal" investigation—i.e., interviewing the employee and some or all of his witnesses—is not required. *McConnell v. Swifty Transp.*, Inc., 198 F. App'x 438, 444 (6th Cir.2006). The determinative question is not whether Lisan actually committed sexual harassment, but whether the VA reasonably and honestly believed that he violated a direct order and engaged in

12

inappropriate behavior. *Weimer v. Honda of Am. Mfg.*, 356 F. App'x. 812,818 (6th Cir. 2009). There are no material facts in dispute to show otherwise. Thus, Lisan cannot meet his burden to prove that the VA's legitimate justification for his suspension is pretext.

### III. Lisan Has Not Met the Causation Prong of the Prima Facie case.

The VA is entitled to summary judgment for the separate and independent reason that Lisan cannot establish a prima facie case of retaliation based on the ten-day suspension. Lisan relies solely on temporal proximity and speculation to invent a causal connection between his ten-day suspension, which was recommended on March 20, 2017 and upheld on June 20, 2017, and any of his prior protected activity, which occurred when he requested a reasonable accommodation in December 2016, and when his attorney sent a complaint letter on January 6, 2017.

In a retaliation case, a plaintiff must provide "proof of so-called 'but-for' causation, meaning that the plaintiff must furnish evidence that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 600 (6th Cir. 2018) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). "Unless the plaintiff can establish that the employer would not have taken the adverse employment action but for its intention to retaliate, the claim will fail." *Prasad v. GE Aviation*, No. 2:13-CV-272, 2019 WL 1058438, * 4) (S.D. Ohio March 6, 2019).

In his argument regarding causation, Lisan relies on temporal proximity to show causation by accusing Dr. Raphaely of "soliciting" false complaints against him right after Lisan's attorney sent a letter to the VA complaining about Dr. Raphaely. (ECF No. 50, PageID # 3304-05.) However, the adverse action against Lisan, the ten-day suspension, resulted from an incident that occurred in March 2017, more two months after the letter was sent.

Even if the temporal proximity between these events were sufficient to create an inference

13

of a causal connection, Lisan still cannot prove that his protected activities were the "but-for" cause of his suspension. First, as discussed above, Lisan has produced no admissible evidence that Dr. Raphaely actually "solicited" false claims from the CRNAs. Other than Lisan's self-serving reinterpretation of the admitted facts, he has not produced even a scintilla of evidence that the complaints were solicited by Dr. Raphaely. "Subjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation." *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 491 (6th Cir. 2006).

Second, Lisan's admitted conduct of purposely disobeying the no-contact order was an intervening legitimate reason for discipline that "dispel[led] an inference of retaliation based on temporal proximity." *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 472 (6th Cir. 2012). *See also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) (an intervening "obviously nonretaliatory basis" for the adverse action is evidence negating temporal proximity.) Because Lisan engaged in the conduct that resulted in discipline, he cannot show that there is a material factual issue that his request for accommodation or his complaint letter to the VA were the sole cause of the ten-day suspension against him. *See Dixon v. Ford Motor Co.*, No. 2:16-CV-14214, 2018 WL 7018200, *8 (E.D. Mich. Oct. 29, 2018) (plaintiff who admittedly engaged in misconduct cannot show that prior protected statement was reason for discipline).

Finally, in his brief, Lisan makes a one-sentence mention of the "cat's paw principle." (ECF No. 50, PageID # 3306.) "The 'cat's paw' theory applies when "a biased subordinate employee, who lacks decision-making power, influences the unbiased decisionmaker to make an adverse employment decision." *Howard v. New Bern Transp. Corp.*, No. 1:17-CV-161 2018 WL 5046111, at *10 (E.D. Tenn. Oct. 17, 2018) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 604 n. 13 (6th Cir. 2008)).

14

Lisan argues that "Ms. Fuehrer's confirmation of the proposed suspension does not immunize Dr. Raphaely from our claim of retaliation, per the well-recognized 'cat's paw' principle." (ECF No. 50, PageID # 3306.) Fuehrer was the Director of the VAMC in Cleveland when Lisan was suspended, and she decided to uphold the suspension originally proposed by Dr. Raphaely. (Pl. Ex. 78, ECF No. 50, PageID 3 281-304. However, the VA has never argued that Ms. Fuehrer's decision to uphold the suspension immunized the VA because Lisan identified Ms. Fuehrer as an alleged discriminating official in this litigation and in his EEO complaint. Essentially, Lisan has claimed that Ms. Fuehrer herself was biased against him. (Compl., ECF No. 1, PageID # 17.) Thus, according to Lisan's own complaint, Ms. Fuehrer cannot be considered to be an "unbiased decisionmaker" who was improperly influenced by the alleged discriminatory animus of Dr. Raphaely. Therefore, the cat's paw theory is inapplicable to this lawsuit.

## CONCLUSION

For the foregoing reasons and those in the VA's prior briefing, Lisan cannot show a genuine issue of material fact and the VA is entitled to judgment as a matter of law on all of Lisan's claims. Therefore, this Court should enter summary judgment in the VA's favor.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By: *s/ Lisa Hammond Johnson*
    Lisa Hammond Johnson (#0061681)
    Ruchi V. Asher (#0090917)
    Assistant U.S. Attorneys
    Carl B. Stokes U.S. Courthouse
    801 West Superior Avenue, Suite 400
    Cleveland, Ohio 44113-1852
    (216) 622-3684 (Direct)
    (216) 522-4982 (Facsimile)
    Lisa.Hammon.Johnson@usdoj.gov
    Ruchi.Asher@usdoj.gov

    Attorneys for Defendant

CERTIFICATE OF SERVICE

   I hereby certify that on July 12, 2019, the foregoing *Reply in Support of Defendant's Motion for Summary Judgment* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        *s/ Lisa Hammond Johnson*
        LISA HAMMOND JOHNSON
        Assistant United States Attorney