UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD M. LISAN, M.D. | ) | Case No. 1:18-CV-0969 |
| | ) | |
| Plaintiff, | ) | Judge Pamela A. Barker |
| | ) | |
| v. | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **RELIEF FROM JUDGMENT AND** |
| ROBERT WILKE, ACTING SECRETARY | ) | **MOTION TO VACATE** |
| OF THE UNITED STATES | ) | **JUDGMENT ENTRY** |
| DEPARTMENT OF VETERANS AFFAIRS | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, by and through counsel, hereby respectfully requests, pursuant to Civ.R.

60(b)(1), that this Honorable Court set aside its January 9, 2020 Judgment Entry (Doc. #74)

granting summary judgment in Defendant's favor, as the Court:

The reasons for this request are more fully described in the Memorandum attached hereto

and incorporated herein by reference.

Respectfully submitted,

*/s/ Caryn M. Groedel*
Caryn M. Groedel (0060131)
CARYN GROEDEL & ASSOCIATES CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH 44139
Phone:  (440) 544-1122
Fax:     (440) 996-0064
cgroedel@groedel-law.com
*Attorney for Plaintiff*

# TABLE OF CONTENTS

I.     TIMELINE................................................................................................................1

II.    LEGAL SUMMARY.............................................................................................4

III.   STANDARD FOR MOTION TO SET ASIDE A JUDGMENT ........................4

     A.     Plaintiff is not culpable for the Court's erroneous summary judgment ruling .........................................................................................................6

     B.     Defendant will not be substantially prejudiced by this Court setting granting Plaintiff's motion to set aside the judgment ..............................6

     C.     Plaintiff has a meritorious claim ..............................................................6

IV.   DISCUSSION ......................................................................................................7

     A.     The Court incorrectly identified, and considered, just one of the five (5) adverse actions that comprise Plaintiff's retaliation claim .....................7

     B.     The Court failed to construe inferences in Plaintiff's favor ....................8

          1.     The Court resolved the inference regarding Raphaely's statement that she wanted Plaintiff out of the department in the VA's favor ............8

               a.     Brenda Spicer's "Climate Assessment" report ...............................9

               b.     Bearss' other testimony regarding Raphaely being vindictive and retaliatory toward anesthesiology department employees s ..............................................................10

               c.     Plaintiff's testimony that Dr. Raphaely solicited him for astatement against Verb after feeling slighted by Ms. Verb ..........10

               d.     Dr. Moss' testimony that Dr. Raphaely retaliated against him ...............................................................................................10

          2.     The reason the reason the VA denied his accommodation request ...........11

          3.     That Kafer -- and not Raphaely -- made the decision to deny Plaintiff's requested accommodation.........................................................12

          4.     That Dr. Raphaely simply "asked" the 4 CRNAs to submit ROCs, rather than coerced them ..........................................................................12

C.  The Court failed to consider critical evidence produced by Plaintiff ...................13

1.  Dr. Raphaely's bias against male anesthesiologists as background evidence of why she would retaliate against Dr. Lisan ............................13

2.  Brenda Spicer's "Climate Assessment" report ...........................................13

3.  The temporal proximity between Plaintiff's protected activity of reporting Raphaely on 1/6/17, and the adverse actions that followed ..................................................................................................13

4.  The critical flaws in ALL 4 ROCs ..............................................................15

5.  Plaintiff's testimony that Dr. Raphaely made clear to him that she did not want him taking time off from work .......................................17

6.  Evidence of VA policies the VA failed to follow  ....................................17

7.  That plaintiff's 1/6/17 report against Raphaely was "investigated" ..........18

8.  The timing of the adverse actions against Plaintiff....................................19

9.  That Plaintiff violatd the no-contact order BEFORE the 3/9/7 warning ws issued  ....................................................................................19

10.  That the no-contact orders and Checklist were improper .........................20

D.  The Court impermissibly made credibility determinations ...................................21

1.  That the VA properly denied Plaintiff's requested accommodation of gradual return to full "on-call" duty because on-call duty is an "essential job function." ...................................................................................21

E.  The Court impermissibly relied on statements, declarations, and reports of interested parties ..................................................................................................22

V.  SUMMARY OF ISSUES/ANALYSIS ...........................................................................24

VI.  CONCLUSION..............................................................................................................25

CERTIFICATE OF SERVICE ..............................................................................................26

### <u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT AND MOTION TO VACATE JUDGMENT ENTRY</u>

## I.    TIMELINE

- June or July 2006:  Plaintiff commences his employment as a physician in the Cleveland VA Medical Center's anesthesiology department, and works without incident from June/July 2007 through December 2015 (**9 years**)

- 1/15:  Dr. Susan Raphaely ("Raphaely") becomes chair of anesthesiology dept

- 8/16/16 - 12/7/16:  Plaintiff takes medical leave, during which the other anesthesiologists in his department cover his on-call duties.

- 11/16 to early 12/16:  Raphaely asks Plaintiff to return to work early (Lisan Dep. 125-26).

- 12/7/16:  Plaintiff returns to work (*Id*.).

- 12/19/16:  Plaintiff submits accommodation request: to slowly re-acclimate to his full on-call duties with letter from Carol Marciano, LSW (Doc. 29-3 at Page ID# 247-249).

- 12/19/16:  Rafaely sends email to Reasonable Accommodations Coordinator, Bruce Kafer ("Kafer") re: she "feels as a department we are unable to meet [Plaintiff's] request.  Taking call is an essential function of his position.  All the anesthesiologists with the Service who work primarily at Wade Park need to be able to participate in the call schedule.  We do have one position for a full time, no call anesthesiologist that works exclusively at the ASC, but that position is currently filled.  Therefore, I am would request [sic in original] that if Dr. Lisan is indeed unable to perform the essential functions of his position, you could assist him in alternative reasonable accommodations."  (Doc. 50-1 at Pl's Ex. 10.)

- 12/19/16:  Kafer asks Plaintiff for more information (Doc. 29-3 at Page ID# 250).

- 12/22/16:  Plaintiff provides Kafer with letter from Carol Marciano, LSW (Doc. 50-1 at Pl's Ex. 71; Doc. 50-3, Pl's Ex. 83).

- 12/27/16:  Plaintiff submits more information to Kafer -- a letter from Dr. Kramer stating the "no call" accommodation will be "temporary" (Doc. 50-1 at Pl's Ex. 17).

- **1/6/17**:  Attorney Steve Sindell sends letter to VA on behalf of Plaintiff and Dr. Ken Moss, another physician in the anesthesiology department, objecting to Raphaely's harassment and discrimination toward them (Doc. 50-1 at Pl's Ex. 31 (Page ID# 3601-3603)).

- **1/9/17**:  Raphaely claims CRNA Karen Bonfili ("Bonfili") told her that Plaintiff harassed her "the previous week" (no date given) and suggested Raphaely talk to Jessica Foster about her experiences with Plaintiff (Doc. 29-2, Raphaely Decl. at ¶ 8a; Doc. 31).

- 1/10 and 1/12/17:  *Without asking Plaintiff his version of events*, **and before Bonfili even files a Report of Contact ("ROC")**, the VA prohibits Plaintiff from communicating with Bonfili and Foster regarding non-work matters ("no contact order", Doc. No. 29-2 at Page ID# 196).

- 1/10/17:  Raphaely tells Plaintiff that she and Kafer want to meet with him regarding his accommodation request, in response to which Plaintiff asks if his lawyer can attend the meeting (Doc. No. 29-3 at Page ID# 270).  The accommodation meeting is promptly cancelled (Doc. No. 29-3 at Page ID# 269).

- 1/11/17:  Bonfili files an ROC against Plaintiff (Doc. 50-1, Pl's Ex. 2).

- **1/17/17:**  The VA denies Plaintiff's requested accommodation (Doc. No. 29-3 at Page ID# 277) -- *without any discussion with Plaintiff, or request for further information from him.*

- "Some time in mid-January 2017", per VA (**no date provided**):  Raphaely claims to "learn" that Elaine Costanza and Rhonda Verb "had" problems with Plaintiff, and some time after that (**again no date provided by VA**), Costanzo submits an **undated** ROC against Plaintiff (Pl's Ex. 24, Pl.'s Ex. 2, Doc. 50-1 at Page ID# 3358).  Around this same  time, Jessica Foster *supposedly*[1] submits an **undated** ROC against Plaintiff (Pl.'s Ex. 2, Pl's Ex. 25, Doc. 50-1 at Page ID# 3359), and Rhonda Verb supposedly submits one too (also **undated**) (Pl's Ex. 4, Pl.'s Ex. 2, Doc. 50-1 at Page ID# 3316).

- 1/20/17:  VA issues a no-contact order against Plaintiff for Elaine Costanzo (Pl's Ex. 33) -- again, *without even asking Plaintiff his version of the event.*

- 1/23/17:  VA issues a no-contact order against Plaintiff for Rhonda Verb (Id.) -- *once again without first t asking Plaintiff about the allegations.*

- Approximately 2/17:  Plaintiff adds Kafer to his complaint as having engaged in harassment and retaliation for his involvement in denying Plaintiff's accommodation request (Lisan Dep. at 195); and he adds Fuehrer and Altose to his complaint as having engaged in harassment and retaliation based on their failure and refusal to stop Raphaely's continued harassment and retaliation toward him (Id. at 194-195).

- **3/8/17:**  Bonfili reports that Plaintiff tried to talk to him about her sexual harassment complaint against him (Pl's Ex. 3).

- **3/9/17:**  VA issues letter of warning to Plaintiff stating that:  allegations against him are going to be investigated, there is a possibility of "further disciplinary action" against him, and he is prohibited him from discussing his case with any of his colleagues ("Written Admonishment"/gag order, Pl's Ex. 75).

- 3/13/17:  Plaintiff meets with Kafer -- **who the VA assigns to "investigate' the sexual harassment complaints against Plaintiff.**  Plaintiff objects to Kafer being involved in the investigation because Plaintiff named him as being part of the harassment and retaliation, and

---

[1] "Supposedly" because not only is it **undated**, but it is also **unsigned.**

asks him to recuse himself.  Kafer refuses (Pl's Ex. 86).

- 3/13/17:  Kafer states at the conclusion of his "investigation" that **Plaintiff did not engage in sexual harassment toward any of his co-workers**[2], but acted "inappropriately" (Id.).

- 3/20/17:  Raphaely prepares a "proposed suspension" letter (Pl's Ex. 64) for Plaintiff's failure to follow orders by speaking to Bonfili and Costanzo about these events after being told not to.

- 3/25/17:  Plaintiff receives the 3/20/17 proposed suspension notice (Pl's Ex. 74) -- *without having been asked for his version of the events regarding these new allegations against him*[3].

- 5/8/17:  Attorney Sindell sends email to VA's H.R./Employee Relations department, and Leshelle Reese of the Cleveland VA's EEO, objecting to Altose being involved in suspension decision when Plaintiff named both him and Raphaely as discriminating and retaliating parties, and noting that, although Raphaely knew Plaintiff was going to give an oral presentation to Altose on 5/11/17, she scheduled him for on-call duty on 5/10/17 (Pl's Ex. 65).

- 5/11/17:  Plaintiff and attorney Sindell meet with Altose to discuss suspension proposal. Plaintiff presents his defense (Pl's Ex. 79), and requests Altose recuse himself (Id.), which Altose declines[4].  VA offers to drop suspension proposal if Plaintiff drops all his claims against the VA and its employees (Id.).  Plaintiff does not accept this offer.

- 6/6/17:  VA attorney Lisa Clark sends email to attorney Sindell stating, in part:

  The deciding official has not yet made a decision, **pending the outcome of our potential settlement.**  Please let me know if your client is interested in terms such as the following:
  1.    The Agency will rescind the proposed suspension
  2.    The Agency will issue a letter of counseling to Dr. Lisan
  3.    Dr. Lisan will voluntarily waive, withdraw, and discharge the Agency and its employees from all claims of whatever nature.

  In essence, we would execute a global settlement.  Please let me know if this is

---

[2] Based on the conclusion of no harassment, the no-contact orders were unjustified and unjustifiable, and should not have been issued because no-contact orders are only utilized for **sexual harassment** allegations.  See VA Policy on Prevention of Sexual Harassment ("PPSH") § 5(c)(2)(e):  "The alleged harasser will be ordered to cease any further contact with the alleged victim except that of which is absolutely required by official business."  Once the VA determined that the allegations <u>did not</u> constitute sexual harassment, the no-contact orders were, or should have been, negated.  Moreover, the VA violated its PPSH by failing to take Plaintiff's statement after the ROCs were filed against him.  Specifically, the PPSH states: "As soon as an allegation of sexual harassment has been brought to the attention of a management official… The alleged harasser will be contacted and interviewed by a management official…"  PPSH § 5(c)(2).

[3] Under VA Policy 005-005(4)(d), the VA was required to conduct a "fact finding… to substantiate the charge and to secure appropriate statements" **before** determining "if disciplinary action is appropriate…"  No statement was obtained from Plaintiff -- the accused -- before Raphaely recommended suspension.  (Pl's Dep. 191-92.)

[4] Altos' refusal violates VA Policy 005-005(4)(d), which requires investigations to be "conducted fairly and impartially."  Furthermore, Raphaely was required to resolve the matter "amicably", rather than pursuing it "in a formal punitive manner."  (Pl's Ex. 79.)

something you wish to pursue, and if so, I will send the proposed counseling letter and draft settlement agreement. [Plaintiff does not accept this offer.]

- **6/15/17**: Plaintiff files an EEO Complaint against Altose, Raphaely, Kafer, and Fuehrer (Pl's Ex. 81).

- **6/20/17**: VA Director Fuehrer upholds suspension (Pl's Ex. 78).

Interpreting the facts in his favor, the pattern of adverse actions (complaints, ROCs, police report, no-contact orders, warning, proposed suspension, **and** suspension, following his 1/6/17 protected activity, establishes the causal link required to establish retaliation.

## II.   LEGAL SUMMARY

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The non-moving party has an affirmative duty to point out specific facts in the record that create a genuine issue of material fact. *Fulson v. Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992). A factual issue is genuinely in dispute if a reasonable factfinder could resolve it either way, and where the disputed fact issue is material to liability, premature entry of summary judgment inappropriately supplants the role of the factfinder in adjudicating liability. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). When a district court makes a substantive mistake of law or fact in its judgment, setting aside the judgment is the appropriate remedy under Rule 60(b)(1). *Pioneer Inv. Serv. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993).

## III.   STANDARD FOR MOTION TO SET ASIDE A JUDGMENT

FRCP 60(b) provides a district court authority to grant relief from judgment upon six different grounds. However, competing against Rule 60(b) is a public policy favoring finality of judgments and the termination of litigation. *Waifersong, Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir.1992). Therefore, in finding for the movant, courts should conclude that the need for relief outweighs this competing public policy interest.

4

Plaintiff seeks relief pursuant to Rule 60 (b)(1), which allows the court to set aside a judgment in cases of "mistake, inadvertence, surprise or excusable neglect," and Rule 60(b)(6), which allows the court to set aside a judgment for "any other reasons justifying relief," which applies in "exceptional or extraordinary circumstances which are not addressed in the first five numbered sections of the rule." *Olle v. Henry & Wright Corp*., 910 F.2d 357, 365 (6th Cir.1990). *See also*, 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 2857, at 255 (2d Ed.1995); ("Equitable considerations may be taken into account by a court in the exercise of its discretion under Rule 60(b)").  One important equitable consideration is whether the litigants received a ruling on the merits of their claim.  "There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits."  Id. at 257–58.  In this case, the Court failed to consider *all* the evidence, as described herein.

In determining whether to grant relief, courts generally consider:  (1) whether the party seeking relief is culpable, or whether culpable conduct of the defendant led to the judgment; (2) whether the party opposing relief will be substantially prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense.  *Waifersong, supra*; *see also Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003).  The Court must address the culpability issue first, and consider the other two factors only if the moving party makes this showing.

Where a party seeks relief from a default judgment, **Rule 60(b)(1) should be applied "equitably and liberally ... to achieve substantial justice**." *United Coin Meter v. Seaboard Coastline R.R.,* 705 F.2d 839, 844–45 (6th Cir.1983) (internal quotations omitted) (emphasis added).  Courts must construe ambiguous or disputed facts in the light most favorable to the <u>moving</u> party.  *Amernational Indus. v. Action–Tungsram, Inc.,* 925 F.2d 970, 977 (6th Cir.1991).

A. **Plaintiff is not culpable for the Court's erroneous summary judgment ruling.**

A party's conduct is "culpable," as may warrant denial of motion for relief from judgment, if it displays either an intent to thwart judicial proceedings, or a reckless disregard for the effect of its conduct on those proceedings. *Williams*, 346 F.3d at 613.  Plaintiff did neither. "Culpability is 'framed' by the specific language of the rule; *i.e.,* a party demonstrates a lack of culpability by demonstrating 'mistake, inadvertence, surprise, or excusable neglect.'" *Id.* Plaintiff is not responsible or culpable for the evidentiary or procedural mistakes in the Court's summary judgment ruling.

B. **Defendant will not be substantially prejudiced by this Court setting granting Plaintiff's motion to set aside the judgment.**

For the setting aside of a judgment to be considered prejudicial, it must result in a delay that causes tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion. *Thompson v. American Home Assur. Co*., 95 F.3d 429 (6th Cir. 1996).  None of those factors applies here.

C. **Plaintiff has a meritorious claim.**

A claim or defense is "meritorious," if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *INVST Financial v. Chem-Nuclear Systems*, 815 F.2d 391, 398-99 (6th Cir.1987) (internal quotations omitted). Ambiguous or disputed facts must be construed "in the light most favorable to the [moving party]." *Amernational,* 925 F.2d at 977.  Accordingly, this Court must decide whether granting the instant motion creates "some possibility" of a different outcome. *See Williams*, 346 F.3d at 614.  As stated in *INVST Financial*, 815 F.2d at 398, to establish a "meritorious defense," the moving party must state "a defense good at law", which means it contains "even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Id*. at 398–99.  The

Court's consideration of Plaintiff's claims, in light of all the evidence and the correct standards

to be applied when ruling on summary judgment, creates a possibility of a different outcome.

## IV.  DISCUSSION

### A.  <u>The Court identified, and considered, just one of the five adverse actions that comprise Plaintiff's retaliation claim.</u>

The Court erroneously concluded that:

"…Plaintiff did not assert or present any legal argument that any other employment
actions taken by Defendant constitute 'adverse employment actions' for purposes of
the third prong of the prima facie test.  Thus, the Court deems waived any argument that
any other alleged actions by the VA constituted an 'adverse employment action.'"

Plaintiff's claim for retaliation is that, after his 1/6/17 complaint about Raphaely, and/or

pursuing a reasonable accommodation request" [MSJ Opp. at 5], he suffered the following

adverse actions:

- Denial of his request to return incrementally to his on-call duties upon returning from
  FMLA leave -- without any consultation with Plaintiff, which "relates to a pattern of
  retaliation and reprisal against Dr. Lisan by Dr. Raphaely and others for making a written
  complaint and objection to discrimination." (MSJ Opp. at 4);

- Solicitation of complaints and ROCs from his; e.g., Raphaely asking Bearss to ask Ms.
  Verb if she had any complaints about Plaintiff (Id. at 10, 13-14);

- The wrongful issuance of "no-contacts" orders, which prohibited Plaintiff from
  communicating with his co-workers about the ROCs they filed against him (Id. at 23),
  and resulted in him being "muzzled from defending himself" and being subject to a "no-
  contact gag order" (Id. at 28), which should have been abrogated when he was cleared of
  sexual harassment;

- The 3/9/17 "Written Admonishment" (Id. at 19, 26); and

- Being suspended based on violating the wrongfully maintained no-contact orders[5].

---

[5] VA policy 005-005, Disciplinary and Adverse Actions, describes the VA's progressive discipline steps
as "admonishment", "reprimand", "suspension", "adverse actions" (suspensions of more than 14 calendar
days), and "major adverse actions".  (Id. at Doc. #50-8, Page ID # 3646-47.)  The policy goes on to state,
"Some incidents of misconduct are minor and may be the **employee's first offense**.  They may require no
more than an **informal counseling**… **If** misconduct **continues**, disciplinary action should be
considered."  (Id. at Page ID # 3643.)  Violating the no-contact order was Plaintiff's first offense.  *Thus,
he should have received "informal counseling"*.  The fact that the VA escalated Plaintiff's discipline to a
10-day suspension, rather than following the policy's normal procedure, stated as:  "the concept of
progressive discipline will be followed under most circumstances", and that "a more severe penalty

To establish an adverse employment action under the third prong of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Morris v. Oldham Fiscal Ct*., 201 F.3d 784, 792 (6th Cir. 2000).  Any/all of these actions would likely dissuade a reasonable worker from making or supporting a charge of discrimination.

The Court erred in granting summary judgment only on the adverse action of suspension, without considering the other adverse actions, which is especially problematic because there would have been no gag-order to violate if Raphaely had not retaliated against Plaintiff by seeking complaints against him from his co-workers, and had not pressured and threatened his co-workers into filing ROCs against him.

**B.** **The Court failed to construe inferences in Plaintiff's favor.**

To establish his retaliation claim, plaintiff must establish, by a preponderance of evidence that:  (1) he engaged in activity protected by Title VII, (2) the VA knew he engaged in this activity, (3) the VA subjected him to an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse employment action.  *Halfacre*, 221 Fed. App'x at 431, citing *Singfield*, 389 F.3d at 563.  The Sixth Circuit "ha[s] consistently held that **a plaintiff's burden of establishing a prima facie case is not an onerous one**." *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015) (emphasis added).

**1.** **The Court resolved the inference regarding Raphaely's statement that she wanted Plaintiff out of the department in the VA's favor.**

_____

should not be imposed where a lesser penalty would be equally effective" (Id. at Page ID # 3644), is evidence of pretext.  *See Skalka v. Fernald Environmental Restoration Mgmt. Corp*., 178 F.3d 414, 421 (6th Cir. 1999) (jury could infer pretext based on employer's deviation from normal procedures).  Remember, this was Plaintiff's first brush with any type of disciplinary action, or allegations of inappropriate conduct, in 11 years.

The Court determined that, because Bearss could not recall much about Dr. Raphaely's statement to him that she wanted Plaintiff out of the department (he could only recall that it was after Plaintiff's 1/6/17 complaint about Raphaely) (Bearss' Dep. at 99-100), his testimony was "vague with respect to both the timing of and motivation", and thus, "insufficient to demonstrate that Raphaely wanted Plaintiff out of the Anesthesiology Department *because of* Plaintiff's reasonable accommodation request and/or his January 6, 2017 letter." (Opin. 28.)

The Court took Raphaely's statement to Bearss *out of context*, failing to consider it *in conjunction with* the plethora of other retaliation evidence in this case, including:

### a. Brenda Spicer's "Climate Assessment" report

On June 18, 2018, Brenda Spicer, a "subject matter expert on EEO issues", prepared a "climate assessment" report based on her extensive review of the Anesthesiology department (P's MSJ Opp. Ex. 27), and then reported that:

- **15 out of 16** CRNAs expressed concerns regarding the "common theme of experiencing **fear of retaliation…"** by Raphaely (Id. at 13) (emphasis added);

- "Many CRNAs" described Dr. Raphaely as "vindictive, retaliatory, hostile, discriminatory and divisive" (Id. at 4);

- Many CRNAs stated that, "whenever someone questions [Raphaely], she gets upset. If she is proven wrong, she **retaliates…**" (Id.) (emphasis added);

- Members of the anesthesiology department "believe [Raphaely] makes decisions that seemed **vindictive** after a staff member had upset her***" (Id.) (emphasis added);

- When Raphaely sent text messages to an injured department employee who was out on medical leave, instructing her to return to work *prior* to being released by her doctor, the employee contacted the Worker's Comp Specialist, who "told Dr. Raphaely the employee is to follow her doctor's orders…" After that, Raphaely stopped speaking to, and interacting with, the employee. (Id. at 6-7; see also Doc. 37, Foster Dep. at 31-36).

Though it describes in detail the fear, threats, and retaliation by which Raphaely rules the anesthesiology department, the Court barely mentions the report -- giving it short shrift in a *footnote* on p. 35 of its Opinion.

9

**b.  Bearss' other testimony regarding Raphaely being vindictive and retaliatory toward anesthesiology department employees.**

Bearss testified that Raphaely was vindictive and retaliatory toward Laurie Frankito (MSJ Opp. at 7-8; Doc. 39, Bearss' Dep. at 32-36), and that Raphaely falsely accused Rhonda Verb of falsifying medical records and being rude, *because Ms. Verb failed to say "hi" to Raphaely in the morning*,[6] and then solicited Ms. Verb's co-workers for complaints against her[7] (MSJ Opp. at 9-10, citing Bearss' Dep. at 79-80).  Bearss also testified that Raphaely asked him "to ask Rhonda if she had any complaints about Dr. Lisan, and, if so, to talk to Dr. Raphaely…" (MSJ Opp. at 10, citing Bearss' Dep. at 1-25, 79-80).

**c.  Evidence that Raphaely solicited Plaintiff for a statement against Verb after feeling slighted by Verb.**

Pl.'s Ex. 85 is Raphaely's solicitation of Plaintiff for a complaint against Verb.

**d.  Dr. Moss' testimony that Dr. Raphaely retaliated against him.**

Dr. Ken Moss ("Moss") testified that, after attorney Sindell sent a letter to the VA on his and Plaintiff's behalf complaining about Raphaely, whenever Raphaely heard any complaints about him (Moss), she'd immediately call, or go in person to, that person to file an ROC against him.  (MSJ Opp. at 14, citing Moss Dep. at 63-64; and Doc. 41, Moss, 159).

It was erroneous for the Court to not consider this evidence.  In *Logan v. Denny's, Inc*., 259 F.3d 558 (6th Cir.2001), the Sixth Circuit held it was reversible error for a district court to consider the moving party's evidence, while ignoring evidence presented by the non-moving party.  Such an "analysis is erroneous and in complete contravention to the requirement that when deciding a motion for summary judgment, the evidence—all of the evidence—be viewed

---

[6] Bearss testified that Ms. Verb told him that Raphaely had fabricated a bogus falsification charge against her because Raphaely thought she was rude to her.  (MSJ Opp. at 9; Doc. 39, Bearss' Dep. at 16.)
[7] Raphaely retaliatorily solicited co-worker complaints against Ms. Verb, just as she did to Plaintiff. Although she verbally solicited ROCs against Plaintiff from his co-workers, for Verb, she sent a communication to every anesthesiologist in the VA soliciting "dirt" on her.  Ex. 85, Sealed Document B.

in the light most favorable to the nonmoving party." *Id.* at 567-568.  Similarly, in *Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995), the court said it is an error for a trial court to not consider other evidence of discrimination by the same actor against persons in the plaintiff's same or similar circumstances.  FRE 404(b) allows the admission of evidence of other bad acts, not to show that defendant acted in conformity with such acts, but to show motive, intent, knowledge.

Furthermore, other evidence indicating that an employer did, or may, discriminate or retaliate, is likewise relevant to establishing the employer's state of mind or motive for explaining incredible justifications (i.e., pretext), and thus, may be used rebut a defendant's proffered nondiscriminatory explanation for an adverse employment action.  *Glass v. Philadelphia Electric Co*., 34 F.3d 188, 194-95 (3d Cir.1994).  Circumstantial evidence of discrimination, including evidence that the employer has discriminated [or retaliated] against members of the plaintiff's protected class, as well as against members of other classes, can be "highly probative."  *Fuentes*, 32 F.3d 759, 765; *Glass,* 34 F.3d at 195 (3d Cir.1994) ("Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices* * *.  In discrimination cases, such background evidence may be critical for a jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.")   At a minimum, there is a question of fact as to whether a reasonable person, when considering Mr. Bearss' testimony *in conjunction with the plethora of other evidence of retaliation in this case*, was sufficient or insufficient "to demonstrate that Dr. Raphaely wanted Plaintiff out of the Anesthesiology Department because of Plaintiff's reasonable accommodation request and/or his January 6, 2017 letter."

   **2.**  **The reason the reason the VA denied the accommodation request.**

On **1/17/17** -- just **11 days after Plaintiff submitted his 1/6/17 complaint** to the VA regarding Raphaely, the VA denied Plaintiff's requested accommodation.  (Doc. No. 29-3 at

PageID# 277). The Court made no reference to this proximity, simply noting that, on 1/17/17, "Mr. Kafer denied Plaintiff's request for accommodation." (Opin. at 6, citing Doc. No. 29-3 at PageID# 277.) The Court should have inferred that the accommodation denial was retaliatory.

### 3. That Kafer -- and not Raphaely -- made the decision to deny Plaintiff's requested accommodation.

The Court stated:

> Several hours later, Mr. Kafer sent an email to Plaintiff and Dr. Raphaely, in which he indicated that the medical documentation submitted by Plaintiff was insufficient for the granting of a VA Reasonable Accommodation* * *  Over the next two weeks, Plaintiff submitted additional documentation to Mr. Kafer* * *.  In addition, on December 26, 2016, Plaintiff provided a letter from psychiatrist M.J. Kramer, M.D.* * *  One week later, on January 17, 2017, Mr. Kafer denied Plaintiff's request for accommodation.

(Opin. at 5-6.) The flaw in this is that we know Kafer *sent the denial letter,* but we do not know who actually *denied* the accommodation. The Court simply *inferred* it was Kafer, and *not* Raphaely -- the individual Plaintiff accused of discrimination and harassment.

### 4. That Raphaely simply "asked" the 4 CRNAs to submit ROCs, rather than coerced them.

Despite the abundance of evidence to the contrary, the Court said "Dr. Raphaely **asked** both Ms. Bonfili and Ms. Foster to document their complaints" about Plaintiff (Opin. at 7) (emphasis added), and "reached out to Ms. Costanzo and Ms. Verb and asked them to document their experiences" with Plaintiff (*Id*. at 8). The diametrically conflicting evidence includes:

- Costanzo testified that Raphaely called her *at home,* "**encouraging** [her] to draft a report of contact in regards to [her] experience with Dr. Lisan" (MSJ Opp. at 19, citing Doc. 33, Costanzo Dep. at 81-85, 124-125) (emphasis added), which she found "unusual"-- both Raphaely calling her at home, and the topic of conversation (Id. at 81-82);

- Costanzo testified that Raphaely "**told" her** she "**needed to"** to file a police report against Plaintiff:

  > Q: Did you go to the VA police?
  > A: Yes.
  > Q: Who told you to do that?
  > A. Dr. Raphaely.

Q: And when did she do that? It was when you made this second complaint?
A: When Dr. Lisan called me that night after I had left work*** She told me that I needed to go make a police report for whatever reason… Costanzo Dep. at 82, 124-125.

- Bearss testified that Bonfili told him Raphaely had "**coached**" her on how to fill out her ROC, and was looking over her shoulder when she filled it out (MSJ Opp. at 17-18, citing Bearss Dep. at 76-77).

### C.    The Court failed to consider critical evidence produced by Plaintiff.

#### 1.    Dr. Raphaely's bias against male anesthesiologists as background evidence of why she would retaliate against Dr. Lisan.

Plaintiff brought forward evidence in the form of Dr. Ken Moss' deposition testimony (Doc. 41), demonstrating that Raphaely was biased against male anesthesiologists in the department, including that: (i) Within 1 ½ years of assuming her position, Dr. Raphaely replaced 5 male and 1 female anesthesiologists with 5 female and 1 male anesthesiologists (Doc. 41, Moss Dep. 129-133); (ii) Raphaely hung a poster in her office mocking male workers as lazy compared to female workers (Id. at 155-56); (iii) Raphaely said she can't be accused of being "biased or sexist" because she hired Matt Kellums as her "token" male (Id. at 123-24).

#### 2.    Brenda Spicer's "Climate Assessment" report

Despite the plethora of evidence in this report (Pl's Ex. 27, and Sealed Doc. A, Ex. 84) of Raphaely's horrific fear, intimidation, false accusations, threats, and retaliation toward the department's employees, the Court gave it short shrift, referencing it just in a footnote on p. 35.

#### 3.    The temporal proximity between Plaintiff's protected activity of reporting Raphaely on 1/6/17, and the adverse actions that followed.

The Court failed to consider the glaring import of the temporal proximity between Plaintiff's **1/6/17** letter to the VA reporting Raphaely, the ensuing complaints about him by 4 co-workers (the first one on **1/9/17 -- just 3 days later**), the undated/unsigned/non-specific ROCs those co-workers supposedly submitted 1-2 weeks thereafter, the ensuing "no contact orders", the warning letter, and the 10-day suspension, stating:

> [T]he Court finds that Plaintiff's admitted failure to follow the no contact order constituted an intervening reason for his ten-day suspension.  Therefore, the temporal proximity between his protected activity (i.e., his reasonable accommodation request and/or January 6, 2017 letter) and his suspension is not sufficient to create an inference of retaliation.

(Doc. 73, Opin. at 28.)   In other words, although the 4 ROCs and "no contact" orders, coming on the heels of Plaintiff's 1/6/17 letter to the VA, were themselves **retaliatory adverse employment actions**, the Court failed to consider them as such, and instead, erroneously treated them as intervening legitimate reasons that precluded an inference of retaliation.

It is well-settled that a close temporal proximity between an employee's protected activity and an adverse employment action <u>creates</u> an inference of retaliation.  *DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir.2004).  In *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003), where an employee was fired 9 days complaining of discrimination, the court observed that the amount of time between an employee's protected activity and the ensuing adverse employment action "can provide strong evidence of retaliation" by an employer. *Stegall,* 350 F.3d at, 1069.  Here we have complaints about Plaintiff starting to pour in **3 days** after his protected activity, followed by ROCs and no-contact orders 2 weeks later, a warning, a proposed suspension, and then a suspension.  "Evidence based on timing can be sufficient to let the issue go to the jury, **even in the face of alternative reasons** [for the adverse action(s)] **proffered by the defendant."**  *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 507 (9th Cir.2000) (emphasis added).

The question is whether Plaintiff's **1/6/17** complaint, and the ensuing flurry of complaints, ROCs, no-contact orders, police report, warnings, proposed suspension, and suspension, all starting on **1/9/17**, are close enough to establish a causal connection for the 4th prong of a retaliation claim.  ***The answer is undeniably "yes".***  The 1/6/17 letter was promptly provided to Raphaely (Doc. 49, Altose Dep. at 77-78).  Then, almost immediately: → The VA

14

subjected him to a no-contact order (**1/10/17** no-contact order, Pl's Ex. 26); → 4 ROCs were filed against him. → His requested accommodation was denied. → Bonfili filed a police report against him. → He received a "Written Admonishment" on 3/9/17 (MSJ Opp. at 25 citing Ex. 66). → Raphaely authored a "Proposed Suspension" (3/20/17 Proposed Suspension, Pl's Ex. 64). → He was suspended for 10 days in June 2017 (Pl's Ex. 78).

Considering the temporal proximity alone (and/or in conjunction with the other evidence of retaliation), there is clearly a genuine issue of material fact concerning the requisite causal connection.  A reasonable jury could find that, **but for the fact of Sindell's 1/6/17 letter to the VA,** the complaints would not have been made, ROCs would not have been solicited and filed, the no-contact orders would not have been issued, no warning would have been issued, Plaintiff would not have violated any no-contact order, and Plaintiff would not have been suspended.

### 4. The critical flaws in ALL 4 ROCs.

→ **Rhonda Verb's ROC (P's MSJ Opp. Ex. 4):**

- **Is undated** and i**dentifies no date of incident** (Id.);

- States that Plaintiff "has said in the past many inappropriate things to me…", but identifies just one:  he asked her "what time should I be over?" (Id.).

- Claims she "feels as though he has been struggling recently, he has seemed very distracted and not present while working" (Id.), but **gives no examples**, and leaves one to wonder **what that has to do with the alleged comment "what time should I be over**?"

→ **Jessica Foster's ROC (P's MSJ Opp. Ex. 25):**

- **Is undated and unsigned** (Id.);

- States "This is not the first time unsolicited, inappropriate sexual comments/jokes have been made to me by Dr. Lisan", *but fails to describe any other alleged incident* (Id.).

→ **Elaine Costanzo's ROC (P's MSJ Opp. Ex. 24):**

- **Is undated** (Id.), and cites "**early 2015**" as "date of contact"-- *2 years earlier* (Id.);

- Though the VA's sexual harassment policy specifically requires employees to immediately report any contact they find uncomfortable or harassing (Pl's Ex. 88, Sect.

5), this ROC states that, "as a brand new employee, I did not feel comfortable… reporting the incident to my chief…"  (Pl's Ex. 24).  Either she was poorly trained on the VA's policy, the incident did not occur, whatever occurred was so minor that she did not deem it worth reporting, or she violated the VA's policy -- a question of fact for the jury.

- **Provides no details** as to what Plaintiff supposedly said or did 2 years prior -- other than that they were "of a sexual nature."  (Id.)

- Fails to explain why she waited 2 years[8] to submit an ROC.

→ **Karen Bonfili's ROC (P's MSJ Opp. Ex. 2):**

- **Is undated** and **unsigned** (Id.)

- **Identifies no "date of incident"** (Id.);

- Alleges Plaintiff "has always made 'sexually oriented' jokes", but admits she "never said anything in response" (Id.), reflecting that either: (a) she intentionally violated the sexual harassment policy, (b) this incident did not occur, or (c) the VA does not adhere to its own harassment policy, which requires "mandatory training … in a timely manner", making sure "all employees are informed of pertinent regulations and procedures relative to the prevention of sexual harassment" (Doc. 50-6, Page ID 3650-52.)

Moreover, the Court failed to mention Bearss' testimony that Bonfili told him *Raphaely had "coached" her on how to fill out her ROC, and was looking over her shoulder when she filled it out* (MSJ Opp. at 17, citing Bearss Dep. at 76-77).  The Court also failed to discuss the Spicer report, which states, *inter alia*, that:

> During the "investigation stage", after Plaintiff filed a complaint against Raphaely, Bonfili was asked to complete a questionnaire.  **Raphaely called her into her office and proceeded to instruct her how to answer the questions, and specifically told her what to say on the questionnaire.**  Bonfili reported that the same thing happened to Elaine Costanzo.  Bonfili mentioned all this to the investigator, Bert Greenspan -- including **how uncomfortable she was having to answer the questions as Raphaely had told her, and that she wanted to answer the questions as she knew them to be**.  She asked him what would happen if she didn't answer the questionnaire; Greenspan responded that she'd be fired.  She told Spicer this had also happened to Elaine Costanza.

> Bonfili asked Greenspan if Raphaely would see her answers, and he said yes.  She expressed how nervous that made her, and decided to answer the questions in a general way.  After Greenspan received her questionnaire, he contacted her and said her answers were too vague, but she never changed her answers.

---

[8] Such suspicious timing = pretext.  *See Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (6th Cir. 2001) (sudden drop in performance evaluations and placement on probation after injury is evidence of pretext).

(Spicer Climate Assessment, Pl's Ex. 27, and Sealed Doc. A, Ex. 84.) **Raphaely's dictates to Costanzo and Bonfili are evidence of pretext.** *McQueeney v. Wilmington Trust Co*., 779 F.2d 916, 921 (3d Cir. 1985) (Evidence that a party or his agent attempted to conceal or suppress evidence, commit or suborn perjury, tamper with witnesses, or obstruct justice, is admissible against him and creates inference that his case is unfounded. Subornation of perjury by a party is "strong evidence" that the party's case is weak.); *Great Am. Ins. Co. v. Horab,* 309 F.2d 262, 264 (8th Cir. 1962) (Evidence that a litigant or his agent has attempted to influence or suppress a witness' testimony is an admission that his case is weak or unfounded).

  **5.**   <u>**Plaintiff's testimony that Raphaely made clear to him that she did not want him taking time off from work.**</u>

   The Court determined that the VA's version of events regarding its decision to deny Plaintiff's requested accommodation was legitimate (Opin. at 6), omitting discussion or even mention of Plaintiff's testimony that Raphaely made clear to him that **she did not want him to take time off from work**. (MSJ Opp. at 3, citing Pl's Dep. at 51.) The Court should have considered this evidence -- not only for its own inherent value, but also because it corroborates Bearss' testimony that Raphaely gave another anesthesiology employee a hard time when she wanted to take a health-related leave of absence. (Bearss Dep. at 104-108.) If Raphaely did not want Plaintiff to take time off time, but he had to take it off for medical necessity, and she then recommends that Kafer deny Plaintiff's requested accommodation, the reasonable inference is that <u>Raphaely recommended the denial for retaliatory purposes.</u>

  **6.**   <u>**Evidence of VA policies the VA failed to follow.**</u>

   The Court discussed VA Policy MCP 003-003, regarding alleged harassers being "ordered to cease any further contact with the alleged victim except that of which is absolutely required by official business", and requiring "the investigating management official to administer

'Sexual Harassment Allegation checklist' to both the alleged victim and the alleged harasser. (Opin. at 7, citing Doc. No. 29-3 at PageID #288.)  But the Court overlooked VA policies that reflect the VA's bias, utter disregard for its own policies, and disdain for the rule of law, including Policy 005-005(4)(c), which states that "investigations will be conducted fairly and impartially", and that, "The deciding official must give full and impartial consideration to the employee's reply/ies, if any."  Plaintiff told the VA that the investigation, conducted at least in part by Kafer, was **biased** because he had named Kafer as a harasser and retaliator (Pl's Ex. 86; Pl's Dep. at 195), and requested, to no avail, that Kafer be recused from the investigation.  (*Id*.).

Nor did the Court reference VA Policy 003-003(4)(d), which requires employees at all levels to "bring[] any instance or allegation of sexual harassment to the attention of their supervisor or appropriate management official."  (P's MSJ Opp. Ex. 88.)  None of the 4 women who submitted ROCs against Plaintiff followed this policy, yet their complaints were accepted, and Plaintiff was subsequently disciplined with no-contact orders and a 10-day suspension.

The Court also failed to discuss VA Policy 003-003 (5)(c)(2)(e), which requires, BEFORE an alleged harasser is subject to a no-contact order, that his statement must be taken. (Id., Page ID # 3638.)  AFTER that is completed, "The alleged harasser will be ordered to cease any further contact with the alleged victim except that of which is absolutely required by official business.  (Id.)"  This overlooked evidence is important because, as Plaintiff testified, and as Kafer corroborated, Kafer did not converse with, or *interview*, Plaintiff regarding the alleged inappropriate remarks he made to the CRNAs (Doc. 34, Kafer Dep. at 193-197, 200-202).

## 7.   That plaintiff's 1/6/17 report against Raphaely was "investigated".

The Court states: "Mr. Kafer and EEO Specialist Leshelle Reese investigated the sexual harassment allegations against Plaintiff through February and March 2017. (Kafer Decl. at ¶ 9.)" (Opin. at 8.)  The Court not only impermissibly relied on an interested party's Declaration, but

assumed it was a legitimate "investigation", despite Plaintiff's evidence that it did not include any discussion with *him* regarding the accusations against him.  (MSJ Opp. at 14-15, citing Doc. 34, Kafer Dep. at 190-92.)  An "inexplicably unfair" investigation may provide sufficient evidence of pretext.  *See, e.g., Mastro v. PEPCO*, 447 F.3d 841 (D.C.Cir. 2006), in which the Court reversed the grant of summary judgment in the employer's favor, holding that the employee offered "ample evidence" of pretext based on the employer's "not just flawed but inexplicably unfair" investigation, which culminated in termination.

### 8.    The timing of the adverse actions against Plaintiff.

Most telling is the fact that the Court failed to comment on the alarming temporal proximity between Plaintiff's protected activity and each of the ensuing adverse actions against him: → Within 3 days of reporting Raphaely, co-workers started claiming he had sexually harassed them. → Within 2 weeks of reporting Raphaely, he was the subject of 4 ROCs and several no-contact orders. → Within a month of his report, Raphaely urged Costanzo to file a police report against him, → Within 4 ½ months of reporting Raphaely, he was suspended.

### 9.    That Plaintiff violated the no-contact order BEFORE the 3/9/17 warning was issued.

As stated in the timeline on p. 3, *supra*, on **3/8/17,** Bonfili reported that Plaintiff tried to talk to her about her sexual harassment complaint against him (Pl's Ex. 3), as did Costanzo (Costanzo Decl. at ¶ 6).  On **3/10/17,** the VA issued Plaintiff a **letter of warning** stating that he should not have tried to talk to his co-workers about this matter, the VA was going to investigate it, there might be "further disciplinary action" against him, and he was prohibited from discussing his case with any of his colleagues (Pl's Ex. 75).

First of all, there was no disciplinary action against him, so what "further disciplinary action" where they referring to (unless they were already pre-disposed to disciplining him, or had

19

already decided on discipline -- even before the "investigation" regarding the sexual allegations against him was complete)?

Secondly, these were the **only** violations of the 4 no-contact orders, and they both occurred on the same day.  **After Plaintiff received the warning letter, he made no further contact with his co-workers about their ROCs or allegations against him.**  Thus, the VA should not have subjected him to the harsh and escalated discipline of a 10-day suspension -- especially when there are several other lesser penalties in the VA's progressive discipline policy.[9]  The VA's decision to escalate this "offense" to the most severe discipline available (other than termination) reflects a retaliatory motive -- at least arguably so.  See, e.g., *Ridley v. Costco Wholesale Corp.*, 2007 U.S. App. LEXIS 2493 (3d Cir. 2007) (unpublished), in which the Court held that a jury could have reasonably found Cosco's explanations for its post-demotion decisions regarding plaintiff to be pretextual, stating, in part, that, although plaintiff admitted to engaging in the conduct that resulted in the counseling notices, the jury could have found that the punishment was greater than his conduct deserved, and that Costco used those incidents as an excuse to retaliate against him.

Thirdly, the VA hyperbolized the one conversation between Plaintiff and Ms. Bonfili -- blowing it up into allegations of being "unprofessional" and "put[ting] patient safety at risk."  *Whether this exaggeration was justified, or not, is yet another material question of fact.*

### 10.     That the no-contact orders and Checklist were improper.

Ralphaely's characterization of the ROC allegations as "sexual harassment" enabled the VA to issue the no-contact directives and Checklist B (Pl's Ex. 26).  Plaintiff's contact on 3/8/19 led to the "Written Admonishment" a day or two later (Pl's Ex. 66); Raphaely's "proposed

---

[9] The disciplinary policy, VA Policy No. 005-005, offers the following options: (1) Admonishment; (2) Reprimands; (3) Suspension; (4) Adverse Actions; and (5) Major Adverse Actions. (Doc 50-8, Ex. 90.)

suspension" on 3/20/17 (Ex. 64),;and Fuehrer affirming that decision on 6/20/17 (Ex. 78) (all of which is discussed in the MSJ Opp. at 25-26).

      **D.**    <u>**The Court impermissibly made credibility determinations.**</u>

      **1.**    <u>**That the VA properly denied Plaintiff's requested accommodation of gradual return to full "on-call" duty because on-call duty is an" essential job function."**</u>

The Court impermissibly determined that Raphaely's claim -- that full on-call duty was an essential job function of an anesthesiologist in the VA -- was legitimate, and that the VA was therefore justified in denying Plaintiff's request to return gradually to full on-call duty.  (Opin. at 3, f.n. 2.)  The Court overlooked the fact that the VA failed to mention, or present, a copy of Plaintiff's job description, which does not say that on-call duty is an "essential function."

Moreover, how could call duty be an essential job function in light of the fact that, when Plaintiff was on medical leave from August 2016 to December 7, 2016, the other anesthesiologists in his department covered his on-call schedule?  In determining that the denial of Plaintiff's requested accommodation was not retaliatory, the Court simply and impermissibly relied on Dr. Raphaely's biased, self-serving, email to Plaintiff and Bruce Kafer, which stated:

> "I **<u>feel</u>** that as a department we are unable to meet his request.  Taking call is an essential function of his position… Therefore I am would [sic in original] request that if Dr. Lisan is indeed unable to perform the essential functions of his position, you could assist him in alternative reasonable accommodations."  (P's MSJ Opp. Ex. 10) (emphasis added).

This is insufficient.  The Court erred when accepting the VA's decision to deny the accommodation based on its claim that "call is an essential job function."  The employer bears the burden of proving that an alleged unessential function is essential.  *Monette v. Electronic Data Sys Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1999).  Defendant failed to do this.

While an employer's judgment regarding the required duties of a particular job is entitled to "substantial deference" under the ADA, the ADA makes clear those duties may not be

"marginal". 29 C.F.R. § 1630.2(n)(1). One may consider a function essential for many reasons, including, but not limited to, those situations in which: . . . the . . . number of employees available among whom the performance of that job function can be distributed [is limited]; and/or the function [is] highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function. 29 C.F.R. § 1630.2(n)(2)(i-iii). *Hamlin* at 1138-1139. Neither of those scenarios applies here because the other anesthesiologists covered for Plaintiff during his medical leave.

This law has been developed under the ADA and has, in other circuits, been stated in more detail under the federal regulations:

> An essential function may be established by evidence that includes: (1) "[t]he employer's judgment as to which functions are essential"; (2) "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job"; (3) "the amount of time spent on the job performing the function"; (4) "the consequences of not requiring the incumbent to perform the function"; and (5) "the current work experience of incumbents in similar jobs."

*Moritz v. Frontier Airlines, Inc*., 147 F.3d 784, 787 (8th Cir. 1998), quoting 29 C.F.R. § 1630.2(n)(3). **On-call being "essential" is not** supported by the record, and is not in keeping with the analysis of 29 C.F.R. § 1630.2(n)(3).

Finally, the VA concedes that one staff anesthesiologist is not required to take call duty. (Pl's Ex. 10; Raphaely Dep. at 108, 114; Kafer Dep. at 108-109). If not all anesthesiologists are required to take call, then call duty is not an essential function of the job.

### E.   The Court relied on statements, declarations, and reports of interested parties.

Defendant's MSJ cites overwhelmingly to the biased testimony of **6 current employees:** Raphaely, Bonfili, Foster, Costanzo, Verb, Fuehrer, and Kafer, though parties to litigation cannot create a material issue of fact by relying on affidavits of biased individuals who have a stake in the outcome of the litigation, as they are clearly "interested witnesses." Yet, in support of its

ruling, the Court cited overwhelmingly -- *almost exclusively* -- to Defendant's biased deposition

testimony and Declarations by these *interested parties.*  In fact, the Court cited to Defendant's

biased Declarations (excluding its references to biased deposition testimony) approximately **35**

times:  15x to Raphaely's Declaration; 11x to Bonfili's Declaration; 2x to Foster's Declaration;

3x to Costanzo's Declaration; 2x to Verb's Declaration; and 1x to Kafer's Declaration.

In *Reeves v. Sanderson Plumbing,* 530 U.S. 133, 151 (2000), the Supreme Court stated:

> Thus, although the court should review the record as a whole, it must disregard all
> evidence favorable to the moving party that the jury is not required to believe.  See
> Wright & Miller 299.  That is, the court should give credence to the evidence favoring the
> nonmovant as well as that evidence supporting the moving party that is uncontradicted
> and unimpeached, at least to the extent that that evidence comes from **disinterested
> witnesses**.

(Emphasis added.)  That is, courts may not rely on testimony of interested witnesses when ruling

on summary judgment motions.

In this case, Defendant presented **no** evidentiary support by, or from, **<u>uninterested

parties,</u>** in support of its arguments that:  (a) On-call is an essential job function for VA

anesthesiologists, and thus, it had a legitimate non-retaliatory reason for denying Plaintiff's

requested accommodation; (b) The complaints and ROCs filed against Plaintiff were leigitmate,

accurate, voluntary, and not solicited by Raphaely in retaliation for Plaintiff reporting her on

1/6/17; (c) The no-contact orders imposed on Plaintiff were legitimate; and (d) The warning,

proposed suspension, and suspension were all legitimate.

The Court should not have relied on this, because doing so required it to believe those

declarants, and courts may not make credibility determinations when ruling on summary

judgment motions.  In *Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 640–41

(5th Cir.1985), Justice Rehnquist, in his dissent of the denial of certiorari in an age case, said:

> [I]t is inappropriate to resolve issues of credibility, motive, and intent on motionsfor
> summary judgment.  It is equally clear that where such issues are presented, the

23

submission of affidavits or depositions is insufficient to support a motion for summary judgment... Summary judgment simply may not be granted when such matters as the defendant's motive and intent are questioned. *Hardin v. Pitney–Bowes, Inc*., No. 78–3679 (W.D.Ky.1978) (unpublished).

The Sixth Circuit has explicitly stated that a party's "self-serving statement disclaiming discriminatory motive alone is not probative, but rather conclusory", which are insufficient in summary judgment proceedings. *Mitchell v. Toledo Hosp*., 964 F.2d 577, 584 (6th Cir. 1992). Courts may not grant summary judgment based on self-serving statements, testimony, or repots of interested witnesses. *Shaw v. Danley*, 202 F.3d 270 (table), 2000 WL 64945, *7 (6th Cir. 2000). This Court should have <u>disregarded</u> all evidence favoring the movant that a jury is not required to believe, such as testimony by witnesses who are biased, interested, and/or whose credibility is tainted. *Reeves v. Sanderson Plumbing Products,* Inc., 530 U.S. 133, 149-150 (2000). As stated in *Malone v. Becher*, 2003 WL 22080737, *3 (S.D.Ind. Aug. 29, 2003):

> Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted [internal citations omitted]. Smith's affidavit states that he was incarcerated at the Clark County Jail* * * The rest of the affidavit contains conclusory statements such as "because of the overcrowding, a cell boss system has developed," and "people who should be segregated are not because of the overcrowding." Id., pp 8, 10. These are exactly the type of conclusory allegations that Rule 56 counsels should be disregarded on summary judgment* * *. The affidavit remains in the record, but it simply is not sufficient to raise genuine issues of material facts.

## V.    SUMMARY OF ISSUE/ANALYSIS

The essence of the issue here, was perfectly stated and applied in *Waddell v. Roxane Laboratories, Inc.,* 2004-Ohio-2499, ¶¶ 29-30 (10th Dist.), in which the court noted:

> [t]he law clearly indicates, and the jury was instructed, that, regardless of whether [the employer] had a legitimate business purpose for firing Waddell, it could still have engaged in racial discrimination. **The ultimate question for the jury was not whether Roxane was justified in firing Waddell, but whether the firing arose out of a motive of racial discrimination.**

Thus, regardless of whether the trial court found Roxane had a legitimate business reason

for firing Waddell, it was still a genuine issue of fact whether that finding was rebutted by Waddell's evidence that the legitimate reason was a pretext for racial discrimination. Thus, we overrule Roxane's first and second assignments of error.  Id.  (Emphasis added.)

Likewise, in the case at bar, the issue is not whether Defendant had a "legitimate business reason" for suspending Plaintiff, but rather, whether the decision to do so is rebutted by Plaintiff's evidence that the asserted "legitimate reason" (which the Court identified as an intervening legitimate reason) was a pretext for retaliation.  **The motive for Defendant's decision** is the ultimate question, and it must be decided by a jury.

In granting summary judgment, the Court failed to consider a substantial amount of evidence presented, made credibility assessments, relied on testimony of interested parties, resolved inferences in the VA's favor, and mistakenly determined that the only retaliatory act before it was Plaintiff's suspension -- not the solicited complaints, solicited ROCs, no-contact orders warning, etc., as described and presented in Plaintiff's MSJ Opp., Reply Brief, and herein. It would be an abuse of discretion for the Court to now deny Plaintiff's Motion to Set Aside the Judgment because courts should grant relief from operation of a judgment under Rule 60(b)(6) when they determine, in their sound discretion, that substantial justice would be served. *See*, *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir.1985).

## VI.    CONCLUSION

Since not all the evidence presented was taken into consideration by the Court when it granted Defendant's MSJ (as reflected in the fact it was not mentioned in the Court's Opinion), then the Court's Opinion was based upon a "mistake", and the instant Motion should be granted. Moreover, as a matter of equity, since all components of Plaintiff's retaliation were not considered, setting aside the judgment is the reasonable decision to be made by this Court.

WHEREFORE, Plaintiff respectfully requests the Court set aside its judgment, and review the record in its entirety prior, and deny Defendant's MSJ.

Respectfully submitted,

*/s/ Caryn M. Groedel*
Caryn M. Groedel (0060131)
CARYN GROEDEL & ASSOCIATES CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH 44139
Telephone:  (440) 544-1122
Facsimile:   (440) 996-0064
cgroedel@groedel-law.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically this 20th day of March, 2020. Notice of this filing will be sent by the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Caryn M. Groedel*
Caryn M. Groedel